DX 10

Memorandum for Record                                    November 6, 2001

Subject:  Ozetta Thomas - Performance Appraisal

SED, Danny Crawford, met with Ozetta Thomas, Program Specialist, to discuss Ms. Thomas'
performance and finalize her appraisal for the period October 1, 2000 through September 30,
2001.  The plan developed by Daniel Robinson, former SED, and Ms. Thomas on October 24,
2000 was carried forward when Mr. Crawford was appointed as SED on May 21, 2001.  Mr.
Robinson did not leave a rating of record on Ms. Thomas for Mr. Crawford's information when he
left the position.

Mr. Crawford requested the presence of Deborah Williams, Executive Staff Assistant, as a
witness to the meeting.

DEFENDANT'S
EXHIBIT

CASE
NO.          10

EXHIBIT
NO.

Mr. Crawford reviewed the Performance Plan and discussed each element.  As the elements
were read, concerns and deficiencies were discussed.  Mr. Crawford reminded Ms. Thomas of
their meeting of August 20, 2001, during which he addressed some of his concerns with her
performance.  Ms. Thomas received a Results Not Achieved rating on the following performance
elements:  Program Management, Customer Service, and Supervision.

Mr. Crawford informed Ms. Thomas that she was being place on an Opportunity to Improve for a
period of 120 days.  He will provide closer supervision during the OTI and will meet with her every
three weeks to evaluate her progress and discuss any problem areas.  Mr. Crawford will also
attend Ms. Thomas' staff meetings.  She will be scheduled for training in the areas of supervision,
management, and effective training techniques; as well as program training when deemed
appropriate.

Mr. Crawford allowed Ms. Thomas time to review the evaluation and the OTI.  After a few
minutes, Ms. Thomas asked if the counseling confirmation letter would be attached to the
evaluation.  Mr. Crawford responded that it would not.  That letter would be maintained in his
supervisory file.

Ms. Thomas asked why she was not being allowed an opportunity to respond to the evaluation.
Mr. Crawford reminded her again of their meeting of August 20, 2001, during which he outlined
specific areas of concern.  He discussed those concerns again in detail by taking each element
with a "not achieved" rating and outlining the deficiencies and required improvement for each.
After each element was discussed, he asked if she had any comments.  She did not.

Mr. Crawford advised Ms. Thomas that she would be scheduled to attend two training sessions,
one on November 15-16 and another on December 3.  She indicated that she would be
unavailable to attend the November 15-16 session due to personal reasons.  Mr. Crawford
agreed to reschedule the training.

At this point, Ms. Thomas stated that she feels she should have been given an opportunity to
respond to Mr. Crawford's concerns *before* being placed on an Opportunity to Improve.  Mr.
Crawford told Ms. Thomas that he had given her an opportunity to respond when he met with her
on August 20.  At that time, she refused to acknowledge receipt of the memorandum, and did not
choose to respond further.  They have had several conversations since that date concerning
issues that are being addressed at this time.

Mr. Crawford expressed that he expects Ms. Thomas to be the authority on all the programs for
which she is responsible.  He pointed out that, as discussed earlier, the NAP training conducted
in Tuscaloosa was not acceptable to him.  Just after that training began, Ms. Thomas was asked
the same question three different times and each time, she gave a different answer.  He told her it

Exhibit    6
Page  117 of 133

would have been more appropriate for her to say, "I don't know, but I will find out" rather than guess. The manner in which she handled that situation caused her to loose respect of the participants almost immediately and had a negative impact on the overall training.

Mr. Crawford said that he would take several actions to compliment the OTI process and expected her to do the same. One: He expects her to study procedure and make a concerted effort to improve her program knowledge. Specific program training will be provided whenever feasible during the OTI. Two: Mr. Crawford will monitor Ms. Thomas' staff meetings in order to observe how she interacts with her staff on a first-hand basis. He asked that she work with him on scheduling her staff meetings to ensure that he is available. Three: Mr. Crawford will meet with Ms. Thomas every three weeks to discuss her progress and outline any concerns.

Mr. Crawford told Ms. Thomas he wants her to make an effort to develop confidence in her by her subordinate staff as well as field employees. He wants her to gain, or regain, their support. He would like her to be more effective in dealing with programmatic issues. This, in itself, will help increase confidence in her. He told her he expects her to delegate tasks, but it is not acceptable for her to delegate the requirement to maintain knowledge of programs for which she is responsible. In order words, it is not acceptable to him for her to expect her staff to maintain knowledge of the programs and not do the same herself. He reminded her of times that she has told both him and the State Committee that she is not an expert in any of her programs expect Payment Limitations. As the Chief of the Production Adjustment/Compliance Section, that is unacceptable to him. He will not exempt her from knowing her programs or being involved in key elements of the programs.

Mr. Crawford signed the performance appraisal and Opportunity to Improve. However, Ms. Thomas refused to sign either. Mr. Crawford told her she was not required to sign. However, her refusal to sign did not mean that the OTI would not be put in place. It is effective November 6 and will end on March 5, 2002.

Ms. Thomas stated that she will do whatever Mr. Crawford says she must to improve her performance, but she will not place her signature on any document because she does not believe her performance is that bad. She stated Mr. Crawford is using one training session to base his actions on. She told him she was very intimidated at the beginning of that training and she lost before she ever got started. She did not believe he was being fair to her. Mr. Crawford asked her why she was intimidated before the training started. Ms. Thomas stated that people have been "at her" right and left since he came on board as SED. She asked how she could have gone 30 years not knowing the programs. She stated his allegations on her performance were not true. She stated that people don't like her and that is her problem. Mr. Crawford asked who does not like her. She responded, "Evidently, no one." She said she could not see how, after all these years, her performance has gone down so fast, that she would receive a "not achieved" on three of her five elements.

Mr. Crawford told Ms. Thomas that he did not know about the past. He could only respond to her performance since she became SED. He is not basing this OTI on strictly the one NAP meeting. He is using that incident as an example of how she must comply with his instructions and make an effort to improve. Ms. Thomas told him that she had no control even before that meeting started. Mr. Crawford explained that in order for her to achieve the goals he had established for her, she must agree there is a need for improvement. She stated that when people don't like you, nothing you do is right. She feels the NAP meeting was destined to be against her. She has no idea why problems with her performance are just now coming to light.

Mr. Crawford told Ms. Thomas that he hopes she sees and understands the need for a Chief Program Specialist to be able to answer questions during a training session. The fact that she felt intimidated, but cannot identify why, is not an acceptable answer as to why she was unable to effectively carry out her duties during that training session. He reminded her that she had 30

Exhibit ____6____
Page 118 of 133

days to prepare for the training, which is unusual for FSA. Guessing and giving incorrect answers are not caused by intimidation. That is caused by a lack of knowledge.

He also reminded her that well before the meeting in question, he told her to utilize more examples and not simply read off the screen to the participants. However, reading is exactly what she did. In fact, he told her that he is aware she told her staff that she had no intentions of changing her training techniques at his direction.

Ms. Thomas again stated that no one likes her. Mr. Crawford told her she should admit her weaknesses and attempt to improve rather than look for excuses. He told her it is not acceptable for her to ignore his instructions simply because she has always done something a particular way. He suggested that might be part of the problem.

Mr. Crawford told her to schedule a staff meeting on November 20 in order for him to attend. Their first follow-up meeting will be scheduled the week of November 27.

Mr. Crawford asked if Ms. Thomas had any further questions or comments. She did not. He stressed to her that he believes they can achieve her goals if they work together.


_____
Danny F. Crawford
State Executive Director


**152**

Exhibit _6_
Page _19_ of _133_

DX 11



Memorandum for Record                                              November 28, 2001

Subject:  Ozetta Thomas – OTI Follow-Up Review

SED Danny Crawford met with Ozetta Thomas for the first three-week progress review after implementation of an Opportunity to Improve (OTI).

Mr. Crawford explained that he had been unable to attend Ms. Thomas' staff meeting on November 27 due to an Alabama Agribusiness Council meeting. However, he has received positive feedback from her previous staff meeting. He felt the meeting was very organized. Employees in Ms. Thomas' section have indicated her efforts in that meeting gave them more of a sense of leadership on her part. He felt the written agenda was a positive change and her staff had responded positively. He told her those are the kinds of things he thought she should do to ensure her staff knows she is in charge and familiar with subject matter to be discussed during the staff meetings. He acknowledged that she was scheduled to attend workshops and indicated he thought she would discover other simple techniques that would help her regain confidence of her staff.

One area of concern was training techniques, and in the past three weeks, he has not had the opportunity to observe any improvement in that area. He encouraged her to seek workshops that would help her improve training techniques as discussed in the past.

Mr. Crawford asked Ms. Thomas if she has taken the opportunity to review any program handbooks. She responded that she reviews procedure on an every day basis. She stated that she reviews all handbook amendments before they are filed in the basic handbook. She has always made this a routine practice when amendments are received. Mr. Crawford asked if she is able to retain the information. He asked if she compares the phone calls she receives to the changes outlined in the amendments. Ms. Thomas responded that she sometimes has to refer to the handbook when she receives calls to make sure she is giving the right answer. If she is still unable to answer a question, she contacts the National Office. She stated that she would never know everything and Mr. Crawford explained that no one expects her to know everything, but he does expect her to handle questions appropriately and follow-up when she is unable to give an immediate answer.

Mr. Crawford asked how Ms. Thomas is managing the programs under her supervision. Has she made any assignment changes, etc? She responded that program assignments have not changed. The employees are performing the same duties they were when she was selected as chief. The one exception is Walda Messer who had just been hired when Ms. Thomas became chief. She waited until Ms. Messer obtained the GS-12 level before she assigned the NAP

and LAP programs to her. Ms. Thomas pointed out that Ms. Messer works only 60% of her time in the Production Adjustment section. The remainder of her time is spent working in the Conservation/Price Support section. Jeff Kotts is assigned the compliance program along with GIS and GLS. Sharrie Peterson is assigned reconstitutions, peanuts, tobacco, and name and address. She has not assigned payment limitations because no one wanted it. Mr. Crawford asked what exactly did she mean when she says programs are assigned to an employee. What does she expect the employee to do with the program? Ms. Thomas responded that when she assigns a program, the employee is in charge of the program. If a county office has a question, she expects the employee to handle the problem with her assistance only if needed.

Mr. Crawford asked if she received a question on peanuts or Loss Adjustment, would she refer the questions to Sharrie or Jeff. She responded that if a question comes directly to her, she answers it. She stated that she has never been very familiar with peanuts, but if Sharrie is not in the office she attempts to find the answer in the handbook or calls the National Office for guidance. She stated this also applies to questions on tobacco. Mr. Crawford pointed out that these were two areas that she should be focusing on if she is aware that she is weak in those areas.

Mr. Crawford asked if Ms. Thomas ever defers questions to her specialists. She again stated that if the question comes directly to her, she handles it. He asked if it was common for county office personnel to come to her directly with questions on peanuts and tobacco. She said they usually contact the specialist assigned to the program. Ms. Thomas stated that since employees have individual phone numbers that are published to county offices, field employees usually contact the specialists instead of her. She gets calls if the specialists are not available. Most payment limitation questions come directly to her since the program is not assigned to any of the specialists. Mr. Crawford asked how she was made aware of problems if the questions go directly to the specialists. She responded that she had asked her staff members to keep her informed.

Mr. Crawford asked if she had implemented a telephone log to keep up with unresolved issues. She responded that she had. He pointed out that the telephone log would be a good management tool for her to keep informed on problem issues and to ensure that her employees were responding appropriately to questions. He expressed concern that she relied solely upon her employees to bring things to her attention. This created a very real potential for her to be unaware of potentially serious problem areas. He told her that closer interaction with her employees and daily reviews of the telephone logs would help resolve this concern. He suggested that rather than tell her staff to come to her with problems, she should make it a habit to visit their workstations on a regular basis and ask what they were working on and what problems they were encountering. He told her that weekly staff meetings were good, but they were not sufficient for a manager to keep on top of issues and know what was going on in the section.

He told her to get out into the section more and not just tell her staff that if they need her, they should come to her. Ms. Thomas indicated that she has always interacted with her staff. Mr. Crawford said that some of her staff had indicated they needed and wanted more interaction from her. He told her to visit their workstations more, share one-on-one with them, and show them that she is knowledgeable and in control of the section. This will also help to promote teamwork in the section.

Mr. Crawford returned to the telephone log issue and asked if the phone calls were logged daily. Ms. Thomas responded that the logs are placed in a binder weekly. The number of logs turned in depends on the amount of activity in the county offices and the number of questions received. As of this date, they have received quite a few. Mr. Crawford asked if she reviewed the logs on a daily basis and she responded that she did not. He indicated that a weekly review was not sufficient for her to stay on top of issues in a timely manner. Ms. Thomas indicated that all calls are not problem cases and the specialists can answer the call immediately. They only come to her with problem cases. If they have a problem and cannot answer a question, they write it down and put it in the binder. He asked if she was notified of such problems immediately. She responded that she was usually notified within the same day. Once again, Mr. Crawford told Ms. Thomas that he was not satisfied with her telling the specialists to come to her. He wants her to take the initiative as chief, go to them daily, and ask what problems they are having. He wants her to let them know that she can and will help them.

Mr. Crawford asked that if all specialists are in the office and the majority of calls go directly to them, what duties does she perform on a typical day. Ms. Thomas responded that she receives calls too and handles a lot of paperwork. She spends some time on the telephone with National Office personnel discussing procedure and problems. She receives the majority of payment limitation calls and receives calls on other areas as well. Mr. Crawford reminded her that she had previously stated that most calls go to the specialists. She acknowledged that they do, but she does receive some calls because the specialists are often tied up on the phone with other calls. Mr. Crawford asked if she advised the specialists of the problem cases she handles. She indicated they discuss these issues during staff meetings. Ms. Thomas also stated that she handles all the appeals for her division as well as ineligibility claims. These issues take a lot of time and concentration.

Mr. Crawford moved the discussion to State Committee meetings. He has observed that the specialists handle their appeals on their program areas. He asked what type of appeals she handled. She responded that she handles appeals where the producer goes to the county office as well as NAD appeals and STC appeals when the producer comes before the Committee. Ms. Thomas indicated that Sharrie Peterson handles authorization codes. Mr. Crawford asked how State Committee minutes were written. Ms. Thomas responded that

each specialist writes their own minutes and the Program Technician compiles them for the SED's secretary to incorporate into the final minutes. Mr. Crawford asked since specialists do not attend off-site State Committee meetings, does she write the minutes for those meetings since she is the only employee from the section to attend. She responded that the specialists write those minutes as well based on information she gives them. Mr. Crawford asked if she saw a problem with the specialists writing minutes for a meeting they did not attend. She responded that she has always handled minutes in this manner and did not see a problem. She indicated that there are not very many off-site State Committee meetings anyway. Mr. Crawford told Ms. Thomas he thought it would be more efficient for her to write the minutes rather than relaying information to each specialist and them writing minutes. Mr. Crawford also reminded Ms. Thomas that the State Committee has requested agenda items in advance in order for them to review issues prior to the meeting and it appears that her section has not complied with that request on several occasions. He indicated that it is also common for his secretary to have to wait on her section's minutes. It could be that the manner in which minutes are written is contributing to this problem. Ms. Thomas stated that most of the minutes are pre-written except for the State Committee's decisions and they just fill in the decision and who made the motions, etc.

Mr. Crawford told Ms. Thomas that they would work together on building the confidence of her staff and improving her training techniques as opportunities arise. He told her that, as he had indicated before, she is welcome to attend any training that she thinks would be beneficial to her. He asked her to let him know if she has identified any workshops or courses she feels would be helpful. He also indicated that he would continue to review programs and identify those he thought she should attend. Ms. Thomas told him that she receives leaflets on training and she is watching for workshops to attend. She has checked out two videos from the administrative division and has one more to watch.

Mr. Crawford asked Ms. Thomas if she has noticed any change, positive or negative, in her staff resulting from her recent efforts to be more involved in their work. She said she has noticed no change. They are the same as far as she knows. She indicated she was not aware there was a problem until he told her. She said the only things she has done differently were to have them log in their phone calls and document everything in writing. She has always told her staff if they have a problem with her, they should let her know and they would work on whatever the problem is. If they do not tell her about problems, she has no way of knowing. Mr. Crawford said it is only human nature to be reluctant to tell your superior that you have a problem with them or their performance. He feels the confidence level is still not what it should be with her staff. Her attitude has always been that if they have a problem with her or with their work, they should come to her. He stressed again the importance of her going to them and working to build the confidence. They need guidance with setting priorities. They are sometimes very frustrated because they may have 100 things to get done and

time to do only 80. What do they do? This is where she should be aware of the issue, setting priorities, and managing the staff in order to get the work done. He wants her to "roll up her sleeves" and spend a lot of time with her staff. She said she goes to their workstations many times whether they admit it or not. Mr. Crawford said that she must have not been doing enough of this because there appears to be a problem with the staff. He also indicated that since becoming SED, he has not observed her working at any employee's workstation. She is always in her office, many times with the door closed.

Mr. Crawford asked if she had discussed any of these issues with her employees, particularly during recent performance evaluations. She replied that she asked them if they thought the section was working as a team and she got a totally different picture than he obviously has. Mr. Crawford told Ms. Thomas that some members of her staff indicated to him that they do not even know if she is in the office unless they go to her office. He emphasized that he is attempting to help her with issues her employees had brought to his attention. His personal observations tend to indicate that the employees have reason for concern.

Mr. Crawford stressed to Ms. Thomas that confidence in her is a major concern to him. He hopes that questions are not going directly to the specialists because county offices lack confidence in her. Both county office employees and District Directors have told him this is the case. He stressed again the importance of being knowledgeable in program areas. He said a county office employee should be glad to get the chief on the telephone because that person should be the most knowledgeable one in the office. Ms. Thomas stated that more people did call her before he became the SED and since he came into the State Office, they do not call. She believes the confidence level fell when he became the SED. Mr. Crawford explained that he had a good working relationship with many county office people because he had been a CED. This may be why they are so willing to share concerns with him when they were reluctant to share with former SEDs.

Mr. Crawford stated that Ms. Thomas evidently does not believe there is a problem. He reminded her that she has told him and the State Committee that she is not an expert in her programs. She relies on her specialists to handle the details. He told her that if he asks any other chief a question in any of their areas of responsibility, they can help. If he asks her a question, she has to rely on her specialists for help. He wants to fix that. He wants it to be that when someone asks her a question, she knows the answer and does not have to refer most questions to a specialist under her supervision. He is not talking about every little detail, but she should have a good knowledge of all her areas of responsibility. He stressed that her opinion of the problems was not as important to him as what the field offices and District Directors think. Everyone but her is telling him that there is a problem, and from his personal observation, he agrees. Ms. Thomas stated that before voice mail was installed in the office, all calls came into the main section number. The Program Technician referred calls to

the specialists. When voice mail was installed and every specialist got their own number, county offices began calling the specialists directly. She stated county office employees hardly ever call her directly because they know what specialist handles the program. It is not like she is referring the calls to the specialists. Mr. Crawford told her that he had received complaints that even when someone did talk to her, she had to obtain assistance from Sharrie or Jeff to get the answer. Ms. Thomas admitted that if it was a question on peanuts, that was probably so.

Mr. Crawford asked to see the telephone logs for each person in her section, including her own. She advised him they were all in the same binder. He asked when the logs were placed in the binder and she said each Monday. He asked to see it along with the logs that were on each employee's desk. Ms. Thomas went to retrieve the logs and returned. Mr. Crawford reviewed each log and commented that Walda Messer received quite a number of calls. Ms. Thomas commented that Ms. Messer works in three different divisions and that is why she receives so many calls. Mr. Crawford asked if all problems had been resolved and no one was to be called back. Ms. Thomas responded yes, for the most part. However, if a question could not be answered, the employees write out the details so they will remember when they have to get back on the issue. Mr. Crawford asked if they indicate a date to make a follow-up contact. Ms. Thomas responded no. Mr. Crawford expressed concern about this because if the employee who made the notation was not available, no one else would know how or when to follow up. Mr. Crawford asked if the logs were maintained on each employee's desk until placed in the binder. She responded yes and that they are available for anyone to review if the employees is not in the office. Mr. Crawford asked if she had assigned someone to review the logs of those who were out of the office to ensure contacts are made timely. She responded that she had not, but she would have the Technician do this. Mr. Crawford asked if someone maintains the binder and follows up on any outstanding calls when the logs are placed there. She said no, but she would either assign someone to do that or she would do it herself, depending upon who was available. Mr. Crawford suggested that the specialists notate their calendars to remind them they have committed to calling someone back. Ms. Thomas responded that "she guessed she should address that; she did not know." Mr. Crawford told her to establish a policy and administer it consistently.

Mr. Crawford told Ms. Thomas that he felt they were making progress and he had no reason to believe it would not continue. He feels they will meet their objective and reach the standard of performance he expects. He said they would schedule the three-week reviews as closely as possible, but that adjustments in the schedule may be needed with the holidays coming up. He told her to come to him anytime she needs assistance and he would make a point to visit with her more often during the OTI period to observe and make suggestions for improvement. They will try to conduct another progress review the week of December 18. If she has leave scheduled for that week, she should let him know

in advance. He also asked if she had any use or lose leave. She responded that she did not.

Mr. Crawford asked Ms. Thomas if she had anything to add or any suggestions to make. She replied that she did not. She was proud he thought things were working better and she would continue to do her best. She added that he had only 11 more months to put up with her because she would be retiring.


Danny F. Crawford
State Executive Director

DX 12

NOV. -01'01(THU) 11:21                                    TEL:334 279 5550                    P. 001

ALABAMA FSA STATE OFFICE
STATE EXECUTIVE DIRECTOR
Phone: (334) 279-3501
Fax :    (334) 279-3550

# facsimile transmittal

Msg. No.: _____

To: _FSA-CR & SBUS_                           FAX # _202-401-7103_

Attention: _Deborah A. Lombardino_            Date: _11/01/01_

From: ~~Dennis Crawford, SED~~ _Onetta Thomas_   Pages: _2_

Subject: _____

DEFENDANT'S
EXHIBIT

CASE
NO.                    12

EXHIBIT
NO.

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-942**                          U. S. Department of Agriculture
(07-06-96)                              Farm Service Agency

| For CR Staff Only |
| --- |
| Date Received: _11 - 1 - 01_ |
| Complaint Case No.: _AL - 01 -001E_ |

### Agreement to Participate in the
### Early Resolution Program

I agree to participate in the FSA's Early Resolution Program (ERP), through mediation, of my Equal Employment Opportunity complaint. I understand that ERP is a voluntary program to which I consent.

I understand that I have not given up any rights provided to me under the Equal Employment Opportunity complaint process. I also understand that I may choose to withdraw from ERP any time before an agreement is reached.

I understand that if a mutually acceptable resolution is reached, the resolution agreement shall be binding on the parties, prepared in writing by the mediator, and signed by all parties. The resolution agreement will be provided to the parties for signature at the conclusion of the mediation session.

I understand that everything said in the mediation session is privileged and confidential.

I understand that the nature of my complaint may be disclosed at this time to the management official(s) participating in the mediation.

I agree that the pre-complaint processing period shall be 90 days.

Print Full Name: _Ozetta C. Thomas_                    W- 334.279-35
                                                                          Telephone Number: _H- 334 875-39_
Signature: _Ozetta C. Thomas_

                                                                          Date: _11/01/01_

### Return this completed form to:

USDA-FSA, Civil Rights Staff
EEO Counseling and Mediation Branch
1400 Independence Ave SW
Stop 0509
Washington DC 20250-0509

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 721-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

DX 13

DEFENDANT'S
EXHIBIT

CASE
NO.

EXHIBIT
NO.

## RESOLUTION AGREEMENT

This agreement made by and between Ozetta Thomas, (hereafter referred to as Complainant) and the U. S. Department of Agriculture, Farm Service Agency (hereafter referred to as the Agency), constitutes a full, complete, and final resolution of all the employment concerns raised in the Complainant's informal EEO complaint filed on September 14, 2001, before EEO mediator, Hope C. Light. The issues and basis of complaint #AL-01-001E are: non-sexual harassment and performance evaluation based on race (black)

This resolution agreement does not prevent the Agency from pursuing any issues of alleged misconduct raised in the complaint, nor from initiating any preventive corrective or disciplinary action against Agency officials, if warranted.

The parties wish to set forth the terms of the agreement in writing. This neither determines nor implies a finding of or admission that discrimination occurred.

This agreement is authorized under 29 C.F.R. §1614, regulations on processing EEO complaints in the Federal Government, and the EEOC's Management Directive (MD)-110.

The Agency agrees to:

1. Detail the complainant to the Civil Rights and Small Business Utilization Staff, Program Complaints Branch in Montgomery, Alabama, effective December 16, 2001, as a Program Complaint Specialist, GS-301-13. The duration of the detail to be effective through January 4, 2003 to return to her former position effective January 5, 2003. The State Executive Director will process the SF-52 within (10) ten days of the signing of this agreement.

2. Pay the complainant the sum of $1,500 (one thousand five hundred dollars). The parties agree that this sum represents a total and complete settlement of all money issues payable to the complainant or to her attorney in this matter. The State Executive Director agrees to process the payment of attorney fees within 30 days of receipt of the detailed bill.

3. Grant the complainant a Within-Grade-Increase from a Supervisory Program Specialist GS-1145-13/6 to a GS-1145-13/7 with an effective date of January 13, 2002. The State Executive Director will process the SF-52 within ten (10) days of the signing of this agreement.

4. Expunge all references in all records maintained by the Agency of the performance related matters concerning the complainant since May 21, 2001. Remove the Opportunity to Improve dated November 6, 2001 and replace the Performance Work Plan dated November 6, 2001, with a Performance Work Plan rating of achieved in all performance plan elements.

5. Place the complainant on paid administrative leave effective December 6, 2001 through December 15, 2001.

The Complainant agrees to:

1. Withdraw the informal EEO complaint initiated on September 14, 2001 and agrees not to raise any new complaint about the above cited issues.

2. Submit a detailed bill for attorney's fees to the State Executive Director within ten (10) days of the signing of this agreement.

3. Release, waive and withdraw any and all complaints, grievances, appeals or civil actions against the Agency, its employees and officers in their individual or official capacities for any concerns arising out of these (or related) employment situations prior to the signing of this agreement. This agreement does not prevent the Complainant from exercising their rights under 29 C.F.R. §1614, in any other matter that arises after the signing of this agreement.

Both parties agree:

1. To respect the privacy rights of all individuals involved in the matter. The fact that the case was voluntarily resolved in a manner acceptable to both sides may be communicated to others. Explicit terms of the agreement will not be discussed with, disclosed or released to anyone who does not need the information to implement the agreement, without the express permission of the other party.

2. To cooperate and communicate in good faith to complete implementation of this agreement and to abide by the terms of this agreement.

3. To declare this complaint resolved through this resolution agreement. There are no other agreements between the parties, either expressed or implied, oral or written.

4. That after the agreement is fully implemented, the Agency will within 30 calendar days, provide the Complainant with a written notice explaining the specific actions taken to implement the agreement. A copy of the notice will be provided to: FSA-CR&SBUS, Attn: Debbie Lombardino, 1400 Independence Avenue, SW, Stop Code 0509, Washington, D.C. 20250. If the Complainant has any questions about the implementation actions after receiving the notice, and the questions are not satisfactorily addressed by the Agency, the Complainant may raise these questions with the FSA-CR&SBUS at the address above or by calling FSA-CRSBUS at (202) 401-7220.

5. That if the terms of this agreement are not carried out, through no fault of the Complainant, the Complainant may request enforcement of the terms of the agreement, or that the complaint be reinstated at the point at which it was closed by this agreement. This request must be filed within 30 calendar days of the alleged failure to implement this agreement with the Employment Complaint Division, Office of Civil Rights, Employment Compliance and Technical Assistance Division, 1400 Independence Avenue, SW, Stop 9440, Washington, D.C. 20250-9440. The request should include a copy of this agreement, an explanation of which particular term(s) of the agreement have not been implemented, why the Complainant believes the term(s) have not

been implemented, and any relevant documents. A copy of the request should also be provided to the individual who signed this agreement on behalf of the Agency.

6. That they are entering into this agreement voluntarily, without coercion or duress, and fully understand the terms of this agreement.

Ozetta Thomas
Complainant

12/05/01
DATE

Jeffrey C. Robinson
Attorney-at-Law

12/05/01
DATE

Danny F. Crawford
State Executive Director

12/05/01
DATE

William A. March
Resolving Official

12/05/01
DATE

DX 14

DEFENDANTS
EXHIBIT

CASE
NO.

EXHIBIT
NO.

Standard Form 52
Rev. 7 91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 3

# REQUEST FOR PERSONNEL ACTION

PART A - REQUESTING OFFICE (Also complete Part B, Items 1, 7-22, 32, 33, 36, and 39.)

1. Actions Requested
DETAIL - NTE　01-04-03

3. For Additional Information Call (Name and Telephone Number)
VERDELL M. ZEIGLER,　334-279-3504

4. Proposed Effective
12-16-0

5. Action Requested By (Typed Name, Title, Signature, and Request Date)
DANNY F. CRAWFORD, STATE EXECUTIVE DIRECTOR
12-07-01　*Danny F. Crawford*

6. Action Authorized By (Typed Name, Title, Signature, and Concurrence Date)

PART B - For Preparation of SF 50 (Use only codes in FPM Supplement 292-1. Show all dates in month-day-year order.)

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| THOMAS, OZETTA C. | | 11-13-47 | |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A Code | 5-B. Nature of Action | 6-A Code | 6-B. Nature of Action |
| | DETAIL - NTE | | |
| 5-C Code | 5-D. Legal Authority | 6-C Code | 6-D. Legal Authority |
| 5-E Code | 5-F. Legal Authority | 6-E Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| SUPVY AGRL PROG SPECLST | PROG COMPLAINTS SPECLST |
| AL351013　114532 | |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade Level | 19. Step or Rate | 20. Total Salary Award | 21. Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 1145 | 13 | 07 | 74,102.00 | PA | GS | 0301 | 13 | 07 | 74,102.00 | B |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 68,817.00 | 5,285.00 | 74,102.00 | | 68,817.00 | 5,285.00 | 74,102.00 | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| FARM SERVICE AGENCY | FARM SERVICE AGENCY |
| EXEC DIR FOR STATE OPERS | EXEC DIR FOR STATE OPERS |
| ALABAMA STATE OFFICE | ALABAMA STATE OFFICE |
| PRODUCTION ADJ & COMPLIANCE B | CIVIL RIGHTS & SMALL BUS UTIL STAFF |

## EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | 25 Agency Use | 26. Veterans Preference for |
|---|---|---|---|---|
| 1 | 1 - None　3 - 10-Point/Disability　5 - 10-Point/Other　2 - 5-Point　4 - 10-Point/Compensable　6 - 10-Point/Compensable/30% | 1　0-None　2-Conditional　1-Permanent　3-Indefinite | | YES　X |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| LO BASIC-STANDARD-2X ADDITIONAL | 9 NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K　FERS AND FICA | 04/30/68 | F　FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1　1- Competitive Service　3-SES General　2- Excepted Service　4-SES Career Reserved | E　E - Exempt　N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 01-2130-101 | MONTGOMERY　　MONTGOMERY, AL |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

| 45. Educational Level | 46. Year Degree Attained | 47. Academic Discipline | 48. Functional Class | 49. Citizenship | 50. Veterans Status | 51. Supervisory Status |
|---|---|---|---|---|---|---|
| | | | | 1 - USA 8 - Other | | |

## PART C - Reviews and Approvals (Not to be used by requesting office.)

| 1. Office/Function | Initials/Signature | Date | Office/Function | Initials/Signature | Date |
|---|---|---|---|---|---|
| | | | D. | | |
| B. | | | E. | | |
| C. | | | F. | | |

2. Approval. I certify that the information entered on this form is accurate.

DX 15

# CHESTNUT, SANDERS, SANDERS, PETTAWAY, CAMPBELL & ALBRIGHT, P.C.

### ATTORNEYS AND COUNSELORS AT LAW

#### ONE UNION STREET — SELMA ALABAMA 36702-1290

J. L. CHESTNUT, JR
HENRY SANDERS
ROSE M. SANDERS
COLLINS PETTAWAY, JR
KATY SMITH CAMPBELL
APRIL ENGLAND-ALBRIGHT

JEFFREY C. ROBINSON

MAILING ADDRESS:

P. O. BOX 1290
SELMA, ALABAMA 36702-1290
(334) 875-9264
TELECOPIER: (334) 875-9375
TELECOPIER: (334) 875-9883

December 10, 2001

DEFENDANT'S
EXHIBIT 15

CASE
NO.

EXHIBIT
NO.

Mr. William A. March, Resolving Official
Ms. Hope Light, Mediator
US DEPARTMENT OF AGRICULTURE
FARM SERVICE AGENCY
Washington State FSA Office
316 W. Boone Ave. Ste.568
Spokane, WA 99201-2350

### RE: Ozetta Thomas/Mediation

Dear Lady and Gentlemen:

Below please find the calculation of Attorney Fees requested during the mediation. Although my fees are above the $1,500.00 (one thousand and five hundred dollars) offered, I am willing to accept this amount out of deference to my client. Note the following:

> **Retainer: $450.00** (four hundred and fifty dollars)
> November 28, 2001 = Consultation and preparation – 4 hours
> November 29, 2001 = Research – 2 hours
> December 6, 2001 = Mediation – 6 hours
> $125 per hour for all other legal work

## Total: $1,950.00 (one thousand nine hundred and fifty dollars)

I look forward to hearing from you.

With warmest regards, I am...

Always,

Jeffrey C. Robinson, Esq.



CCC-184
(06-24-94)

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**Commodity Credit Corporation**

FEDERAL RESERVE BANK
KANSAS CITY

PAY EXACTLY:

00000798   18-200
1010

| OFFICE CODE | PROG. | CHECK NO. | DATE | AMOUNT |
|---|---|---|---|---|
| 01-000-0 | STOADM | 00000798 | 12-26-2001 | $*****1,500.00 |

One Thousand Five Hundred Dollars

PAY TO THE ORDER OF:

REF:   AL-01-001E

OZETTA C THOMAS
2629 HWY 14 EAST
SELMA, AL  36703

NOT NEGOTIABLE
ISSUING OFFICE COPY

Signed _____
(AUTHORIZED REPRESENTATIVE OF CCC)

Counter Signed _____
(AUTHORIZED REPRESENTATIVE OF CCC)

ATTACHMENT 2

# DX 16



**USDA**

' States
ιment of
Agriculture

January 30, 2002

Farm and Foreign
Agricultural
Services

Farm Service
' Agency

TO:        Ozetta Thomas

Alabama State FSA
Office
P. O. Box 235013
Montgomery, AL
36123-5013

FROM:      Danny F. Crawford, State Executive Director

SUBJECT:    Performance Evaluation

Please find enclosed your FY 2001 Performance Work Plan.  This is the same plan
presented to you the week of January 21, 2002.  The Performance Work Plan reflects a
rating of achieved in all performance plan elements.  Please sign in the indicated place
and return the Performance Work Plan at your earliest convenience to be placed in your
Official Personnel Folder.   For your convenience, we have also enclosed a postage-paid,
self-addressed envelope.

This action completes the agency agreement.  If you have any questions, please feel free
to contact our office for resolution.  Thanks for your cooperation in this matter.

Attachments



DEFENDANT'S
EXHIBIT *16*

CASE
NO.

EXHIBIT
NO.

REPRODUCE LOCALLY. *Include form number and date on all reproductions.*

(01-28-99)

United States Department of Agriculture
Service Center Agencies

# PERFORMANCE WORK PLAN

*Privacy Act Notice: Submission of information is mandatory. Failure to provide information will prohibit data collection required by the Office of Personnel Management.*

| | |
|---|---|
| 1. EMPLOYEE'S NAME<br>THOMAS, OZETTA C. | 2. RATING PERIOD<br>10/1/00 - 9/30/01 |
| 3. TITLE/SERIES/GRADE<br>SUPVR. AGRIL. PROGRAM SPECIALIST GS0-1145-13 | 4. ORGANIZATION<br>USDA/FSA |
| 5. DUTY LOCATION<br>MONTGOMERY, ALABAMA | 6. SOCIAL SECURITY NO. |

## PART I—PERFORMANCE PLAN

7. CRITICAL RESULTS *(Check a Minimum of 2/Maximum of 5 Applicable Elements)*

Note:   The narrative statement describes the "Results Achieved" level of performance. Where applicable, quantity, quality, and timeliness are derived directly from appropriate agency regulations, policies, instructions, work plans, etc. If no agency or regulatory guidelines exist, further clarification will be provided by the rating official.

| Element | Achieved | Not Achieved |
|---|---|---|
| **Element #1 - Execution of Duties**<br>Completed work assignments are routinely performed in a timely manner, assuring a quality of work that meets the needs of the organization. Solutions developed demonstrate improvements in work methods. Work products do not require substantive revisions. Assignments are completed in accordance with applicable agency guidelines, including timeframes. Further clarification, as needed: | | |
| ✔ **Element #2 - Communications**<br>As a rule, oral and written communications are clear, correct, timely, and presented in an understandable manner. Supervisor and coworkers are informed of issues and problems when necessary. Information and guidance provided is timely and accurate. Further clarification, as needed: | ✓ | |
| ✔ **Element #3 - Supervision**<br>Work is assigned in a fair and effective manner. Technical guidance to subordinate staff is ordinarily provided in a timely manner. Performance management is implemented in accordance with applicable guidelines. Issues, concerns, or problems are handled promptly and fairly. To the extent possible, staff is properly trained and complies with occupational health and safety programs. Management decisions are supported and implemented within appropriate timeframes. Further clarification, as needed: | ✓ | |
| **Element #4 - Team Leadership**<br>Routinely leads individuals and team members toward specific goals and accomplishments. Provides encouragement, guidance, and direction as needed. Adjusts style to fit situation. Delegates appropriate authority in an effective manner. Coordinates functions of the team members. Demonstrates a sincere interest in employees' activities, abilities, etc. Further clarification, as needed: | | |

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

# DX 17





**United States
Department of
Agriculture**

Farm and Foreign
Agricultural
Services

Farm Service Agency
Alabama State Office
P. O. Box 235013
Montgomery, AL
36123-5013

Tel: (334) 279-3500
Fax: (334) 279-3550

January 23, 2002

Ms. Ozetta C. Thomas
2629 Highway 14 East
Selma, Alabama 36703

Dear Ms. Thomas:

This is written notice explaining the specific actions taken to implement the
Resolution Agreement made by and between you and the U.S. Department of
Agriculture, Farm Service Agency on December 5, 2001.

The Farm Service Agency has taken the following actions as outlined in the
agreement:

1   Detail the complainant to the Civil Rights and Small Business Utilization
    Staff, Program Complaints Branch in Montgomery, Alabama, effective
    December 16, 2001, as a Program Complaint Specialist, GS-301-13. The
    duration of the detail to be effective through January 4, 2003 to return to
    her former position effective January 5, 2003. The State Executive Director
    will process the SF-52 within (10) days of the signing of this agreement.

    The SF-52 was processed on December 7, 2001. It was forwarded to the
    Kansas City Management Office for processing. Jim Logan, KCMO, forwarded
    the SF-52 to HRD in Washington, DC for further processing. See Attachment 1.

2   Pay the complainant the sum of $1,500 (one thousand five hundred dollars).
    The parties agree that this sum represents a total and complete settlement of
    all money issues payable to the complainant or to her attorney in this matter.
    The State Executive Director agrees to process the payment of attorney fees
    within 30 days of receipt of the detailed bill.

    The agreement stipulated that a detailed bill for attorney's fees was to be submitted
    within ten (10) days of the signing of the agreement to the State Executive Director.
    However, it was submitted to the Mediator and Resolving Official. The State Executive
    Director received the bill from Hope Light, Mediator, on December 19, 2001. Payment
    of $1500.00 was processed on December 26, 2001. See Attachment 2.

3   Grant the complainant a Within-Grade-Increase from a Supervisory Program Specialist
    GS-1145-13/6 to a GS-1145-13/7 with an effective date of January 13, 2002. The State
    Executive Director will process the SF-52 within ten (10) days of the signing of this
    agreement.

Ozetta C. Thomas                                                    Page 2

Due to the transfer of personnel processing from Kansas City Management Office to the State Office, no SF-52 was required for this action. However, the personnel system was updated on December 7, 2001 to process a within-grade increase effective January 13, 2002. NOTE: While reviewing your Official Personnel Folder, it was discovered that the Resolving Official was given erroneous information concerning your grade and step level at the time of the mediation. You were already at the GS-13-7 level. Therefore, the within-grade increase was processed to the GS-13-8 level. See Attachment 3.

4    Expunge all references in all records maintained by the Agency of the performance related matters concerning the complainant since May 21, 2001. Remove the Opportunity to Improve dated November 6, 2001 and replace the Performance Work Plan dated November 6, 2001, with a Performance Work Plan rating of achieved in all performance plan elements.

A new Performance Work Plan was prepared reflecting a rating of achieved in all performance plan elements and has been placed in your Performance File which is maintained with your Official Personnel File in the Alabama State FSA Office Administrative Division. The replacement Performance Work Plan is dated November 6, 2001 which was the date of the original rating. The Opportunity to Improve has been removed and all records maintained by the Agency of performance related matters concerning you have been expunged. Both you and your attorney are free to review your Official Personnel File and Performance File at any time by contacting Administrative Officer Verdell M. Zeigler. See Attachment 4.

5    Place the complainant on paid administrative leave effective December 6, 2001 through December 15, 2001.

You were placed on administrative leave for the period indicated. See Attachment 5.

The agreement stipulates that, after the agreement is fully implemented, FSA will within 30 calendar days, provide you with this written notice. The last action processed to implement the agreement was taken on December 26, 2001.

If you have questions concerning the agreement or implementation of the agreement, please contact the FSA-CR&SBUS at 1400 Independence Avenue, SW, Stop Code 0509, Washington, D.C. 20250, phone: 202-401-7220.

Sincerely,

DANNY F. CRAWFORD
State Executive Director

Attachments (5)

Standard Form 52
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 3 **REQUEST FOR PERSONNEL ACTION**

ATTACHMENT 1

**PART A - REQUESTING OFFICE** *(Also complete Part B, Items 1, 7-22, 32, 33, 36, and 39.)*

| 1. Actions Requested | 2. Request Number |
|---|---|
| DETAIL - NTE  01-04-03 | |

| 3. For Additional Information Call (Name and Telephone Number) | 4. Proposed Effective D. |
|---|---|
| VERDELL M. ZEIGLER, 334-279-3504 | 12-16-01 |

| 5. Action Requested By (Typed Name, Title, Signature, and Request Date) | 6. Action Authorized By (Typed Name, Title, Signature, and Concurrence Date) |
|---|---|
| DANNY F. CRAWFORD, STATE EXECUTIVE DIRECTOR<br>12-07-01  *Danny F. Crawford* | |

**PART B - For Preparation of SF 50** *(Use only codes in FPM Supplement 292-1. Show all dates in month-day-year order.)*

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| THOMAS, OZETTA C. | 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 | 11-13-47 | |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| | DETAIL - NTE | | |
| 5-C Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| SUPVY AGRL PROG SPECLST<br>AL351013    114532 | PROG COMPLAINTS SPECLST |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade Level | 19. Step or Rate | 20. Total Salary/ Award | 21. Pay Ba |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 1145 | 13 | 07 | 74,102.00 | PA. | GS | 0301 | 13 | 07 | 74,102.00 | PA. |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 68,817.00 | 5,285.00 | 74,102.00 | | 68,817.00 | 5,285.00 | 74,102.00 | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| FARM SERVICE AGENCY.<br>EXEC DIR FOR STATE OPERS<br>  ALABAMA STATE OFFICE<br>    PRODUCTION ADJ & COMPLIANCE B | FARM SERVICE AGENCY<br>EXEC DIR FOR STATE OPERS<br>  ALABAMA STATE OFFICE<br>    CIVIL RIGHTS & SMALL BUS UTIL STAFF |

**EMPLOYEE DATA**

| 23. Veterans Preference | | 24. Tenure | | 25 Agency Use | 26. Veterans Preference for F: |
|---|---|---|---|---|---|
| 1 | 1 - None    3 - 10-Point/Disability    5 - 10-Point/Other<br>2 - 5-Point    4 - 10-Point/Compensable    6 - 10-Point/Compensable/30% | 1 | 0-None    2-Conditional<br>1-Permanent  3-Indefinite | | YES  X   NO |

| 27. FEGLI | | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|---|
| LO BASIC-STANDARD-2X ADDITIONAL | | 9 NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per |
|---|---|---|---|
| K  FERS AND FICA | 04/30/68 | F FULL TIME | Biweekly Pay Period |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1  1- Competitive Service  3-SES General<br>2- Excepted Service  4-SES Career Reserved | E  E - Exempt<br>N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 01-2130-101 | MONTGOMERY    MONTGOMERY, AL |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

| 45. Educational Level | 46. Year Degree Attained | 47. Academic Discipline | 48. Functional Class | 49. Citizenship | 50. Veterans Status | 51. Supervisory Status |
|---|---|---|---|---|---|---|
| | | | | 1 - USA  8 - Other | | |

**PART C - Reviews and Approvals** *(Not to be used by requesting office.)*

| 1. Office/Function | Initials/Signature | Date | Office/Function | Initials/Signature | Date |
|---|---|---|---|---|---|
| A. | | | D. | | |
| B. | | | E. | | |
| C. | | | F. | | |

2. Approval: I certify that the information entered on this form is accurate and that the proposed action is in compliance with statutory and regulatory

Signature

Approval Da

CCC-184
(06-24-94)

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**Commodity Credit Corporation**

00000798    18-200
              1010

FEDERAL RESERVE BANK
KANSAS CITY

PAY EXACTLY:

| OFFICE CODE | PROG. | CHECK NO. | DATE | AMOUNT |
|---|---|---|---|---|
| 01-000-0 | STQADM | 00000798 | 12-26-2001 | $*****1,500.00 |

One Thousand Five Hundred Dollars

PAY TO THE ORDER OF:

REF:    AL-01-001E

OZETTA C THOMAS
2629 HWY 14 EAST
SELMA, AL  36703

**NOT NEGOTIABLE**
ISSUING OFFICE COPY

Signed _____
(AUTHORIZED REPRESENTATIVE OF CCC)

Counter Signed _____
(AUTHORIZED REPRESENTATIVE OF CCC)

ATTACHMENT 2

CDEC-13-01 WED 09:14    FSA STO SPOKANE, WA    TEL 5093133074    P. 001

# CHESTNUT, SANDERS, SANDERS, PETTAWAY, CAMPBELL & ALBRIGHT, P.C.

### ATTORNEYS AND COUNSELORS AT LAW
#### ONE UNION STREET — SELMA ALABAMA 36702-1290

J. L. CHESTNUT, JR
HENRY SANDERS
ROSE M. SANDERS
COLLINS PETTAWAY, JR.
KATY SMITH CAMPBELL
APRIL ENGLAND-ALBRIGHT

MAILING ADDRESS:

P. O. BOX 1290
SELMA, ALABAMA 36702-1290
(334) 875-9264
TELECOPIER: (334) 875-9375
TELECOPIER: (334) 875-9863

December 10, 2001

JEFFREY C. ROBINSON

Mr. William A. March, Resolving Official
Ms. Hope Light, Mediator
US DEPARTMENT OF AGRICULTURE
FARM SERVICE AGENCY
Washington State FSA Office
316 W. Boone Ave. Ste.568
Spokane, WA 99201-2350

### RE: Ozetta Thomas/Mediation

Dear Lady and Gentlemen:

Below please find the calculation of Attorney Fees requested during the mediation. Although my fees are above the $1,500.00 (one thousand and five hundred dollars) offered, I am willing to accept this amount out of deference to my client. Note the following:

Retainer: $450.00 (four hundred and fifty dollars)
November 28, 2001 = Consultation and preparation – 4 hours
November 29, 2001 = Research – 2 hours
December 6, 2001 = Mediation – 6 hours
$125 per hour for all other legal work

### Total: $1,950.00 (one thousand nine hundred and fifty dollars)

I look forward to hearing from you.

With warmest regards, I am...

Always,

Jeffrey C. Robinson, Esq.

ATTACHMENT 3



Attachment 4

REPRODUCE LOCALLY. *Include form number and date on all reproductions.*

(01-28-99)

United States Department of Agriculture
Service Center Agencies

# PERFORMANCE WORK PLAN

*Privacy Act Notice: Submission of information is mandatory. Failure to provide information will prohibit data collection required by the Office of Personnel Management.*

| 1. EMPLOYEE'S NAME | 2. RATING PERIOD |
|---|---|
| THOMAS, OZETTA C. | 10/1/00 - 9/30/01 |

| 3. TITLE/SERIES/GRADE | 4. ORGANIZATION |
|---|---|
| SUPVR. AGRIL. PROGRAM SPECIALIST GS0-1145-13 | USDA/FSA |

| 5. DUTY LOCATION | 6. SOCIAL SECURITY NO. |
|---|---|
| MONTGOMERY, ALABAMA | 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 |

## PART I—PERFORMANCE PLAN

7. CRITICAL RESULTS *(Check a Minimum of 2/Maximum of 5 Applicable Elements)*

Note: The narrative statement describes the "Results Achieved" level of performance. Where applicable, quantity, quality, and timeliness are derived directly from appropriate agency regulations, policies, instructions, work plans, etc. If no agency or regulatory guidelines exist, further clarification will be provided by the rating official.

| Element | Achieved | Not Achieved |
|---|---|---|
| ☐ **Element #1 - Execution of Duties**<br>Completed work assignments are routinely performed in a timely manner, assuring a quality of work that meets the needs of the organization. Solutions developed demonstrates improvements in work methods. Work products do not require substantive revisions. Assignments are completed in accordance with applicable agency guidelines, including timeframes. Further clarification, as needed: | | |
| ☑ **Element #2 - Communications**<br>As a rule, oral and written communications are clear, correct, timely, and presented in an understandable manner. Supervisor and coworkers are informed of issues and problems when necessary. Information and guidance provided is timely and accurate. Further clarification, as needed: | ✓ | |
| ☑ **Element #3 - Supervision**<br>Work is assigned in a fair and effective manner. Technical guidance to subordinate staff is ordinarily provided in a timely manner. Performance management is implemented in accordance with procedure. Issues, concerns, or problems are handled promptly and fairly. To the extent possible, staff is properly trained and complies with occupational health and safety programs. Management decisions are supported and implemented within appropriate timeframes. Further clarification, as needed: | ✓ | |
| ☐ **Element #4 - Team Leadership**<br>Routinely leads individuals and team members toward specific goals and accomplishments. Provides encouragement, guidance, and direction as needed. Adjusts style to fit situation. Delegates appropriate authority in an effective manner. Coordinates functions of the team members. Demonstrates a sincere interest in employees' activities, abilities, etc. Further clarification, as needed: | | |

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and mental or family status. Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

| Element | Achieved | Not Achieved |
|---|---|---|
| **Element #5 - Program Management**<br>Manages program(s) resolving issues and problems within the employee's control. Monitors all aspects of program(s) for quality, effectiveness, and consistency. Program plans and guidance are responsive to objectives and requirements of the Agency. Policy instructions are appropriately issued and are accurate. Evaluates effectiveness of work and adjusts plans accordingly. Further clarification, as needed: ☑ | ✓ | |
| **Element #6 - Special Projects**<br>Special projects are regularly completed on time in a competent, accurate, and thorough manner. Completed projects comply with regulations and procedures. Special projects are completed independently, or reflect research and collaboration with others as required. Further clarification, as needed: ☐ | | |
| **Element #7 - Research and Analysis**<br>Thoroughly and accurately researches issues in a timely manner, using available reference sources (e.g. USDA manuals, or applicable law or regulations). Makes reasonable recommendations or decisions based on available guidance. Further clarification, as needed: ☐ | | |
| **Element #8 - Customer Service**<br>Provides advice that is timely, responsive, and accurate. Maintains appropriate rapport with internal and external customers. Develops and establishes working relationships with external organizations as required. Keeps supervisor and/or team leader informed of difficult and/or controversial issues and unique problems. Takes action to effectively solve problems before they have an adverse impact on the organization or other employees. Further clarification, as needed: ☑ | ✓ | |
| **Element #9 - Equal Opportunity & Civil Rights [Mandatory for supervisors and managers]**<br>Performs all duties in a manner which consistently demonstrates fairness, cooperation, and respect toward coworkers, office visitors, and all others in the performance of official business. Demonstrates an awareness of EO/CR policies and responsibilities of Agency and Departmental goals of valuing a diverse, yet unified workforce. Further clarification, as needed: ☑ | ✓ | |
| **Element #10 - Personal Contacts - EO/CR [Mandatory for all non-supervisory employees]**<br>Routinely displays courteous and tactful behavior towards internal and external customers, supervisors, coworkers, and/or team members. Projects a positive and professional image of USDA. Performs all duties in a manner which consistently demonstrates fairness, cooperation, and respect toward coworkers, office visitors, and all others in the performance of official business. Demonstrates an awareness of EO/CR policies and responsibilities of Agency and Departmental goals of valuing a diverse, yet unified workforce. Further clarification, as needed: ☐ | | |
| **Element #11 - Resources Management**<br>Monitors allocated funds and maintains complete and accurate records of expenditures. Routinely utilizes resources in an efficient and effective manner. Ensures that funds, property and other resources are guarded against waste, loss, unauthorized use, and misappropriation. Further clarification, as needed: ☐ | | |

(01-29-99)

| Element | Achieved | Not Achieved |
|---|---|---|
| ☐ **Element #12 - Individual Contributions to the Team**<br>Ordinarily displays dependability and reliability. Promotes open communication. Contributes creative ideas and actively participates in team meetings resulting in added value to the team's products and services. When problems arise, explores causes and assists in resolving them. Works with team members to appropriately implement decisions. Is usually open-minded to new ideas and approaches in implementing the team's goals. Willingly accepts and acts on constructive criticism. Further clarification, as needed: | | |
| ☐ Element #13 - | | |
| ☐ Element #14 - | | |
| ☐ Element #15 - | | |

**PART II - PROGRESS REVIEWS**

Note:    One progress review is required; however, frequent communication between the employee and rating official regarding performance is encouraged and recommended. Date of review, initials of employee (Emp), and initials of Rating Official (R.O.) must be provided for each review. Employee and Rating Official are encouraged to provide written comments.

**8.  RATING OFFICIAL'S COMMENTS**

**9.  EMPLOYEE'S COMMENTS**

| 10A.   Emp Initials:          Date: | 10B.   R.O. Initials:          Date: |

*Rec. 01/22/02*

(01-28-99)

Page 4 of 4

## DISCUSSION TOPICS FOR USE IN PLANNING PERFORMANCE AND CONDUCTING PROGRESS REVIEWS

- Employee's performance on primary responsibilities/priorities in the past year.
  - revise performance work plan for the coming year, as necessary
  - relationship to overall work unit objectives

- Employee's strengths and areas for growth

- Barriers to effective work performance and job satisfaction

- Employee's development (over the past year; future needs for current job; long-term career goals and developmental needs to achieve them)

- Possible work process improvements

- Whether employee continues to grow to meet future needs and demands of the changing environment

- Employee's feedback/constructive suggestions for supervisor

- Anything else the employee or supervisor would like to address

### PART III – SUMMARY RATING

[X] RESULTS ACHIEVED                    [ ] RESULTS NOT ACHIEVED*

* A "Results not Achieved" rating requires explanation. Provide additional comments as an attachment.

### PART IV – CERTIFICATION

Note:  Employee's signature certifies review and discussion with the Rating Official. It does not necessarily mean that the employee concurs with the information on this form.

| 11.  PERFORMANCE PLAN *(Sign when plan is established)* | | 12.  SUMMARY RATING *(Sign when rating is completed)* | |
|---|---|---|---|
| Employee Signature | Date | Employee Signature **See Remarks | Date |
| Rating Official Signature | Date | Rating Official Signature *Danny F. Crawford* | Date 11/6/01 |
| I have reviewed the standards of conduct and have had any questions answered by my satisfaction. (Employee initial appropriate block below.) YES [ ]  NO [ ] | | Reviewing Official (required for summary rating of "Results Not Achieved") | Date |

**Employee is on extended detail.  Attempted to obtain her signature on January 22, 2002, but she refused to sign.

Attachment 5

```
 T PP AG ST TOWN UN TK G W O FT PT INT 40 ST END S/S NAME: THOMAS, OZETTA C.
   24 FA 1 2130  1  1 1      1                   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   DATE:12-17-01
  2 FS   AL   O    F          CON   AUO1      2    %    AC 2 DA    CS   AWS 8
    PR TC SUFFIX WEEK1  WEEK2 APP    A        B    C    D    E     F    LL
 03   01           13.0   0.0
 04   66           31.0  36.0                                          1

 14   67      80.0 <TOTAL TIME ANNL FWD   175.0 ACCR   8   USED  0.0 BAL  183.0
 15  0  0           0.0   0.0 SICK FWD   950.3 ACCR   4   USED  0.0 BAL  954.3
 16  0  0           0.0   0.0 COMP FWD     1.2 ACCR   0.0 USED  0.0 BAL    1.2
 17     0      0.0 <TOTAL OTHR LWOP FWD     0.0         USED  0.0 BAL    0.0
 18                          AWOL FWD     0.0         USED  0.0 BAL    0.0
 19 REMARKS:(MAX.23 CHAR.)   SUSP FWD     0.0         USED  0.0 BAL    0.0
 20                          MILR FWD     0   <DAYS> USED  0   BAL   0
 21                          MILE FWD     0.0         USED  0.0 BAL    0.0
 22                          OTHR                     USED 67.0
 23                          CRED FWD     0.2 ACCR   0.0 USED  0.0 BAL    0.2
 24                          HOME FWD     0.0 ACCR   0.0 USED  0.0 BAL    0.0
 25                          SHOR FWD     0.0 ACCR   0.0 USED  0.0 BAL    0.0
 26                          RSTR FWD     0.0         USED  0.0 BAL    0.0
 27                          FURL FWD     0.0         USED  0.0 BAL    0.0
```

CERTIFIED    TMKP. _____    EMPL._____    SUPER. _____

```
     P/T UNAPPLIED CARRYOVER A/L FWD    0.0    CARRYOVER A/L BAL   0.0
                            S/L FWD    0.0              S/L BAL   0.0
     P/P DUTY HRS   80.0
     A/L CATG      8
     S/L CATG      4
     A/L CEIL    240.0
  ELIGIBLE FOR STANDBY AUO:     YES
  APPT. LIMITED TO DAYS OR INT: NO
  USING SPECIAL PREFIX/SUFFIX: YES
```