DX 28

From:           ozetta thomas [ozettat@yahoo.com]
Sent:           Monday, February 24, 2003 5:57 AM
To:             danny.crawford@al.usda.gov
Subject:        Retirement

This is to inform you that I am retiring effective
today, February 24, 2003.

Ozetta Thomas

_____

Do you Yahoo!?
Yahoo! Tax Center - forms, calculators, tips, more
http://taxes.yahoo.com/

DEFENDANT'S
EXHIBIT
28

CASE
NO.

EXHIBIT
NO.

DX 29

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| OZETTA THOMAS, | } |
| Plaintiff, | } |
| | } |
| vs. | }     CASE NO. 05-cv-411 |
| | } |
| MIKE JOHANNS, SECRETARY, | } |
| UNITED STATES DEPARTMENT OF | } |
| AGRICULTURE, FARM SERVICE | } |
| AGENCY, (FSA), | |
| Defendant. | |

DEFENDANT'S
EXHIBIT 39
CASE
NO.
EXHIBIT
NO.

## PLAINTIFF'S THIRD AMENDED COMPLAINT[1]

COMES, now Plaintiff, Ozetta Thomas, by and through her counsel and amends her complaint, and in support thereof, states as follows:

### INTRODUCTION

1.       This action is brought to redress wrongs committed by the FSA against Plaintiff, Ozetta Thomas. Said wrongs, involving discrimination in employment on the basis of race, sex, and reprisal, were committed by her supervisor, Danny F. Crawford and others and not addressed by FSA. FSA merely looked at the wrongs as minimal and expected plaintiff to overlook them and move on. Plaintiff suffered so great until she had to finally leave the agency.

---

[1] This complaint is filed pursuant to the court's scheduling order and Danny Crawford is deleted as a defendant per court order.

## JURISDICTION AND VENUE

2. Jurisdiction is invoked pursuant to Title VII of the Act of congress known as the "Civil Rights Act of 1964", as amended in 1991, *42 U.S. C. section 2000e et. seq.*, the Fifth Amendment to the U.S. Constitution's Due Process Clause, the Eight Amendment's prohibition against Cruel and Unusual Punishment, and the Fourth Amendment to the U.S. Constitutional. *Also 28 U.S.C. sections 1331 and 1343.* Venue is proper pursuant to *28 U.S.C. section 1391 (c).* Jurisdiction of this court is invoked to secure protection and redress deprivation of rights secured by Title VII of the "Civil Rights Act" as last amended, providing for compensatory, equitable and punitive damages.

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. Plaintiff timely filed her charge of racial discrimination with the agency and EEOC within 180 days of the last discriminatory act, exhausted all administrative remedies and received her right to sue notice on February 5, 2005. This suit is brought within ninety days of such receipt.

4. At all times, relevant hereto, all over and discriminatory acts occurred in the Middle District, Montgomery County, Alabama.

2

## PARTIES

5. Plaintiff Ozetta Thomas, (Ms. Thomas) is an African-American female citizen of the United States residing in the State of Alabama. She worked for the FSA during the relevant time as Chief Agriculture Program Specialist. Her duty station (office) was in Montgomery, Alabama.

6. Defendant Mike Johanns, is the Secretary of the U.S. Department of Agriculture. He is the Agency Head. He is being sued in his official capacity. The Farm Service Agency (FSA) is a branch of that Department. The relevant branch is located in Montgomery, Alabama at 4121 Carmichael Road, Suite 600, Montgomery, Alabama 36106. This was known as the "State Office".

7. Danny F. Crawford served as the State Executive Director. His duty station (office) was also in Montgomery, Alabama at the state office. He was Ms. Thomas' direct supervisor.

## FACTS

8. At the time of the events which gave rise to the lawsuit, Ms. Thomas was employed by FSA as Chief Agricultural Program Specialist. Her job involved the administration of farm programs. Ms. Thomas was the only African American female supervisor. She had to answer questions

3

presented by the field employees and handle problems and questions that arose.

9. On December 5, 2001, after a mediation of a prior complaint of discrimination, Ms. Thomas and the FSA entered into a Resolution Agreement to resolve the dispute.

10. The Resolution Agreement, pursuant to *29 C.F. R. § 1614* and EEOC MD-110 called for several matters, as follows:

    a. Ms. Thomas would be detailed to the office of Civil Rights, Program Complaints Inquiry Branch in Montgomery, Alabama, effective December 16, 2001 and return on January 5, 2003 to her former position.

    b. Pay Ms. Thomas $1,500.

    c. Grant a Within-Grade-Increase from GS 1145-13/7 to GS 1145-13/8.

    d. Expunge performance related matters from Ms. Thomas' record and show her performance as "achieved".

    e. Show Ms. Thomas on administrative leave from December 6, 2001 through December 16, 2001.

f.  Ms. Thomas would withdraw her formal EEOC complaint,
    submit her attorney fee bill, and release, waive and withdraw
    all other complaints and grievances.

g.  Both parties agreed to respect the privacy of each other and
    not disclose the terms of the settlement without express
    written authority, except that one could communicate that
    the case was "voluntarily resolved in a manner acceptable to
    both sides".

h.  Cooperate in good faith to implement the settlement terms
    and declare the complaint resolved

i.  Thirty calendar days were given to fully implement
    everything If not, Ms. Thomas could request enforcement or
    reinstatement at the point it was classed by the settlement.

11. On or about January 22, 2002, Ms. Thomas received a hand-
delivered letter in an opened, unsealed envelope from a third party, Ms.
Irean Bennett, Secretary of Danny Crawford. The letter contained the
corrected performance rating plan as achieved, which was pursuant to the
settlement agreement. Danny Crawford's signature had been signed by
another third party, Ms. Debbie Williams. Obviously, Danny Crawford

5

chose not to handle this matter himself but chose his staff, Ms. Thomas' co-workers, to do so.

12. As a consequence, Ms. Thomas requested that her complaint be reinstated.

13. Upon further investigation. Ms. Thomas discovered several things, done by Danny Crawford against the spirit of the agreement and against her. They were:

> a. Removal of her computer from her office.
>
> b. Deactivation of her computer password
>
> c. Notified all agency (FSA) employees that Ms. Thomas "had been detailed" to another assignment, instead of "had accepted a detail".
>
> d. Designated a different person, other than the person selected by Ms. Thomas, to serve as acting in her position while she was on detail.

14. Further, Ms. Thomas was denied the opportunity to attend a Blacks in Government Conference in Washington D.C. on April 24, 2002, to pursue further management training.

15. Ms. Thomas made the appropriate complaints to the FSA. However, FSA consistently ruled that Ms. Thomas' complaints were only

circumstantial, suffered no adverse employment actions and that Defendant

Crawford's actions were legitimate.

## COUNT I
## EMPLOYMENT DISCRIMINATION AND RETALIATION
## UNDER TITLE VII

16. Ms. Thomas incorporates fully herein paragraphs, 1-15 above.

17. That the acts of Danny Crawford, an agent of FSA, and ratified by

the FSA through its decisions, amounted to discriminatory and retaliatory

acts committed against Ms. Thomas on the basis of her race, African

American, sex, female, and/or reprisal for filing her prior complaint.

18. That Danny Crawford violated the settlement agreement and

devise a way to inform Ms. Thomas' co-workers about the complaints and

positions of the settlement, and in other ways. Danny Crawford sought to

distort the settlement to show he had an advantage.

19. By sending unsealed sensitive correspondence to Ms. Thomas by

her co-workers, and having another co-worker sign the document, the

defendant was intending to commit harm upon Ms. Thomas and force the

spread of gossip about her character.

20. By removing her computer, deactivating her password and

sending a memo to all FSA employees that Ms. Thomas "had been detailed",

this sent a clear message that Ms. Thomas had been disciplined and/or lost

any complaint she had, thus damaging her reputation with her co-workers and within the agency. Her co-workers stopped calling her about program matters and questions within the agency.

21. Furthermore, by selecting a different person as acting in her position than she designated, defendant sent a strong message that Ms. Thomas' decisions would not be respected and that her opinions were flawed.

22. This was further carried out by denying her the opportunity to attend the Blacks in Government conference.

23. The acts of the defendant were so far reaching that when Ms. Thomas did apply for a position in a different area, the Office of Civil Rights (OCR), she was not selected. This was the same office she was detailed to pursuant to the settlement and was given great reviews and recommendations. However, when she later applied for a permanent position and her reputation of complaints was considered, she was not selected. A lesser qualified person was hired.

24. All of these acts were done on a discriminatory manner towards Ms. Thomas because of her race, sex and in retaliation for her prior complaint.

8

25. Due to the atmosphere and hostility of the work environment, Ms. Thomas resigned her employment by retirement on *March 1, 2003*.

26. As a result of these discriminatory acts, Ms. Thomas suffered by having her private personnel record exposed to her co-workers, many of them subordinates. This caused a loss of respect, reputation and self-esteem, as evident by the immediate lack of calls from the field employees about program matters. This decision led to Ms. Thomas leaving FSA. Afterwards, Ms. Thomas applied for the position in OCR she held earlier but was denied. If Ms. Thomas had received the position, she would still be employed, receiving the regular pay raises and training, and contributions to her retirement. All of that is lost as a result of the discriminatory acts of the defendants and her character also being defamed.

## **RELIEF SOUGHT**

**WHEREFORE**, Ms. Thomas prays that the Court will award relief:

1. As a consequence of the defendant's wrongful conduct in the respective counts, Ms. Thomas has suffered emotional and physical distress, complaint and substantial damages, including but not limited to back pay and salary lost for non-selection of the position sought and position retired from, loss of annual leave, sick leave and contribution to her retirement, and damage to her reputation and character.

2. Ms. Thomas should be awarded $300,000.00 as compensatory damages and actual damages claimed in no. 1 about to be determined by proof, any punitive damages applicable and any back pay, attorney fees, expenses and cost incurred.

3. That the Court find and declare the acts of the defendants as discriminatory, retaliatory and unconstitutional. And,

4. That injunctive relief be granted.

Respectfully submitted,

CHESTNUT, SANDERS, SANDERS,
PETTAWAY & CAMPBELL, L.L.C.

/s/ Collins Pettaway, Jr.
Collins Pettaway, Jr.(PETTC9796)
Attorney for Plaintiff
Post Office Box 1290
Selma, Alabama 36702-1290
(334) 875-9264

## Jury Demand

Plaintiff demands this case be tried by a struck jury.

/s/ Collins Pettaway, Jr.
Collins Pettaway, Jr.

## CERTIFICATE OF SERVICE

This is to certify that I have on this the 30th day of January 2007 filed electronically this amended complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

/s/ Collins Pettaway, Jr.
OF COUNSEL

10

# DX 30

Case # 040175
Attachment III
Pgs. 1-2



DEFENDANT'S
EXHIBIT
CASE
NO.          30
EXHIBIT
NO.

2629 Highway 14, East
Selma, AL 36703
January 03, 2002

Mr. Claude McKenzie, EEO Counselor
355 East Hancock Avenue – Stop 105
Athens, GA 30601

RECEIVED JAN 07 2002

Dear Mr. McKenzie,

This letter will confirm my telephone conversation with you on December 07, 2001, and also the voice message I left you on January 02, 2002, concerning my filing an official reprisal against Alabama's FSA State Executive Director, Danny F. Crawford.

This is being filed due to the removal of my equipment (computer) from my office immediately after a mediation hearing under the Early Resolution Program (ERP) held on December 05, 2001. In addition to the removal of my laptop, my password was also deactivated. The fast removal of the equipment from my office was continued intimidation, and an attempt to isolate me from the State Office workforce. The denial of my free access to the assigned computer equipment was a clear case of violation of my due civil rights. I maintain that the action was taken due to my filing the EEO complaint against the State Executive Director. After having faced the whole ordeal of filing and going through the EEO process, I did not need this type of humiliation the day after the ERP. It was quite demoralizing, embarrassing and humiliating to find that my supervisor had carried or caused such travail act to be carried out against me. It all can be summed up as racism to the inch degree to supposedly show how triumphant they (management) had been.

As you are aware, I had previously filed an EEO complaint against Mr. Crawford on non-sexual harassment based on race. Soon after the mediation hearing was conducted on December 05, 2001, an agreement was accepted to end this complaint. I was immediately placed on paid administrative leave through December 16, 2001. I was to be detailed to the Office of Civil Rights, PCIB, effective December 16, 2001-January 3, 2003. Since the detail was not until that date, nothing should have been removed from my office by management prior to that date. I am still an FSA employee and should be treated no different.

I had been out of the office during the first part of that week (December 2-4, 2001) on a training Mr. Crawford had required I take, due to the opportunity to improve (OTI) he had placed me on. On December 06, 2001, I returned to my office to read my e-mail messages for the week. It was also my intentions to send out my own blanket e-mail message expressing my appreciation to those employees for having worked with them through the years. As I went to turn on my computer, I found that my laptop had been confiscated. After inquiring who had borrowed my laptop, I was informed by Caryn Melton, Farm Loan Program Technician, that she saw Mary Reynolds, Computer Specialist, with my laptop early that morning. As I approached Mary's office to

Exhibit 6
Page 31 of 33

REPRISAL – OZETTA THOMAS                                                    Page 2.

get my laptop, she looked very stunned. I asked her if there was a problem that I could not get my laptop, and she told me that I had to ask Debbie Williams, Executive Staff Assistant. I did so, and Debbie called Mary by telephone and told her to give me the laptop. After the Computer Assistant, Marlys Oliver, came to my office to reactivate my password, I still could not get into the system. Therefore, I left the laptop connected in my office, and when I returned again on December 11 to get my messages and clean out my desk drawers, I found the entire computer system (laptop and monitor) had been taken. One of the Program Specialists, Sharrie Peterson, informed me that all the equipment was removed on December 07, 2001. Again, I maintain that this equipment should have stayed intact until December 17, 2001.

My next concern is that management has not carried out the ERP agreement in good faith. The e-mail (see attached) that went out on the detail was worded to denote and imply that such detail was a continuation of Danny's attempt to deal with my so-called non-performance on the job. He simply stated that I (Ozetta Thomas) had been detailed to the Civil Rights Unit effective December 16. There was no reference to the duration. The phrase "has been detailed" should have read Ozetta Thomas has accepted a detail to Civil Rights Unit, because the SED had not detailed me anywhere. But again, he used this opportunity to "save face" and sent the wrong signal to the field as to my true status with the agency. His handling of this matter has further caused for my integrity to be unnecessarily questioned with the field that has already been brained washed. Therefore, if or when I return as Chief of Production/Compliance, I will have an uphill battle attempting to work with them. Evidently, they have no intentions of my returning, but that is a decision of mine to make. This is also said, because Danny has named an acting chief different from the employee I had named acting in my absence.

Among other compensations, I am requesting that appropriate actions be taken to clear that there was no winner in this matter, as this e-mail message would lead you to believe. I do request that a letter be written by a Human Resource Specialist in Washington and mailed out under the signature of the SED. This letter should reflect the maximum duration of my detail, along with the window of opportunity for my return as Chief at the end of the detail. The whole tone of the e-mail message is very distasteful. We would hate for these types of treatment to get to the media on FSA again, which is crystal clear discrimination.

Sincerely,

*Ozetta C. Thomas*

Ozetta C. Thomas

Attachment

CC: Jeffrey C. Robinson, Esq.
      Chestnut, Sanders, Sanders, Pettaway, Campbell & Albright, P.C.

Exhibit 6
Page 32 of 133

DX 31

 **USDA**

(Attachment 1.)

December 13, 2001
~~January 3, 2002~~

United States
Department of
Agriculture

Farm and Foreign
Agricultural
Services

Farm Service Agency

Alabama State Office
P. O. Box 235013
Montgomery, AL
36123-5013

Tel: (334) 279-3500
Fax: (334) 279-3550

TO:        All Alabama FSA Employees

FROM:    /s/Danny F. Crawford, State Executive Director

SUBJECT:  Acting Chief, PA/CP

Ozetta Thomas has been detailed to the Civil Rights and Small
Business Utilization Staff effective December 16, 2001.  Jeff
Knotts has been appointed to serve as Acting Chief of the
Production Adjustment/Compliance Division in the STO.  All
calls or correspondence in that program area that would
normally be routed to the Chief of the Division should be
forwarded to Jeff.

DEFENDANT'S
EXHIBIT

CASE
NO.        31

EXHIBIT
NO.

USDA is an Equal Opportunity Employer

4.

Exhibit  6
Page 62 of 133

DX 32

# CHESTNUT, SANDERS, SANDERS, PETTAWAY, CAMPBELL & ALBRIGHT, L.L.C.

## ATTORNEYS AND COUNSELORS AT LAW

### ONE UNION STREET — SELMA, ALABAMA 36702-1290

J. L. CHESTNUT, JR.
HENRY SANDERS
ROSE M. SANDERS
COLLINS PETTAWAY, JR.
KATY SMITH CAMPBELL
APRIL ENGLAND-ALBRIGHT

JEFFREY C. ROBINSON
PRINCE D. CHESTNUT
MARILYN M. GARNER

MAILING ADDRESS:

P. O. BOX 1290
SELMA, ALABAMA 36702-1290
(334) 875-9264
TELECOPIER: (334) 875-9375
TELECOPIER: (334) 875-9853

March 4, 2002

Ms. Debbie Lombardino, Branch Chief
U.S. Department of Agriculture
FSA-CR@SBUS
1400 Independence Avenue, South West
Stop Code 0509
Washington, D.C. 20250

> **DEFENDANT'S EXHIBIT**
>
> CASE NO. 32
>
> EXHIBIT NO.

Dear Ms. Lombardino:

The purpose of this letter is two-fold. First, this letter is to advise you and serve as notice I represent Ms. Ozetta Thomas in her formal complaint of discrimination against the Farm Service Agency. Secondly, this letter and attachments address Ms. Thomas' concerns and alleged discrimination and reprisal by the employer, FSA, and employee, Mr. Danny Crawford, based on race, color and sex. Indeed, the basis of the aforementioned concerns and allegations are set forth in the attached exhibits. Further, this letter references specifically how Ms. Thomas has been discriminated against. Note the following colloquy:

> At the mediation, which I attended, the mediators gave specific directions as to what, when, where and how each person involved in the mediation should have handled their respective roles and the resolution to the matter. Mr. Danny Crawford, for whatever reason, has failed to adhere to any of the suggestions of the mediators. As he had done previously, Mr. Crawford has undermined Ms. Thomas' authority, has been unprofessional when dealing with her, and has attempted to further his own agenda. Indeed, as Ms. Thomas' attached letter so vividly describes, Mr. Crawford has continually discriminated against Ms. Thomas because of race, color, sex and, moreover, as reprisal for her filing a complaint with the EEOC. Unquestionably, Mr. Crawford has only continued what be originally started before Ms. Thomas filed her complaint.

Thus, this letter serves as notice that a formal complaint is being filed by Ms. Ozetta Thomas against the Farm Service Agency for discrimination based in the

reasoning in this letter and the attached referenced exhibits. Please refer all correspondence and any other relative materials to my office regarding this matter.

With kindest regards, I am ...

Always,

Jeffrey C. Robinson, Esq.

JCR/tth

cc. Ms. Ozetta Thomas
    Mr. Danny Crawford
    Mr. William Marsh
    Ms. Hope Light

# FORMAL COMPLAINT OF DISCRIMINATION
## FSA CASE # (INSERT CASE NUMBER)

| Name of Complainant (Last, First, Middle Initial) | Name of Representative (Last, First, Middle Initial) |
|---|---|
| **Thomas, Ozetta** | **Robinson, Jeffrey C.** |

| Address | Address |
|---|---|
| **2629 Highway 14, East**<br>**Selma, Alabama 36703** | **P.O. Box 1290**<br>**Selma, Alabama 36702-1290** |

| Home Telephone No. | Work Telephone No. | Home Telephone No. | Work Telephone No. |
|---|---|---|---|
| | | | **(334) 875-9264** |

| Name and Address of Agency Which You Believe Discriminated Against You | Name and Telephone Number of EEO Counselor Who Attempted Resolution |
|---|---|
| **Farm Service Agency**<br>**P.O. Box 235013**<br>**Montgomery, Alabama 36123-5013** | **William Marsh Telephone Unknown**<br>**Hope Light Telephone # Unknown** |

| Responding Official (Alleged Discriminating Official) | Date You Received the Notice of Right to File a Formal Complaint |
|---|---|
| **Mr. Danny Crawford** | **February 28, 2002** |

Reason(s)/Basis(es) You Believe You Were Discriminated Against

**Specific Allegations are referenced on attached Exhibits # 1 and 2.**

An Equal Opportunity Employer

How Were You Discriminated Against? (Explain how you were treated differently from other employees or applicants because of your race, color, religion, national origin, marital status, disability, sex, age, reprisal, or sexual orientation. If your complaint involves more than one allegation of discrimination, list and number each allegation separately and furnish specific, factual information in support of each).

**See attached Exhibits.**

(Use additional sheets, if necessary)

Specific Corrective Action You Want Taken on your Complaint (If more than one allegation is being made, state overall corrective action desired and the specific correction action desired for each separate allegation).

**Original corrective action sought from original complaint.**

If Applicable to This Complaint, Please Check the Statement(s) Below

| | |
|---|---|
| | I filed a grievance through the negotiated grievance procedure. |
| | I filed an appeal with the Merit Systems Protection Board. |
| | I filed a civil action in U.S. District Court. |

| Signature of Complainant (You must sign this form unless your representative is an attorney). | Date |
|---|---|
| | 03/04/02 |
| Signature of Attorney | Date |
| | 3/04/02 |

Privacy Act Statement (6 USC 552a)

This form is subject to the Privacy Act of 1974.
Authority: 42 USC 2000E-16
Principal Purpose: To establish the case records and assist in the processing of the complaint
Routine Use: Used by EEO officials, administrative judges, investigators, the Equal Employment Opportunity Commission, and/or the Department of Justice for processing the complaint and appeal.
Disclosure is Voluntary: If the individual does not furnish the information requested, there will be no adverse consequences. However, failure to furnish information requested on the form may delay or impair processing of the complaint.

An Equal Opportunity Employer



2629 Highway 14, East
Selma, AL 36703
January 03, 2002

Mr. Claude McKenzie, EEO Counselor
355 East Hancock Avenue – Stop 105
Athens, GA 30601

RECEIVED JAN 0 7 2002

Dear Mr. McKenzie,

This letter will confirm my telephone conversation with you on December 07, 2001, and also the voice message I left you on January 02, 2002, concerning my filing an official reprisal against Alabama's FSA State Executive Director, Danny F. Crawford.

This is being filed due to the removal of my equipment (computer) from my office immediately after a mediation hearing under the Early Resolution Program (ERP) held on December 05, 2001. In addition to the removal of my laptop, my password was also deactivated. The fast removal of the equipment from my office was continued intimidation, and an attempt to isolate me from the State Office workforce. The denial of my free access to the assigned computer equipment was a clear case of violation of my due civil rights. I maintain that the action was taken due to my filing the EEO complaint against the State Executive Director. After having faced the whole ordeal of filing and going through the EEO process, I did not need this type of humiliation the day after the ERP. It was quite demoralizing, embarrassing and humiliating to find that my supervisor had carried or caused such travail act to be carried out against me. It all can be summed up as racism to the inch degree to supposedly show how triumphant they (management) had been.

As you are aware, I had previously filed an EEO complaint against Mr. Crawford on non-sexual harassment based on race. Soon after the mediation hearing was conducted on December 05, 2001, an agreement was accepted to end this complaint. I was immediately placed on paid administrative leave through December 16, 2001. I was to be detailed to the Office of Civil Rights, PCIB, effective December 16, 2001-January 3, 2003. Since the detail was not until that date, nothing should have been removed from my office by management prior to that date. I am still an FSA employee and should be treated no different.

I had been out of the office during the first part of that week (December 2-4, 2001) on a training Mr. Crawford had required I take, due to the opportunity to improve (OTI) he had placed me on. On December 06, 2001, I returned to my office to read my e-mail messages for the week. It was also my intentions to send out my own blanket e-mail message expressing my appreciation to those employees for having worked with them through the years. As I went to turn on my computer, I found that my laptop had been confiscated. After inquiring who had borrowed my laptop, I was informed by Caryn Melton, Farm Loan Program Technician, that she saw Mary Reynolds, Computer Specialist, with my laptop early that morning. As I approached Mary's office to

REPRISAL – OZETTA THOMAS                                                        Page 2.

get my laptop, she looked very stunned. I asked her if there was a problem that I could not get my laptop, and she told me that I had to ask Debbie Williams, Executive Staff Assistant. I did so, and Debbie called Mary by telephone and told her to give me the laptop. After the Computer Assistant, Marlys Oliver, came to my office to reactivate my password, I still could not get into the system. Therefore, I left the laptop connected in my office, and when I returned again on December 11 to get my messages and clean out my desk drawers, I found the entire computer system (laptop and monitor) had been taken. One of the Program Specialists, Sharrie Peterson, informed me that all the equipment was removed on December 07, 2001. Again, I maintain that this equipment should have stayed intact until December 17, 2001.

My next concern is that management has not carried out the ERP agreement in good faith. The e-mail (see attached) that went out on the detail was worded to denote and imply that such detail was a continuation of Danny's attempt to deal with my so-called non-performance on the job. He simply stated that I (Ozetta Thomas) had been detailed to the Civil Rights Unit effective December 16. There was no reference to the duration. The phrase "has been detailed" should have read Ozetta Thomas has accepted a detail to Civil Rights Unit, because the SED had not detailed me anywhere. But again, he used this opportunity to "save face" and sent the wrong signal to the field as to my true status with the agency. His handling of this matter has further caused for my integrity to be unnecessarily questioned with the field that has already been brained washed. Therefore, if or when I return as Chief of Production/Compliance, I will have an uphill battle attempting to work with them. Evidently, they have no intentions of my returning, but that is a decision of mine to make. This is also said, because Danny has named an acting chief different from the employee I had named acting in my absence.

Among other compensations, I am requesting that appropriate actions be taken to clear that there was no winner in this matter, as this e-mail message would lead you to believe. I do request that a letter be written by a Human Resource Specialist in Washington and mailed out under the signature of the SED. This letter should reflect the maximum duration of my detail, along with the window of opportunity for my return as Chief at the end of the detail. The whole tone of the e-mail message is very distasteful. We would hate for these types of treatment to get to the media on FSA again, which is crystal clear discrimination.

Sincerely,

*Ozetta C. Thomas*

Ozetta C. Thomas

Attachment

CC: Jeffrey C. Robinson, Esq.
    Chestnut, Sanders, Sanders, Pettaway, Campbell & Albright, P.C.

(01-28-99)

| Element | Achieved | Not Achieved |
|---|---|---|
| ☑ **Element #5 - Program Management**<br>Manages program(s) resolving issues and problems within the employee's control. Monitors all aspects of program(s) for quality, effectiveness, and consistency. Program plans and guidance are responsive to objectives and requirements of the Agency. Policy instructions are appropriately issued and are accurate. Evaluates effectiveness of work and adjusts plans accordingly. Further clarification, as needed: | ✓ | |
| ☐ **Element #6 - Special Projects**<br>Special projects are regularly completed on time in a competent, accurate, and thorough manner. Completed projects comply with regulations and procedures. Special projects are completed independently, or reflect research and collaboration with others as required. Further clarification, as needed: | | |
| ☐ **Element #7 - Research and Analysis**<br>Thoroughly and accurately researches issues in a timely manner, using available reference sources (e.g. USDA manuals, or applicable law or regulations). Makes reasonable recommendations or decisions based on available guidance. Further clarification, as needed: | | |
| ☑ **Element #8 - Customer Service**<br>Provides advice that is timely, responsive, and accurate. Maintains appropriate rapport with internal and external customers. Develops and establishes working relationships with external organizations as required. Keeps supervisor and/or team leader informed of difficult and/or controversial issues and unique problems. Takes action to effectively solve problems before they have an adverse impact on the organization or other employees. Further clarification, as needed: | ✓ | |
| ☑ **Element #9 - Equal Opportunity & Civil Rights [Mandatory for supervisors and managers]**<br>Performs all duties in a manner which consistently demonstrates fairness, cooperation, and respect toward coworkers, office visitors, and all others in the performance of official business. Demonstrates an awareness of EO/CR policies and responsibilities of Agency and Departmental goals of valuing a diverse, yet unified workforce. Further clarification, as needed: | ✓ | |
| ☐ **Element #10 - Personal Contacts - EO/CR [Mandatory for all non-supervisory employees]**<br>Routinely displays courteous and tactful behavior towards internal and external customers, supervisors, coworkers, and/or team members. Projects a positive and professional image of USDA. Performs all duties in a manner which consistently demonstrates fairness, cooperation, and respect toward coworkers, office visitors, and all others in the performance of official business. Demonstrates an awareness of EO/CR policies and responsibilities of Agency and Departmental goals of valuing a diverse, yet unified workforce. Further clarification, as needed: | | |
| ☐ **Element #11 - Resource Management**<br>Monitors allocated funds and maintains complete and accurate records of expenditures. Routinely utilizes resources in an efficient and effective manner. Ensures that funds, property and other resources are guarded against waste, loss, unauthorized use, and misappropriation. Further clarification, as needed: | | |

(01-28-99)

| | Element | Achieved | Not Achieved |
|---|---|---|---|
| ☐ | **Element #12 - Individual Contributions to the Team**<br><br>Ordinarily displays dependability and reliability. Promotes open communication. Contributes creative ideas and actively participates in team meetings resulting in added value to the team's products and services. When problems arise, explores causes and assists in resolving them. Works with team members to appropriately implement decisions. Is usually open-minded to new ideas and approaches in implementing the team's goals. Willingly accepts and acts on constructive criticism. Further clarification, as needed: | | |
| ☐ | **Element #13 -** | | |
| ☐ | **Element #14 -** | | |
| ☐ | **Element #15 -** | | |

## PART II – PROGRESS REVIEW

**Note:** One progress review is required; however, frequent communication between the employee and rating official regarding performance is encouraged and recommended. Date of review, initials of employee (Emp), and initials of Rating Official (R.O.) must be provided for each review. Employee and Rating Official are encouraged to provide written comments.

**8. RATING OFFICIAL'S COMMENTS**

**9. EMPLOYEE'S COMMENTS**

| 10A.  Emp Initials: ___  Date: ___ | 10B.  R.O. Initials: ___  Date: ___ |
|---|---|

Rec. 01/22/02

(01-28-99)                                                                                    Page 4 of 4

## DISCUSSION TOPICS FOR USE IN PLANNING PERFORMANCE AND CONDUCTING PROGRESS REVIEWS

- Employee's performance on primary responsibilities/priorities in the past year.
  - revise performance work plan for the coming year, as necessary
  - relationship to overall work unit objectives

- Employee's strengths and areas for growth

- Barriers to effective work performance and job satisfaction

- Employee's development (over the past year; future needs for current job; long-term career goals and developmental needs to achieve them)

- Possible work process improvements

- Whether employee continues to grow to meet future needs and demands of the changing environment

- Employee's feedback/constructive suggestions for supervisor

- Anything else the employee or supervisor would like to address

## PART III – SUMMARY RATING

[X] RESULTS ACHIEVED                                    [ ] RESULTS NOT ACHIEVED*

* A "Results not Achieved" rating requires explanation. Provide additional comments as an attachment.

## PART IV – CERTIFICATION

Note:  Employee's signature certifies review and discussion with the Rating Official.  It does not necessarily mean that the employee concurs with the information on this form.

| 11.  PERFORMANCE PLAN (Sign when plan is established) | | 12.  SUMMARY RATING (Sign when rating is completed) | |
|---|---|---|---|
| Employee Signature | Date | Employee Signature  **See Remarks | Date |
| Rating Official Signature | Date | Rating Official Signature  Danny F. Crawford | Date  11/6/01 |
| I have reviewed the standards of conduct and have had any questions answered by my satisfaction. (Employee initial appropriate block below.)  YES [ ]    NO [ ] | | Reviewing Official (required for summary rating of "Results Not Achieved") | Date |

**Employee is on extended detail.  Attempted to obtain her signature on January 22, 2002, but she refused to sign.

DX 33



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

Ozetta C. Thomas,
Complainant,

v.

Ann M. Veneman,
Secretary,
Department of Agriculture,
Agency.

```
┌─────────────────────┐
│   DEFENDANT'S       │
│   EXHIBIT           │
│               ⅋⅋     │
│  CASE               │
│  NO.                │
│                     │
│  EXHIBIT            │
│  NO.                │
└─────────────────────┘
```

Appeal No. 01A44534

Agency Nos. USDACR020318 & USDACR020419

Hearing No. 130-2003-08253X

## DECISION

Pursuant to 29 C.F.R. § 1614.405, the Commission accepts the complainant's appeal from the agency's final order in the above-entitled matter. Complainant alleged that the agency had discriminated against her on the bases of race (African-American), sex (female), color (Black), and reprisal for prior EEO activity when her computer and lap top were removed from her office, her password was deactivated, employees were told that she "had been detailed", and someone other than the person she named was designated acting in her stead while she was on a detail. She also alleged she was denied the opportunity to attend a Blacks in Government conference.

After a review of the record in its entirety, including consideration of all statements submitted on appeal, it is the decision of the Equal Employment Opportunity Commission to affirm the agency's final order, because the Administrative Judge's issuance of a decision without a hearing was appropriate and a preponderance of the record evidence does not establish that discrimination occurred.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

2                                                        01A44534

1.    The appellate decision involved a clearly erroneous interpretation of material fact
      or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or
      operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of
Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within
twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See*
29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part
1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted
to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O.
Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to
reconsider shall be deemed timely filed if it is received by mail within five days of the expiration
of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also
include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration
as untimely, unless extenuating circumstances prevented the timely filing of the request. Any
supporting documentation must be submitted with your request for reconsideration. The
Commission will consider requests for reconsideration filed after the deadline only in very limited
circumstances. *See* 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court **within
ninety (90) calendar days** from the date that you receive this decision. If you file a civil action,
you must name as the defendant in the complaint the person who is the official agency head or
department head, identifying that person by his or her full name and official title. Failure to do
so may result in the dismissal of your case in court. "Agency" or "department" means the
national organization, and not the local office, facility or department in which you work. If you
file a request to reconsider and also file a civil action, **filing a civil action will terminate the
administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an
attorney, you may request that the Court appoint an attorney to represent you and that the Court
permit you to file the action without payment of fees, costs, or other security. *See* Title VII of
the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of
1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the**

3                                      01A44534

sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations


SEP 2 9 2004
Date


## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:


SEP 2 9 2004
Date


Equal Opportunity Assistant