# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

**OZETTA THOMAS,**

    Plaintiff,

Vs.                              Case No.: 2:05-cv-411-WKW

**ED SCHAEFER, SECRETARY,**
**UNITED STATES DEPARTMENT OF**
**AGRICULTURE, FARM SERVICE**
**AGENCY (FSA),**

    Defendant.

_____

**Plaintiffs' Brief in Opposition To The**
**Defendants' Motion For Summary Judgment**

_____

Submitted by:

Collins Pettaway, Jr.(PETTC9796)
Chestnut, Sanders, Sanders,
& Pettaway, L.L.C.
Post Office Box 1290
Selma, AL 36702-1290
(334) 875-9264

1

## **TABLE OF CONTENTS**

|  | **PAGE** |
|---|---|
| Table of Authorities………………………………………………………… | 3 |
| Memorandum………………………………………….…………………. | 4 |
| Background (Facts)………………………………….…………………… | 4 |
| Issues……………………………………………….…………………… | 7 |
| Standard For Summary Judgment..………………….…………………… | 8 |
| Argument…………………………………………….…………………… | 9 |
| Conclusion……………………………………………………………….. | 14 |
| Certificate of Service…………………………………………………… | 14 |

# **TABLE OF AUTHORITIES**

<u>CASES</u>                                                                                         <u>PAGE</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)……………………   8

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S. Ct. 267 (1993)………..   10

*HCA Health Servs. V. Employers Heath Ins. Co.*,
240 F. 3d 982, 991 (11th Cir. 2001)……………………………………………….   8

*Miller v. Kenworth of Dothan; Inc.*, 277 F. 3d 1269, 1275 (11th Cir. 2002)...   11

*National Railroad Passenger Corp. v. Morgan*,
536 U.S. 101, 122 S. Ct. 2061 (2002)……………………………………………..   9

*Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990)…………………….   8


<u>OTHER</u>

FRCP Rule 56………………………………………………………………………..   8

FRCP Rule 50(a)……………………………………………………………………..   8

B. Lindemann & P. Grossman, Employment Discrimination Law,
348-349 (3d ed. 1996)……………………………………………………………….   10

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT, ALABAMA
NORTHERN DIVISION

**OZETTA THOMAS,**

    **Plaintiff,**

**vs.**                                                        **Case No. 2:05-cv-411-WKW**

**ED SCHAFER, SECRETARY,**
**UNITED STATES DEPARTMENT OF**
**AGRICULTURE, FARM SERVICE**
**AGENCY, (FSA),**

    **Defendant.**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT"S MOTION FOR SUMMARRY JUDGMENT**

COMES, now Plaintiff, Ozetta Thomas, by and through her undersigned counsel and submits the following in support of her opposition to the defendant's motion for summary judgment, and states as follows:

**BACKGROUND**

1. This action is brought to redress wrongs committed by the FSA against Plaintiff, Ozetta Thomas. Said wrongs, involving discrimination in employment on the basis of race, sex, and reprisal, were committed by her supervisor, Danny F. Crawford and not addressed by FSA. FSA merely looked at the wrongs as minimal and expected plaintiff to overlook them and move on. Plaintiff suffered so great until she had to finally leave the agency.

2. Jurisdiction is invoked pursuant to Title VII of the Act of congress known as the "Civil Rights Act of 1964", as amended in 1991, *42 U.S. C. section 2000e et. seq.*, the

4

Fifth Amendment to the U.S. Constitution's Due Process Clause, the Eight Amendment's prohibition against Cruel and Unusual Punishment, and the Fourth Amendment to the U.S. Constitutional. *Also 28 U.S.C. sections 1331 and 1343*. Venue is proper pursuant to *28 U.S.C. section 1391 (c)*. Jurisdiction of this court is invoked to secure protection and redress deprivation of rights secured by Title VII of the "Civil Rights Act" as last amended, providing for compensatory, equitable and punitive damages.

    3. Plaintiff was employed with the FSA in 1968 as a Program Assistant and reached the position of Chief Agricultural Program Specialist, over the Production Adjustment /Compliance Division in the FSA State Office in Montgomery, AL. (Px1, p.34) She was the only African American female in such a position in the State of Alabama. (Px5, p.194, 4th ans.) Her job required her to answer questions from employees in the field or at county offices in the administration of the farm programs. Her credibility was important to the employees who asked questions, as they had to rely upon her services. (Px1, p.35, 1st ans.) She received numerous awards and always received the highest performance rating of "achieved" prior to her new supervisor, State Executive Director (SED) Danny Crawford came on board. (Px1, p.111-116, Px9) After Mr. Crawford came on board, she was constantly place in a state of harassment and had complaint after complaint about here job performance. She was monitored by Mr. Crawford in an effort to find errors in her work and attendance. (Px1. p. 121 1st par., Px2, p.10. last par.) There was a "supervision" file kept on her by Mr. Crawford's staff. There is no evidence produced by the defendant that such files were kept on anyone else. Ultimately, this led to Mrs. Thomas filing a complaint of discrimination against the agency and the acts of Mr. Crawford. The complaint was settled through the mediation

process by a Settlement Agreement dated September 5, 2001. (Px1, p47-49) The agreement called for Mrs. Thomas to be detailed to the Office of Civil Rights (OCR) for a year, her personnel file corrected to expunge a performance work plan and non-achieved rating with a rating of achieved and a pay increase, attorney fees a strict confidentiality. The agreement was signed by the parties, including Mr. Crawford, and the parties were counseled about the agreement during the mediation. (Px1, p.36, 2nd ans.) The hope was that Mrs. Thomas, although not promised, could find a permanent position in OCR or retire to avoid Mr. Crawford. The detail to OCR was to be effective December 16, 2001. However, before Mrs. Thomas could get back to her office, Mr. Crawford had already had Mrs. Thomas' computer removed and her password deactivated. (Px1, p.37, last ans.) A memorandum was sent by Mr. Crawford stating that Mrs. Thomas had been detailed to OCR instead of had accepted a detail to OCR. (Px1, p.95) Also, Mr. Crawford chose a person, Jeff Knott, to fill her position instead of Mrs. Thomas selecting a person. (Px1, p80, last par.) (these acts sent a message that the detail was not voluntary) Further, the confidential employment action on her personnel file was not handled by Mr. Crawford but by his staff and delivered unsealed to Mrs. Thomas. During the detail, Mrs. Thomas made a request to attend the Blacks In Government Conference (BIG). Px1, p.38, 3d par.) No one was attending until Mrs. Thomas made her request. At that point, Mr. Crawford put the matter out for bid among the employees to see who wanted to attend to other employees can get the exposure. Mrs. Thomas was not selected. However, this practice of placing the selection of attendees to the conference was not followed after Mrs. Thomas was not an employee until Mrs. Thomas brought that fact up in a complaint. Mrs. Thomas requested an extension of her detail to OCR so she

6

would not have to endure further stress, but was denied. (Px2, p.4, last ans.) Fearing reprisal from Mr. Crawford, she requested extended sick leave, which was also denied. (Px2, p.5) Other request were made with the request for extended sick leave, i.e. work in another location, etc., but were not addressed by Mr. Crawford. Mrs. Thomas returned to her position, but did not have one conference with Mr. Crawford upon her return, nor did Mr. Crawford welcome her back or update her on developments while she was gone. (Px2, p.7-8, last ans. on 7) Instead, Mr. Crawford sent her an email 2 weeks after her return requesting that she speak on the new Farm Bill, a subject that she had no training on since she had been detailed to OCR. Further, while Mrs. Thomas was back at her position, she received only one official call from the field for assistance from January 6, 2003 to February 24, 2003. (Px1, p.81, 2nd par.) This confirmed that her reputation and credibility to do her job had been irretrievably damaged by the acts of Mr. Crawford. Having no alternative since she could not be effective in the performance of her job and having endured so much stress from the actions of Mr. Crawford, Mrs. Thomas resigned her position on February 24, 2003, effective March 1, 2003.

4. Mrs. Thomas filed a discrimination complaint for the forced retirement with the Director of OCR on April 7, 2003, 42 days later. She received a right to sue letter on February 5, 2005. This lawsuit was filed on May 3, 2005, within 90 days of the receipt of the right to sue letter.

## ISSUES

5. The issues raised in the defendant's motion for summary judgment are as follows:

    a.  Failure to exhaust administrative remedies.

    b.  Failure to show a breach of the December 5. 2001 Settlement Agreement.

    c.  The discrimination claims fail as a matter of law.

    d.  The retaliation claims fail as a matter of law.

## STANDARD FOR SUMMARY JUDGMENT

A summary judgment is to be considered if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); FRCP Rule 56. Facts which might affect the outcome of the case must be considered. Id. Summary judgment will not lie if the dispute about a material fact is "genuine", that is, if such evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. It is the courts function to not himself weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. Id at p. 249. The U.S. Supreme Court went further to liken this task to that of a directed verdict under FRCP Rule 50(a). If reasonable minds could differ as to the import of the evidence, a verdict should not be directed. Id at p. 250-251. The 11th Circuit adds that the moving party must demonstrate that there is no genuine issue as to any material fact. *HCA Health Servs. V. Employers Heath Ins. Co.*, 240 F. 3d 982, 991 (11th Cir. 2001). A mere scintilla of evidence supporting the opposing party's position will not suffice. There must be enough of a showing that the jury could reasonable find for that party. *Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990).

**ARGUMENT**

I.   **Failure To Exhaust Administrative Remedies**

II.  **Failure To Show A Breach Of The December 5, 2001 Settlement Agreement**

Defendant argues that Mrs. Thomas failed to exhaust her administrative remedies for the acts alleged in the complaint in paragraphs 11, 13-14 and 18-22.  The complaint in this case is about Mrs. Thomas being forced to retire.  The allegations listed in the complaint are not claims for the purpose of a separate lawsuit, but are facts and claims constituting the continuous acts and occurrences of what happened to Mrs. Thomas, which led to her being forced out.

During the mediation leading to the December 5, 2001 agreement, the detail to the OCR for Mrs. Thomas was a way to get her away from Danny Crawford for a while in hopes that she could get a permanent position in OCR or retire. (Px1, p.36, 2nd ans.)  If all else failed, then she could come back to her job.  By coming back to her job, she would need to be able to have a job that she could perform.  The acts complained of in the various paragraphs caused a situation that had no job for Mrs. Thomas to perform.  The job hinged on credibility.  Her credibility was undermined and without such, the subordinates in the field could not rely on you.  This deals with the forced retirement, for which Mrs. Thomas received her right to sue letter on February 5, 2005, which is unchallenged, and this lawsuit was filed on May 3, 2005, within the 90-day limit.

The acts complained of regarding defendant's first two arguments are part of a pattern, policy and scheme, a continuous act inflicted upon Mrs. Thomas.  See *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061 (2002).

Employment harassment claims are different from discrete acts or one-time act (violation) claims. Their very nature involves repeated conduct. See B. Lindemann & P. Grossman, Employment Discrimination Law, 348-349 (3d ed. 1996) (the repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence)   The unlawful employment practices can not be said to have occurred on a particular stop date, but continue over a series of days, or perhaps years. See *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S. Ct. 267 (1993). To satisfy Title VII, the charge must be filed after the unlawful practice happened. *Id.*  In this case, the unlawful practice was in relationship to the forced retirement. The forced retirement issue is timely. The acts alleged in the complaint, although each can and did stand on its own as a separate complaint, form a continuous act that lead to Mrs. Thomas' discharge, the forced retirement.

This case is about the retirement and the timeliness arguments raise in the first two issues have no merit. Moreover, Mrs. Thomas is not asserting a breach of the settlement agreement in the sense of asserting a contract claim, but merely showing what happened and how these events affected her. The damages and harm are in the retirement for which she claims her damages. (please see the prayer for relief in the complaint)

> III.    **The Discrimination Claims Fail As A Matter Of Law**
> IV.    **The Retaliation Claims fail As A Matter Of Law**

In order to prevail on a claim of harassment to her work environment, Mrs. Thomas must show that (1) she belongs to a protected group, (2) she has been subject to

10

unwelcome harassment, (3) the harassment was based on a protected characteristic or class, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive environment, and (5) the defendant is responsible for such environment. *Miller v. Kenworth of Dothan; Inc.*, 277 F. 3d 1269, 1275 (11th Cir. 2002).

    It is undisputed that Mrs. Thomas is in two protected classes, race and gender. She was the only African American Female Chief of a division in the FSA State Office. She was subjected to unwelcome harassment. She did not urge it on or create it. It was Mr. Crawford who deliberately avoided communication with Mrs. Thomas shortly after she arrived. (Px1, p.117, last par.) He also told Mrs. Thomas "I can just look at you and tell you don't know your programs" (Px1, P.133, 3rd par.) These are direct examples and evidence of Mr. Crawford's discriminatory intent and harassment. This clearly was done because of Mrs. Thomas being in a protected class. The actions inflicted by Mr. Crawford altered the terms and conditions of Mrs. Thomas' employment. You see, Mr. Crawford's opportunity to rate Mrs. Thomas was a negative act of "not achieved". This affected her raise and bonuses. Although the action was corrected through the settlement agreement and Mrs. Thomas ultimately received her raise, she had to complain to get it. When she returned in January 2003 to her job, she could not do it. Her credibility had been undermined. She only received one call for assistance. (Px1, p.81) Clearly her credibility was undermined to a point that she could not do her job. This will result in a "not achieved" rating that would be valid. Mr. Crawford successfully accomplished his goal. Prior to Him becoming SED, Mrs. Thomas would often receive awards for her

performance and her peers thought highly of her. (Px1, p.111-117, Px9, Px10) This never happened after Mr. Crawford became SED. This was a clear employment condition change affecting Mrs. Thomas' income and ability to do her job. She was placed in a situation that she could not achieve or advance. Lastly, the defendant was responsible for the environment. The December 13, 2001memo sent a vast message that Mrs. Thomas' detail was not voluntary. (Px1, p. 95) This was done by Mr. Crawford. He also deactivated her password and removed her computer before the detail begun, not even allowing her to name her replacement. Mrs. Thomas complained constantly. Mr. Crawford was aware of her plight. He was made aware in writing of Mrs. Thomas' fears of returning when she made her request for sick leave. (Px1, p.85) The request was to work at an alternate site. The sick leave request was an alternative. The initial request was never addressed by Mr. Crawford. He only looked for something that he could cite a rule, which had never been enforced. Moreover, the way Mr. Crawford denied Mrs. Thomas' request to attend the BIG conference. Mrs. Thomas, as her resume` (Px10) shows, was a member of the organization. She made her request to attend. Mr. Crawford decides to place the trip for bid and allow other employees to attend. This sounds noble and non discriminatory. However, after Mrs. Thomas was gone, the practice ceased the very next year. (Px1, p.38, 3rd ans.) Clearly Mr. Crawford's actions were false. Coupled with his direct statements to Mrs. Thomas, the reasons offered by the defendant as non-discriminatory are purely false.

 As it relates to retaliation, the above rationale would apply. There is a casual connection because Mr. Crawford was aware of all acts. He even signed the

settlement agreement.  He immediately started taking steps to rid himself of Mrs. Thomas before she could prepare her office.  He denied each request she made.  Then when she came back, her tried to send her on a duty to explain the new Farm Bill for which he knew she had no training.

In Mrs. Thomas' tenure at FSA, she was regarded as very knowledgeable, helpful and an excellent worker. (Px3, p.175, Px5, p.194-196, Px6, p.198-200)  But when Mr. Crawford comes, Mrs. Thomas is a problem.  This was even signed off by Mr. John W. Chott, Jr., the Acting Executive Director for State Operations in Washington D. C. in his April 15, 2001 memo to Mr. Crawford. (Px1, p.144)  Mrs. Thomas alleges a conspiracy against her at FSA, being the first African American Female Chief.  When looking at this as a whole, Mrs. Thomas was the only chief monitored.  During the discovery process, the defendant was asked to produce all supervision files mentioned during a deposition so as to verify who else was being monitored. (Px11, no.6)  The defendant's response (Px12, p.10-12) produced only a file on Mrs. Thomas. Plaintiff's exhibits 7 and 8 are statements prepared under the direction of Mr. Crawford in an effort to lodge a complaint against Mrs. Thomas.  When on employee decides to do her own statement with more detail (Px7), the plot is thwarted.  Lastly, the discovery produced no other employee that Mr. Crawford requested a doctor's excuse for a medical leave, although the regulations provide for such.

In looking at Mr. Crawford's veracity, which is important, He gave a sworn affidavit dated October 18, 2005 in reference to the EEO investigation of Mrs. Thomas' complaints.  In that statement he states that he did nothing to force Mrs. Thomas to retire.  That Mrs. Thomas "…was performing her duties and we had no

13

problems." (Px4, p.5 of 6, last ans.) However, he said previously in a sworn affidavit concerning a complaint being investigated by the EEO on December 7, 2004 that Mrs. Thomas did not function well, that she was in able to handle the programs that she was responsible for and often gave out incorrect information. (Px4, p.183, last 2 ans.) He has not been consistent in his rationale, just like not continuing the bid process for the BIG conference.

## CONCLUSION

The facts in this case show a situation that Mrs. Thomas was not able to do her job. This was caused by the defendant through the acts of Danny Crawford. There are genuine issues of fact that a jury must resolve. Summary judgment is due to be denied.

        Respectfully submitted,

        CHESTNUT, SANDERS, SANDERS,
        & PETTAWAY, L.L.C.

        /s/ Collins Pettaway, Jr.
        Collins Pettaway, Jr.(PETTC9796)
        Attorney for Plaintiff
        Post Office Box 1290
        Selma, Alabama 36702-1290
        (334) 875-9264

## CERTIFICATE OF SERVICE

This is to certify that I have on this the 11th day of April 2008 filed electronically this amended complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

        /s/ Collins Pettaway, Jr.
        OF COUNSEL