## Affidavit of Ozetta Thomas

In the matter of EEO complaint of: )
**Ozetta Thomas** )
Complainant )
    )
V. )
    )    **Case No. 030475**
    )
**USDA-FSA** )
Respondent )

I, **Ozetta Thomas,** hereby solemnly swear that the information given in response to the following questions are true and complete to the best of my knowledge and belief, so help me God:

**Q.:**    Please state your full name for the record.

A.:    Ozetta C. Thomas

**Q.:**    I understand you are no longer employed with the federal government. Please provide your complete dates of federal service.

A.:    I have thirty-five years of Federal service. (April 1968-March 2003)

**Q.:**    What was your last position title and grade?

A.:    I was Chief Agricultural Program Specialist for the Farm Service Agency (FSA) in Montgomery, AL.

**Q.:**    What did you do on a day-to-day basis?



Exhibit ___
Page ___ of ___

**EXHIBIT**
2

1
1666a

A.:   I administered farm programs within forty-seven counties in the state. I was Chief Specialist in the Production Adjustment/Compliance Division of the State Office. Our state office served as the liaison between the county office and the national office. I administered the programs within my division such as the AMTA Payments, Farm Disaster Program, NAP Programs, Reconstitutions, Payment Limitation, Common Provisions, AFIDA, Peanut and Tobacco programs, as well as the Compliance Program. Two months prior to my forced retirement, I served as Program Complaints Specialist in the Office of Civil Rights, PCIB, Montgomery, AL. I investigated program complaints filed by farmers all over the United States, and performed State Reviews within the U.S.

Q     **What were your GS, title and Grade prior to retirement?**

A.:   GS-13- step 8

Q.:   **When was your last promotion or step increase prior to retirement?**

A.:   In December 2001, I received my last promotion.

Q.:   **Who was your first and second line supervisor, prior to retirement?**

A.:   My first line supervisor was Danny Crawford, State Executive Director (SED). I had no second line supervisor.

Q.:   **Your complaint for discrimination in EEO complaint number 030475 sets forth a number of reprisal claims against your former agency. I will go over each item and asked you to explain in details the nature of your claim and how you feel you were discriminated against. The first claim states as followed;**

**On or about January 3, 2003 your request for an extension for the reassignment to the Office of Civil Rights/ Program Complaints Inquiry Branch (OPR/PCIB0 in Montgomery, Alabama was denied. Please explain the basis of your claim for discrimination /reprisal concerning the above.**

Exhibit _6a_
Page _2_ of _25_

A.:     In the mediation involving the first complaint I filed, the Mediator asked me what I wanted to settle the case? I requested to be permanently assigned to the Office of Civil Rights, Program Complaints Inquiry Branch (PCIB), located in Montgomery, AL. After the Mediator dismissed my attorney and me for lunch, she talked to Danny Crawford and Debbie Williams. When we were returning from lunch, Danny and Debbie were leaving the premises (location of the hearing). Therefore, I had no part in the negotiation of the agreement. The Mediator told me that she could not get the approval of Washington for a permanent reassignment, but that she could give me a temporary assignment (detail) to the Office of Civil Rights/Program Complaints Inquiry Branch for one year. I had no other alternative but to take it or leave it. I accepted the temporary assignment because I wanted to get away from Danny Crawford. When the assignment was about to end, I asked that I be permanently assigned the position because I did not want to return to my old position on the program side under Mr. Crawford and they had a need for my service and expertise. I made the request through the Office of Civil Rights, Danny Crawford and Carlton Oneal(see Attachments 1, 2 and 3). I never got a direct answer from my original request. Later in the month when Sharon Holmes, former Director of Civil Rights for the Farm Service Agency (FSA) came to the office, I personally met with her in Carlton's office and asked about being permanently reassigned to the Office of Civil Rights.   Mrs. Holmes told me there was nothing she could do to help me. This was in January of 2003. I requested a reassignment from all parts of management, and each part of management was aware of my original complaint. Neither responded favorably to my request. I considered this as reprisal against me.

Q.:     **Why do you believe the denial of your request for reassignment was reprisal for past EEO activity?**

A.:     The denial of my request for reassignment was reprisal because as I fore-stated, I had filed several complaints and both sides of management were very aware of these complaints. All requests I made to management to improve performance were either denied or not responded to.

Q.:     **Was Ms. Holmes aware of your EEO activity at the time?  If so, how did she learn of it?**

A.:    Mrs. Holmes was very aware of my EEO activity.  When she first came on board as Director, Office of Civil Rights for Farm Service Agency (FSA) in early November 2002, Carlton Oneal and I talked to her by telephone when we initially requested that she extend the detail.  I informed her of my EEO activities at that time.  Mrs. Holmes asked Carlton to send her some justification to keep me on board with Civil Rights.  The memorandum (Attachment 2) to Mrs. Holmes from Oneal also stated that I was detailed as part of a resolution to an EEO complaint.

Q.:    **Danny Crawford knew of your past EEO activity at the time since the EEO complaint that lead to the mediation was against him, is that correct?**

A.:    Yes

Q.:    **The second item is your complaint states that "since January 6, 2003, [your] request to be indefinitely detailed to OCR/PCIB [was] denied." Please explain the basis of this claim.**

A.:    I wrote a letter (Attachment 3) dated December 31, 2002 directly to my supervisor, Danny Crawford, and personally hand delivered it to Debbie Williams because Danny was not in his office.  This was the very last day of the detail and he had not notified me that it was time for my return because he really didn't expect me to return.  After receiving my letter, Debbie Williams sent me a letter (Attachment 4) that same evening informing me that my detail had ended.  Remind you, this was only after I hand delivered my letter to her.  In my letter, I reminded Danny of the harassment, humiliation and intimidation that I endured prior to the detail that caused me poor health.  I informed him that I did not want to come back to the same hostile environment to cause further detriment to my physical and mental health. I requested that he allow me to work at a location outside the State Office.  He denied the request in essence by not responding to it.

Q.:    **Why do you believe his denial was reprisal?**

*ocf*

4

*/ Colod*

A.:    Again, Mr. Crawford was aware of all the requests, all of the denials and all of the complaints, but chose to do nothing except put me in harms way. You see, Mr. Crawford is the person that I filed my first complaint against. Although the case was settled, Mr. Crawford would always treat me in a hostile manner when he spoke to me during counseling sessions. These incidents are listed in both ROI done concerning my cases. This was his way of expressing his displeasure with me prior to our settlement. Naturally, his not responding to my request was clearly done in an effort to get back at me for making the complaints and being awarded a settlement. Mr. Crawford disapproved my sick leave request but never responded to my request to be reassigned, even though it was in the same letter as the sick leave request. I consider this reprisal.

Q.:    **The third item in your complaint for reprisal states that on January 6, 2003 your request for indefinite sick leave was denied. Tell me about that claim.**

A.:    This was in the same letter (Attachment 3, pg. 2) that I sent to Danny Crawford in item two requesting that I be allowed to work outside of the State Office. In that letter I also asked that in the alternative, if I could not be permanently reassigned, that I be placed on indefinite sick leave. On January 07, 2003, I received Danny's memorandum dated January 06, 2003 (Attachment 5) by federal express returning my sick leave request as disapproved due to the lack of medical documentation.

Q.:    **What was the medical basis of this request?**

A.:    I didn't want to suffer any more detriment to my physical and mental health by having to go back to a hostile work environment under Danny Crawford.

Q.:    **What kind of specific medical problems were you having?**

A.:    With all of the pressure of harassment, humiliation and intimidation being placed on me by Danny Crawford, I was in a very stressful situation. Every morning when I would get out of my bed to go to work, I would have anxiety attacks. I would have knots to ball-up in my stomach, which caused nausea and vomiting.

_Idloe_

ooP
Exhibit _6a_
Page _5_ of _25_

**Q.:**    **Were you seeing a physician for any of the complaints?**

**A.:**    Yes, I was seeing my family physician and was missing many days from work. Right after I was detailed to Civil Rights and on my first trip out-of-town, I had not recovered from the stress, and I became very ill. I suffered an anxiety attack. I was carried to an out-of-town hospital by a co-worker. I contributed that anxiety attack to being under the stressful situations with Danny Crawford.

**Q.:**    **Did a doctor recommend that you be placed on indefinite medical leave?**

**A.:**    Not at that time. I was still at OCR and was hoping not to return to Mr. Crawford's area. The management guide says you should have documentation to support a request for indefinite sick leave; however, many others have been granted such a request without medical documentation in the past, including me. However, when I returned, the same things started happening to me all over again. I visited my doctor and expressed the situation I was in. My doctor recommended that I take a week off and see if I got to feel better. I presented the medical documentation with the sick leave request. I returned to work after that week and just couldn't tolerate it. I was getting no help or response from anyone in dealing with Mr. Crawford. Mr. Crawford would relate and communicate with the other employees (all white) in the office but me. Even the field offices would not contact me because Mr. Crawford did not send them notice that I had returned. He would even contact a subordinate under my area to keep from working with me. Therefore, I decided to retire because my health was more important to me.

**Q.:**    **Can you identify any similarly situated employees that were given indefinite sick leave without supporting documentation?**

**A.:**    Upon information and belief, Daniel Robinson, Sharrie Peterson, Debbie Williams, Mary Reynolds, Irene Bennett and myself, to name a few, have been on extended sick leave without medical documentation. I am sure there are others. I do not have access to their personnel files. I am sure the personnel files, if examined, would reflect this.

Exhibit _6a_
Page _6_ of _25_

Q.:  Continuing with your complaint, you also allege that your supervisor, Danny Crawford, undermined your ability to perform your duties as Branch Chief when he failed to advise you of a meeting on January 21, 2002 concerning NAP payments. You mentioned that the January 21, 2003 meeting was cancelled and rescheduled for January 23, 2003. In essence item 4 (a.) and 4 (b.) in your complaint are the same meeting, is that correct.

A.:  Yes

Q.:  Please explain the basis of your claim of reprisal concerning this event.

A.:  After I went back, after not being able to get a detail or reassignment or indefinite sick leave, I was forced to go back and work under Danny Crawford. I was working again as Chief Agricultural Program Specialist. There was a meeting that had been set up for the NAP program. It was set up before I had returned. My employee, Walda Messer, informed me that Danny wanted her to go to the Autauga County Office to meet with a black farmer about the 2002 NAP payments. I wasn't informed of the meeting. I am also aware that Danny called the black State Committeeman, Douglas Moore to attend the meeting with them. As a matter of course, and as Chief of that program, someone should have told me what had transpired upon my return to my former position. I understand there was a misunderstanding on the date of that meeting as it relates to the black farmer. Therefore, the meeting was rescheduled for the following Thursday in the STO. I was not aware of this scheduled meeting until Richard Nazary, Farm Loan Specialist, called me on the telephone and asked me to come downstairs and call Washington because they had a group of black farmers distraught about not being paid their 2002 NAP payments. My role as supervisor was totally ignored. Since the meeting involved claims specific to my program, I should have been updated and asked to attend that meeting.

Q.:  How do you see your failure to be notified of this meeting as reprisal?

A.:  It was done on purpose to undermine my ability to perform. After returning, I was not involved in the day-to-day activities, or receiving telephone calls from the

field. I was just sitting reading the handbook on the New Farm Bill Program. This could have been a good time for Danny to meet with me and update me on program matters. There was no communication between us. Everything was back as usual, not included in anything. However, I went down stairs and told the farmers that I had just gotten back to work and that I did not know anything about the situation. I was really, really embarrassed in the presence of those farmers by the District Director, Richard Burge. Since I was not notified of the meeting, I was not prepared to meet the needs of the farmers.

Q.: **How did he embarrass you?**

A.: The black farmers kept asking why they had not received their NAP payments in one county when other farmers had received their payments in other counties? Richard Burge asked me to go upstairs and send my subordinate, Walda Messer, down. He told me I could come back if I wanted to. He embarrassed me in their presence with his tone of voice.

Q.: **Did you return and attend the meeting?**

A.: Yes I did.

Q.: **In item (C.) of the accepted issues you allege you were the victim of reprisal when in January 5, 2003, they failed to notify field activities that you had returned from your detail at OCR/PCIB. Please explain the basis of your claim of reprisal.**

A.: It's a normal practice that when a change takes place where a person is detailed to a different place or area, the county offices, which we call the field offices, gets a notice as to the status of personnel. When I left on the detail as part of the mediation resolution, they immediately sent out a notice (Attachment 6) stating that I was being detailed, that they were getting rid of me. When I notified Danny that I was retiring, Debbie Williams immediately sent an e-mail message (Attachment 7) to all FSA employees. However, when I returned from the detail,

Exhibit 6a
Page 8 of 25

no notice went out stating that I had returned. The field didn't even know what my status was. I immediately e-mailed (Attachment 8) Debbie and asked her why she rushed to let the field know I was retiring, but she didn't let them know I had returned yet? Danny responded to me by e-mail "what are you talking about"?

**Q.:    You feel that that was reprisal?**

A.:    Yes it was, because they notified the field of my status when I left, but did not upon my return in order to continue undermining my role as Chief.

**Q.:    Were you harmed in any why by this, if so, how?**

A.:    Yes I was. It resulted in my inability to perform as it relates to supervising my employees when he consulted in them instead of me. I lost all respect from them as well as the field employees. It caused much damage to my character and integrity on a nationwide basis. The pattern was set prior to the detail and continued when I returned. Danny (through John Chott of the National Office approval) had invited out-of-state employees to come to Alabama and train the field on a program in my shop without my knowledge. I was only informed when the field was informed, and had to sit through the training as the field employees. He had an out-of-state employee to come to Alabama and review a county office on one of my programs without any input from me. This caused great harm to my integrity.

**Q.:    In item five of your complaint for reprisal you contend that management forced you to retire. Please state in detail the basis of this claim.**

A.:    Basically, what I have stated in my answer above would answer this question. Again, I had several requests for extended detail, reassignment to Civil Rights or work at some location outside of the STO, and management failed me each time by not responding to my requests. I should not have been placed back in the same hostile environment. Danny Crawford never communicated with me upon my return. As a matter of fact, he never communicated with me before the detail with the exception of the interrogation sessions. I have documents of these sessions as recorded by Debbie Williams or his Secretary, Irene Bennett. These documents are also included in the two previous ROI's. It shows a pattern of harassment, humiliation and intimidation by Danny Crawford, and how he under-minded my

*oof*
Exhibit _6a_
Page _9_ of _25_

role as Chief from the time he became SED in May 2001. I began to see these same patterns of being left out upon my return. I felt my health was more important and since they would not reassign me, I had no alternative but to leave, therefore, I was forced out.

**Q.:** **Your last claim for reprisal is based on the fact the agency did not give you a retirement celebration as they did similimarly situated employee. Please explain the basis of this claim.**

**A.:** It has always been a tradition when one retires their supervisor will normally have a retirement celebration. My supervisor, Danny Crawford didn't offer me any kind of celebration. I really don't care to be honest; this was added just to show there is a disparity in how I was treated. For example, when Richard Nazary retired shortly after I did, they gave him a big celebration and called it a wellness day which meant that people could come and celebrate and take leave without being charged with leave. Richard's supervisor, Bill Sewell as well as Danny Crawford sent memorandums (Attachments 9 and 10) out to the field inviting them to the celebration.

**Q.:** **Do you have anything else you wish to add?**

**A.:** Yes, I believe my complaints record will show a pattern of Danny Crawford's actions that he had an agenda to get rid of me when he first came on board as SED during the latter part of May 2001. I had over 30 years of service and had received numerous awards, accolades from former SED's and called upon to work in the National Office on several occasions, which indicates that I had a very good performance rating. Danny started attacking me immediately. Two weeks after coming to the STO, he had my Time & Attendance (T&A) monitored without my knowledge by my subordinate and his subordinate. I was the only employee being treated this way. I believe Danny realized or was informed that he could not single me out because if he was looking for abuse, he had to monitor all employees T&A, including his own. Then Danny started attacking my performance. In June 2001, he handed me a certificate for outstanding performance wherein I received a Quality Step Increase (QSI) for the previous year's performance. The record will show Danny started calling me in his office for these counseling (interrogation) sessions, which were the only form of

/ lplp j

oof
Exhibit 6a
Page 10 of 25

communication between us.  He told me that the District Directors (DDs), the County Executive Directors (CEDs), and field employees (all white employees) had a problem with me because I didn't know my job.  I had worked with Danny for over 20 years as a Program Specialist & Chief Program Specialist when he was a CED.  I really can't understand how I came from a QSI in June to a total failure in October of the same year.  Danny Crawford also sat in on my staff meetings.  He did not do this with the other Chiefs.  I believe this along with all the other disparities mentioned in the items above show a pattern of discrimination against me.  It indicates a conspiracy to get me out of the workforce.  I believe the record will show these disparities cost me my livelihood.

*I have read the above affidavit consisting of 11 pages.  It is true and complete to the best of my knowledge and belief.  I have made all necessary corrections and additions, initialing next to each, I have also signed or initialed each page.  I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties. In accordance with 28 U.S.C. Section 1746, I declare under penalties of perjury that the above statements are true and correct to the best of my knowledge, information and belief.*

_____    ____08/11/2005____
*Signature*                          *Date*

*I hereby certify that I obtained the above affidavit in connection with a duly authorized EEO complaint investigation.*

_____    _____
*Dennis J. Redic*                     *Date*
*EEO Investigator*

11

# CHESTNUT, SANDERS, SANDERS, PETTAWAY, CAMPBELL & ALBRIGHT, L.L.C.
## ATTORNEYS AND COUNSELORS AT LAW
### ONE UNION STREET — SELMA, ALABAMA 36702-1290

J. L. CHESTNUT, JR.
HENRY SANDERS
ROSE M. SANDERS
COLLINS PETTAWAY, JR.
KATY SMITH CAMPBELL
APRIL ENGLAND-ALBRIGHT

_____

JEFFREY C. ROBINSON
PRINCE D. CHESTNUT
MARILYN M. GARNER

December 9, 2002

MAILING ADDRESS:

P. O. BOX 1290
SELMA, ALABAMA 36702-1290
(334) 875-9264
TELECOPIER: (334) 875-9375
TELECOPIER: (334) 875-9853

*Jim Little . 202-720-3467*
*FAX 202-720-911*

*David Winningham . 202-720-5212*
*FAX 202-205-28*

Ms. Carol A. Fields, Chief Employment
Compliance and Techinal Assistance Division
Suite 250, Room 246
300 7th Street, S.W.
Washington, D.C. 20024

RE:   Ozetta Thomas/non-compliance request

Dear Ms. Fields:

This letter is written relative to the above-referenced matter. Please note the following:

On September 13, 2001, Ms. Thomas filed a verbal EEO complaint against the Alabama FSA Executive Director, Mr. Danny Crawford. Subsequently, on or about September 19, 2001, she formally filed her complaint with Mr. Claude McKenzie, EEO Counselor in Athens, Georgia. Mediation was held on December 5, 2001, at 8:30am in Montgomery, Alabama. After the mediation, an agreement was issued (see attached agreement). Then, on or about January 11, 2002, Ms. Ozetta Thomas requested a reinstatement for non-compliance, asking the EEO to revisit her complaint. This brings us to where we are now. (See attached letter of January 11, 2002)

After the agreement was issued, Mr. Danny Crawford failed to comply with and adhere with several things specified therein. Thus, Ms. Thomas now seeks the following:

1.   Reinstatement of her complaint;
2.   An indefinite extension on her present detail in the Civil Rights and Small Business Utilization Staff, Program Branch in Montgomery, Alabama;
3.   All of her previous requests in her January 11, 2002 letter;

Exhibit *6a*
Page *12* of *25*

*1606L*

*Attachment 1.*
*B.2*

4.    All other relief equitably possible.

Finally, please note that the EEO has failed to respond timely to Ms. Thomas' request for reinstatement of her complaint as more than 180 (one hundred and eighty) days has elapsed.

If you have any questions, do not fail to give me a call.

With kindest regards, I am...

                              Yours truly,

                              Jeffrey C. Robinson, Esq.

JCR/tth

Enclosures

CC:    Ms. Ozetta Thomas
       Claude McKenzie
       Debra Lambardino

*16bm*

Attachment 2.

December 13, 2002

**United States
Department of
Agriculture**

TO:      Sharon L. Holmes, MS
              Director, Office of Civil Rights

**Farm and Foreign
Agricultural
Services**

FROM:    *Carlton O'neal*
**Farm Service Agency**     Carlton O'neal
             Chief, Program Complaints Inquiry Branch

**Office of
Civil Rights**
4121 Carmichael Rd
Suite 603, Sterling Ctr
Montgomery, AL
36106

SUBJECT:  Ozetta C. Thomas
               Program Complaints Specialist

Tel: (334) 279-3601
Fax (334) 279-3698

Ozetta C. Thomas was detailed to the Program Complaints Inquiry Branch on December 17, 2001. Mrs. Thomas was detailed to this branch from the FSA State Office in Alabama as part of a resolution to an EEO complaint. It is my understanding that a final resolution to Mrs. Thomas complaint has not been determined at this time. The detail of Ozetta Thomas is scheduled to terminate on January 3, 2003.

During the past fiscal year, the PCIB completed 85 investigations; and conducted 11 EEO/CR Management and Compliance Reviews. Mrs. Thomas is the only Program Complaints Specialist in this branch with an extensive career background with the legacy ASCS programs. As a result, the PCIB utilized Mrs. Thomas in the completion of seven investigations; and five EEO/CR Management Reviews. In my opinion, it would be advantageous to the Agency if the detail of Mrs. Thomas was extended until a final decision was reached regarding the EEO complaint for the following additional reasons: 1) personnel shortage in PCIB. Roy C. Brown, Program Complaints Specialist is presently on a military assignment; and the recent death of Barbara Estes, Program Complaints Specialist, and 2) the projected increase in the number of complaints that will be filed by clientele that involves farm program issues.

Please advise if additional information is needed by PCIB.

cc: Deborah Lombardino
    Chief, Counseling and Mediation Branch

USDA is an Equal Opportunity Provider and Employer

Exhibit 6a
Page 14 of 25

*Attachment 3.*
*B.1*

2629 Highway 14, East
Selma, AL 36703
December 31, 2002

Dear Mr. Crawford,

As you are aware, I am to return to my role as Chief of Production
Adjustment/Compliance Division on Monday, January 6, 2003 as a result of the
Mediation Agreement we made from my EEO complaint against you as State Executive
Director of the Alabama Farm Service Agency. You are also aware that I have requested
a reinstatement of this complaint due to noncompliance, along with other acts of reprisal
against me.

When I left the State Office a year ago, I was a nervous wretch and in poor health due to
the harassment, humiliation and intimidation that I had to endure. I really was hoping for
a resolution to the situation before such time of the expiration of the agreement, and that
has not happened. My attorney also recently requested an indefinite extension of the
detail to OCR/PCIB from the Department of Civil Rights, Employment Compliance and
Technical Assistance Division.

In the event we have not received a response to our request by Friday, January 3, 2003, I
am requesting that you allow me to work at a location outside of the State Office. I
cannot subject myself to such an uncomfortable environment to cause further detriment to
my physical and mental health. If this request is unfeasible, I am enclosing a signed
request for sick leave for your approval. I am requesting leave beginning January 6, 2003
until such time a resolution can be reached. I do plan to stay on board until some
favorable resolution is reached. Your immediate attention is needed, and your
cooperation with me in this matter will be appreciated.

Sincerely,

Ozetta C. Thomas

Enclosure

Cc: Doug Frago, DAFO
    John Chott, Deputy DAFO
    Jeffrey C. Robinson, Esq.

## Request for Leave or Approved Absence

| 1. Name *(Last, first, middle)* | 2. Employee or Social Security Number |
|---|---|
| Thomas, Ozetta C. | |

**3.** Organization

USDA/FSA

**4.** Type of Leave/Absence

| Check appropriate box(es) and enter date and time below) | Date From | Date To | Time From | Time To | Total Hours |
|---|---|---|---|---|---|
| ☐ Accrued annual leave | | | | | |
| ☐ Restored annual leave | | | | | |
| ☐ Advance annual leave | | | | | |
| ☑ Accrued sick leave | 01-06-03 | -- | 7:30 a.m. | 5:00 p.m. | |
| ☐ Advance sick leave | | | | | |

Purpose: ☐ Illness/injury/incapacitation of requesting employee

☐ Medical/dental/optical examination of requesting employee

☐ Care of family member, including medical/dental/optical examination of family member, or bereavement

☐ Care of family member with a serious health condition

☐ Other

☐ Compensatory time off

☐ Other paid absence *(specify in remarks)*

☐ Leave without pay

**5.** Family and Medical Leave

If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993 (FMLA), please provide the following information:

☐ I hereby invoke my entitlement to family and medical leave for:

☐ Birth/Adoption/Foster care

☐ Serious health condition of spouse, son, daughter, or parent

☐ Serious health condition of self

*Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the FMLA. Medical certification of a serious health condition may be required by your agency.*

**6.** Remarks

**7. Certification:** I certify that the leave/absence requested above is for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

| 7a. Employee signature | 7b. Date signed |
|---|---|
| *Ozetta C. Thomas* | 12/31/2002 |

**8a.** Official action on request    ☐ Approved    ☐ Disapproved    *(If disapproved, give reason. If annual leave, initiate action to reschedule.)*

**8b.** Reason for disapproval

| 8c. Signature | 8d. Date signed |
|---|---|
| | |

**Privacy Act Statement**

Section 6311 of title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management.

Public Law 104-134 (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment to title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

Office of Personnel Management
5 CFR 630
Local Reproduction Authorized
OPM F...

Exhibit 6a
Page 16 of 25

United States
Department of
Agriculture

Farm and Foreign
Agricultural
Services

*Attachment 4.*

**Date:** December 31, 2002

Farm Service Agency

Alabama State FSA
Office
P. O. Box 235013
Montgomery, AL
36123-5013

334-279-3500
334-279-3550 (FAX)

**TO**        :    Ozetta Thomas, Agricultural Program Specialist

**FROM**    :    Danny F. Crawford, State Executive Director

**SUBJECT**    :    Termination of Detail

In accordance with the resolution agreement made by and between you and the
U. S. Department of Agriculture, Farm Service Agency, dated December 5, 2001,
your detail to the Civil Rights and Small Business Utilization Staff, Program
Complaints Branch in Montgomery, Alabama, as a Program Complaint Specialist will
terminate on January 4, 2003.

Our office has processed a SF-52, Notification of Personnel Action, to return you to
your former position effective January 5, 2003. We look forward to seeing you on
Monday, January 6, 2003.

If you have any questions or need assistance, please feel free to contact me.

USDA is an Equal Opportunity Provider and Employer

Exhibit 6a
Page 17 of 25

Attachment 5, B.1

United States
Department of
Agriculture

Farm and Foreign
Agricultural
Services

Farm Service Agency

Alabama State FSA
Office
P. O. Box 235013
Montgomery, AL
36123-5013

334-279-3500
334-279-3550 (FAX)

**Date:** January 6, 2003

**TO** : Ozetta Thomas, Agricultural Program Specialist

**FROM** : Danny F. Crawford, State Executive Director

**SUBJECT** : Request for Sick Leave

Attached is the Request for Leave or Approved Absence, SF-71, you submitted for indefinite sick leave beginning January 6, 2003.  This request has been disapproved due to the lack of supporting medical documentation.  You must provide medical documentation to substantiate any request for sick leave in excess of three days in accordance with Handbook 17-PM.  Failure to provide adequate medical documentation will result in a charge of Absence Without Leave (AWOL) beginning Thursday, January 9, 2003.

Attachment

USDA is an Equal Opportunity Provider and Employer

Exhibit 6a
Page 18 of 25

166r

## Request for Leave or Approved Absence

| 1. Name (Last, first, middle) | 2. Employee or Social Security Number |
|---|---|
| Thomas, Ozetta C. | |

**3. Organization**

USDA/FSA

**4.**

<table>
<tr><td colspan="6" align="center">Type of Leave/Absence</td><td colspan="2" rowspan="2">5.     Family and Medical Leave</td></tr>
<tr><td rowspan="2">Check appropriate box(es) and enter date and time below)</td><td colspan="2" align="center">Date</td><td colspan="2" align="center">Time</td><td rowspan="2">Total Hours</td></tr>
<tr><td>From</td><td>To</td><td>From</td><td>To</td><td colspan="2">If annual leave, sick leave, or leave witho pay will be used under the Family and</td></tr>
<tr><td>☐ Accrued annual leave</td><td></td><td></td><td></td><td></td><td></td><td colspan="2">Medical Leave Act of 1993 (FMLA), pleas provide the following information:</td></tr>
<tr><td>☐ Restored annual leave</td><td></td><td></td><td></td><td></td><td></td><td colspan="2"></td></tr>
<tr><td>☐ Advance annual leave</td><td></td><td></td><td></td><td></td><td></td><td colspan="2"></td></tr>
<tr><td>☑ Accrued sick leave</td><td>01-06-03</td><td>--</td><td>7:30 a.m.</td><td>5:00 p.m.</td><td></td><td>☐</td><td>I hereby invoke my entitlement to family and medical leave for:</td></tr>
<tr><td>☐ Advance sick leave</td><td></td><td></td><td></td><td></td><td></td><td>☐</td><td>Birth/Adoption/Foster care</td></tr>
</table>

Purpose: ☐ Illness/injury/incapacitation of requesting employee

        ☐ Medical/dental/optical examination of requesting employee

        ☐ Care of family member, including medical/dental/optical examination of family member, or bereavement

        ☐ Care of family member with a serious health condition

        ☐ Other

☐ Serious health condition of spouse, son, daughter, or par

☐ Serious health condition of se

☐ Compensatory time off

☐ Other paid absence (specify in remarks)

☐ Leave without pay

*Contact your supervisor and/or your personnel office to obtain additional information about your entitlements an responsibilities under the FMLA. Medic certification of a serious health conditic may be required by your agency.*

**6. Remarks**

**7. Certification:** I certify that the leave/absence requested above is for the purpose(s) indicated. I understand that I must comply with r employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

| 7a. Employee signature | 7b. Date signed |
|---|---|
| *Ozetta C. Thomas* | 12/31/2002 |

**8a. Official action on request**

☐ Approved    ☒ Disapproved    *(If disapproved, give reason. If annual leave, initiate action to reschedule.)*

**8b. Reason for disapproval**

Lack of medical documentation for timeframe requested

| 8c. Signature | 8d. Date signed |
|---|---|
| *Danny J. Crawford* | 1/6/03 |

**Privacy Act Statement**

Section 6311 of title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Feder agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management.

Public Law 104-134 (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment to title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If your agency uses the information furnish on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purpose

Office of Personnel Management
5 CFR 630

Local Reproduction Authorized

OPM

Exhibit 61
Page 19 of 25

(Attachment 6)

December 13, 2001
~~January 3, 2002~~

United States
Department of
Agriculture

Farm and Foreign
Agricultural
Services

Farm Service Agency

Alabama State Office
P. O. Box 235013
Montgomery, AL
36123-5013

Tel: (334) 279-3500
Fax: (334) 279-3550

TO:        All Alabama FSA Employees

FROM:      /s/Danny F. Crawford, State Executive Director

SUBJECT:  Acting Chief, PA/CP

Ozetta Thomas has been detailed to the Civil Rights and Small Business Utilization Staff effective December 16, 2001.  Jeff Knotts has been appointed to serve as Acting Chief of the Production Adjustment/Compliance Division in the STO.  All calls or correspondence in that program area that would normally be routed to the Chief of the Division should be forwarded to Jeff.

USDA is an Equal Opportunity Employer

166 +

Exhibit 6a
Page 20 of X

Yahoo! Mail - ozetta@yahoo.com                                                    Page 1 of 1

Case 2:05-cv-00411-WKW-SRW      Document 64-5      Filed 04/11/2008      Page 21 of 25



(Attachment 7)

Close Window

**Date:** Thu, 27 Feb 2003 09:53:50 -0600
**From:** "Sharon S. Ervin" <Sharon.Ervin@al.usda.gov>
**To:** ozettat@yahoo.com
**Subject:** [Fwd: Retirement]


## Forwarded Message

**Date:** Mon, 24 Feb 2003 14:46:07 -0600
**From:** "Deborah Williams" <deborah.williams@al.usda.gov>
**To:** "All Employees" <allfsaemp@al.usda.gov>
**Subject:** Retirement


## Plain Text Attachment

Ozetta Thomas has decided to retire from her position with FSA effective
today, February 24, 2003.  Walda Messer has been designated Acting Chief
of the Production Adjustment/Compliance Division through March 31, 2003.

We wish Ozetta the best in her retirement and thank her for her many
years of service to FSA.


Exhibit 6a

Page 21 of 25

Yahoo! Mail - ozettat@yahoo.com                                                    Page 1 of 1

Case 2:05-cv-00411-WKW-SRW     Document 64-5     Filed 04/11/2008     Page 22 of 25

# YAHOO! Mail

(Attachment 8)

Close Window

**Date:** Mon, 24 Feb 2003 21:25:05 -0600
**From:** "Danny Crawford" <danny.crawford@al.usda.gov>
**To:** "ozetta thomas" <ozettat@yahoo.com>
**CC:** deborah.williams@al.usda.gov
**Subject:** Re: Retirement

What are you talking about?

```
ozetta thomas wrote:
>
> Why the mad rush to inform the field that I was
> retiring? They don't know I am back from the detail
> yet.  You didn't send a notice out on that!
>
> Ozetta
>
>
> _____
> Do you Yahoo!?
> Yahoo! Tax Center - forms, calculators, tips, more
> http://taxes.yahoo.com/
```

(Attachment 9    )

 **YAHOO! Mail**

Close Window

**Date:** Tue, 22 Apr 2003 10:37:38 -0500
**From:**                                    @al.usda.gov>
**To:** Ozettat@yahoo.com
**Subject:** [Fwd: Retirement of Richard Nazary]

---

## Forwarded Message

**Date:** Thu, 17 Apr 2003 14:32:51 -0500
**From:** "William Sewell" <william.sewell@al.usda.gov>
**To:** "All FSA Employees" <allfsaemp@al.usda.gov, allrdemp@al.usda.gov, "Spencer Swann"
<sswann@farmcreditbank.com>, "Camp Powers" <rpowers@firstsouthfarmcredit.com>, "Roger Chappell"
<rchappell@firstsouthfarmcredit.com>, "David Howse" <dhowse@farmcreditbank.com>, "Veldon Hall"
<Veldon_Hall@wdc.usda.gov>, "Jim Radintz" <jim_radintz@wdc.fsa.usda.gov>
**Subject:** Retirement of Richard Nazary

---

### Plain Text Attachment

```
Attached is a copy of the letter announcing the retirement of Richard
E.
Nazary, FLP Specialist.  Some of you have known Richard for years and
have worked with him before.  You might just want to write him a note
saying farewell or you may want to contribute to his retirement gift.
Whatever, you feel like doing.

If you know of any retirees that have worked with Richard in the past,
please see that they are aware of his forthcoming retirement.

Thanks,

Bill Sewell
```

Attachment



**z_Richard_Nazary_Outing.doc**
.doc file

Exhibit *6a*
Page *23* of *25*



**USDA**

(Attachment 10          )

United States
Department of
Agriculture

April 17, 2003

Farm and Foreign
Agricultural
Services

Farm Service Agency

Alabama State Office
P. O. Box 235013
Montgomery, AL
36123-5013

TO:          All Alabama FSA Employees, RD Employees and Retirees

Tel: (334) 279-3500
Fax: (334) 279-3550

FROM:       /s/ Danny F. Crawford, State Executive Director

SUBJECT:    Wellness Day and Retirement Party


The State Office is planning a "Wellness Outing and Retirement Party" on May 28, 2003, from 10:00 a.m. - 2:00 p.m. in Montgomery.  It will be at the Ida Bell Young Park, which is located on Vaughn Road between St. James and Catholic High Schools.  A walking path and other outdoor activities are available at the park.  The outing is to help reduce some of the stress at the State Office and to recognize the retirement of Richard E. Nazary, FLP Specialist.  Richard is retiring on June 3, 2003, after 35 years of service.  He will surely be missed! Farewell cards, letters and cash contributions should be sent to Caryn Melton at the State Office.  Checks should be made payable to Caryn Melton.  A gift certificate will be purchased with the funds provided; and I will present the gift certificate, cards and letters to Richard at the "Wellness Outing."

The Farm Loan Program Staff will cook hamburgers during this outing. The price of the meal will be $5.00 per person.  If you plan to eat lunch with us, please contact Caryn Melton at (334) 279-3438, so that we will know how much food to buy.

If you have any questions, please contact the State Office, Farm Loan Division.

USDA is an Equal Opportunity Provider and Employer

Exhibit 6a
Page 24 of 2

166X

TO:       Mr. Dennis Redic, Investigator

FROM:     Ozetta C. Thomas, Complainant

SUBJECT:  REBUTTAL – Case No. 030475

This is to offer my rebuttal of statement made by Danny Crawford in my complaint of subject case verses USDA/FSA.

It is obvious that there was some communication between Mr. Crawford and Mrs. Sharon Holmes, Director Civil Rights (FSA) concerning my requests for an extended detail and/or permanent reassignment. He admits remembering the requests and giving his input to Ms. Holmes; but blames the denial solely on Mrs. Holmes. I believe he also had the authority to reassign me, but he totally ignored my requests. Danny also stated that he needed my current position as Chief of Programs filled, but he did not want me in that position. When I left on detail, he immediately filled my position with the white male (Jeff Knotts) on my staff.

I wish to inform you that Danny Crawford is not my physician. He could not diagnose me to make the statement that "Ozetta Thomas" was not sick. After I returned, he didn't see me or bother to communicate with me, so how could he make that determination. That sick leave request was attached to the letter (see Attachment 3 of original statement) I wrote him requesting reassignment as an alternative. He immediately returned the sick leave request (see Attachment 5 of original statement) by express mail disapproved and did not mention the contents of my letter at all. I did inform him of my health in that letter, which was caused by the hostile environment.

Mr. Crawford indicated that the meetings of January 21 and 23, 2003 were not on the NAP Program. My subordinate, Walda Messer, told me that Danny wanted her to go to Autauga County to meet with some farmers on NAP. I don't understand why he carried Walda to the meeting with him when she had been assigned the NAP Program, and not the Farm Loan Program. This was a totally different division that Walda did not work in.

Exhibit 6a
Page 25 of 25

1664