# Affidavit of Carlton O'neal

In the matter of EEO complaint of: )
**Ozetta Thomas** )
Complainant )
)
V. )
) Case No. 040175
**USDA-FSA** )
Respondent )

I, **Carlton O'neal** hereby solemnly swear that the information given in response to the following questions are true and complete to the best of my knowledge and belief, so help me God:

Q: Please state your full name for the record.

A.: Carlton O'neal

Q: What is your race for the record?

A.: Black

Q: What is your title and grade?

A.: I'm Chief of the Program Complaints Inquiry Branch (PCIB). I'm a GS-14, series 301

Q: How long have you been in your current position?

A.: Since April 2001.

Q: What do you do on a day to day basis?

Page 1 of 7                                                                 initial CO

**EXHIBIT 3**

173

Exhibit 8
Page 1 of 8

A.: We investigate complaints of discrimination filled by farmers against the Farm Service Agency. Additionally, we conduct EEO and CR Management Reviews to ensure States compliance with laws, procedures, and regulations. My responsibilities consist of supervising the aforementioned tasks.

Q: Are familiar with Ms. Ozetta Thomas? If so how?

A.: Yes. Ozetta was transferred to this branch for about twelve months. While here she worked directly under my supervision.

Q: How long was she here?

A.: December 17, 2001 through January 03, 2002.

Q: How did she come to work in your branch?

A.: She was detailed here as part of a mediation agreement. I understand she filed an EEO complaint against Danny Crawford, the State Executive Director. While the formal resolution of that complaint was being worked out she was detailed to this branch.

Q: What position did she hold?

A.: She was a Program Complaints Specialist.

Q: Were you involved in that decision?

A.: No. That was a decision worked out between Washington and the SED.
I was only told in a letter that she was being assigned to my branch and the time the detail was to end.

Q: Describe the day to day duties of the Program Complaints Specialist.

A.: I have 13 (thirteen) Program Complaints Specialist under my supervision. They are involved in conducting fact-finding inquiries on alleged discrimination complaints in the Farm Program and the Farm Loan Program areas. I review all the cases in which an investigation is requested and assign the cases to the various specialists in the branch for investigation.

Ms. Thomas had initially worked here before her detail as a Program Complaints Specialist. Ozetta Thomas was the Chief Agricultural Specialist for the Production Adjustment/Compliance Division in Alabama State Office before she was detailed to PCIB on December 17, 2001.

Q: How would you describe her work while she was here?

A.: It was ok. Ms. Thomas was helpful with Farm Programs. Most of the specialists in PCIB were experienced with the Farm Loan Programs. Ozetta had expertise in that area having worked in the Farm Program with the legacy Agricultural Stabilization and Conservation Service (ASCS). She assisted other specialists on the Farm Programs issues.

Q: How did you evaluate her Performance Work Plan, and for what period of time?

A.: In the rating period from December 16, 2001 to September 30, 2002 she received an "Achieved" for each of the elements in her Performance Plan.; Execution of Duties, Team Leadership; Research and Analysis; Customer Service; Personal Contacts. (Attachment A)

Q: Ms. Thomas testifies that you made a request to Washington to have her detail extended. Do you recall making the request, and if so, why?

A.: Yes. I made the request on December 13, 2002. Ms. Thomas' detail assignment was about to end and I thought it would benefit the branch if she was allowed to remain for a longer period of time. Ms. Thomas was the only Program Complaints Specialist in the branch with an extensive career background with the legacy ASCS programs. (Attachment B). I never received a written response to my request. However, I was informed by Sharon L. Holmes, Director, Office of Civil Rights that FSA would not extend the detail. I don't know who made this decision.

Q: After Ms. Thomas left the branch a similar position for a permanent Program Complaints Specialist was announced. How did the announcement come about?

A.: We had a man power shortage. We had recently lost two Program Specialists, three if you consider Ms. Thomas return from the detail. One specialist went on military duty and another died suddenly. I contacted Sharon Holmes in the national office of Civil Rights and asked to have a vacancy announcement posted for the position. She said O.K. I submitted a SF-52, Position Description and KSAs to Human Resources. They screened them and signed off. The position was for a Program Complaints Specialist, GS-11-13. Human Resources rated the applications and created the BQL. Sharon Holmes and I interviewed and evaluated the candidates in a three way telephone conference. After the initial interview, three or four of the top candidates were interviewed in person. Sharon was the selecting official. I merely made my recommendations. Ms. Thomas made the BQL and was interviewed by telephone.

Q: How did you come to get involved in the process?

A.: The position was in my branch directly under my supervision which is standard procedure. I assisted in the evaluation of candidates; however Sharon Holmes made the ultimate decisions.

Q: What race is Sharon Holmes?

A.: Black

Q: How many candidates did you initially interview by phone, and describe the interview process?

A.: We interviewed by phone 13-14 candidates. We divided the BQL into three lists, GS 11, 12, and 13. We took turns asking some prepared questions related to the position. I rated their response to the questions on a sheet form grading their interview responses on a point system of 10 to 30 ( low 10 pts, medium 20 pts , high 30 pts.). After the interview I added up my points then we would share observations of the candidates' interview.

Page 4 of 7  initial _CD_

176

Exhibit 8
Page 4 of 8

Q: Can you provide a copy of the questions you asked of the candidates, and the evaluation \scoring sheet for each?

A.: List attached (Attachment B).

Q: How did you evaluate Ms. Thomas?

A.: I would have to see the rating form, but I think she did well. However, there other candidates that performed at a higher level. Candidates were evaluated based on their grade. Ms. Thomas was on the GS-13 list. On the GS-13 list, there were five or six candidates. Ms. Thomas was rated in the middle of the group. Daniel Robinson scored the highest on the GS-13 list. Eric Mendohoff was scored the highest on the GS-12 list and John Smith, the selectee, on the GS-11 list. I recommended Daniel Robinson for the position. Ms. Holmes made her own selection, she chose John Smith III from the GS-12 certificate.

Q: Did you rank each candidate on each list? If so, please provide the listing for each grade category.

A.: All candidates that participated in an interview were provided a ranking. However, I do not have nor recall the exact rankings. However, Ms. Thomas was not ranked as the top candidate on the GS-13 certificate.

Q: Did you interview any of the candidates a second time in person? If so, who and when?

A.: No I did not. I believe Ms. Holmes interviewed some of the candidates a second time; however I was not involved in the selection process beyond the initial interviews. I do recall that Richard Sharpe, John Smith III, and Daniel Robinson being selected for the second interviews.

Q: John Smith III was the selected for the vacant position. What is his race?

A.: Black.

Q: In your evaluation of the candidates for the vacant position did you rely on or follow any established policy or procedure, for example, the Merit Promotion Procedures?

A: We simply evaluated the candidates based on the strength of their application and interview.

Q: In your opinion why was John Smith III a superior candidate over Ms. Thomas?

A: I think he did a better job in the interview, and I scored him that way. Ms. Thomas did not respond as well in the interview. She rather assumed she had the job because she had just recently worked in the position and knew everyone. Mr. Smith was well prepared and gave good answers. He had a higher level of education. I believe he has a Masters degree and a great deal of computer skills. The thought was that we could hire him as a GS-12 and train him to fit the position. As I stated earlier, Sharon Holmes made the ultimate decision. I recommended Eric Mendelhoff for the position at the GS-12 level.

Q: Was anyone involved in the selection process, to your knowledge, besides you and Sharon Holmes?

A.: Not to my knowledge.

Q: Did you at any time discuss the selection process with Danny Crawford, Douglas Fargo or Doug Chott?

A.: No.

Q: Were you aware of Ms. Thomas' prior EEO activity at the time of application for the vacant position? If so, when and how did you learn of her prior activity?

A.: I was aware of her prior EEO complaint against Danny Crawford based on the fact she was detailed to my branch as a result of mediation the prior year.

Q:      Did you or Sharon Holmes discuss Ms. Thomas' prior EEO activity during the selection process?

A.:     I do not recall discussing Ozetta Thomas' prior EEO activity during the selection process. However, I do know that it would not have affected my ranking of Ms. Thomas.

Q.:     Please provide me a list of employment selections or promotions you have made, by race and EEO activity, if known, from 2002 to January 2004.

A.:     There have been two vacant Program Complaints Specialists positions in the Program Complaints Inquiry Branch from 2002 to January 2004. The first position was offered to Jonathan Howard, a Black male. Mr. Howard did not accept the position therefore, the position was re-advertised, and Johnell S. Bryant was selected. I did concur in the selection of Ms. Bryant. The second vacant position is the one in question.

Q:      Do you have anything you wish to add?

A.:     No.

*have read the above affidavit consisting of 7 pages. It is true and complete to the best of my knowledge and belief. I have made all necessary corrections and additions, initialing next to each. I have also signed or initialed each page. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties. In accordance with 28 U.S.C. Section 1746, I declare under penalties of perjury that the above statements are true and correct to the best of my knowledge, information and belief.*

*Carlton O'neal*
Signature

*December 13, 2004*
Date

*I hereby certify that I obtained the above affidavit in connection with a duly authorized EEO complaint investigation.*

*PRed*
Dennis J. Redic
EEO Investigator

Dec 25, 04
Date

Page 7 of 7

initial____

179

Exhibit 8
Page 7 of 8

**redicc**
_____

**From:** "O'Neal, Carlton - Montgomery, AL" <carlton.o_neal@al.usda.gov>
**To:** <redicc@bellsouth.net>
**Sent:** Thursday, January 27, 2005 9:06 AM
**Subject:** RE: Ozatta Thomas

Mr. Redic;

I have searched for my notes pertaining to the rating of each candidate which applied for the position of Program Complaints Specialist without success. I do recall with certainty my personal ranking of each candidate. In addition, I cannot recall it my notes were given to Sharon L. Holmes. However, I do recall comparing the rankings with Mrs.Holmes during a meeting in Washington.

Please advise if additional action is needed on my part.

Thanks for your time and cooperation.

Carlton O'neal
Chief, Program Complaints Inquiry Branch    -----Original Message-----
**From:** redicc@bellsouth.net [mailto:redicc@bellsouth.net]
**Sent:** Wednesday, January 26, 2005 1:43 PM
**To:** O'Neal, Carlton - Montgomery, AL
**Subject:** Ozatta Thomas

Carlton;

I couldn't find the LOA for the Thomas file. I can request another from Mr. Newby. However, if you have any questions about my authority perhaps you can call him directly. Please send your signed statement to me by overnight mail. Also, I need the statement we discussed about the status of your candidate review notes. I appreciate your time and attention.

Regards,

Dennis Redic
100 Ashewoode Downs
Alpharetta, GA 30005

770-569-0768

Exhibit _8_
Page _8_ of _8_

1/28/2005

**180**