## Affidavit of Sharon S. Ervin

In the matter of EEO complaint of: )
**Ozetta Thomas** )
Complainant )
  )
V. )
  )
  )      **Case No. 040175**
**USDA-FSA** )
Respondent )

I, **Sharon S. Ervin**, hereby solemnly swear that the information given in response to the following questions are true and complete to the best of my knowledge and belief, so help me God.

Q: Please state your full name for the record.

A.: Sharon Sue Ervin

Q: What is your race for the record?

A: Caucasian

Q: What is your title and grade?

A.: Program Complaints Specialist, Grade 13

Q: How long have you been in your current position?

A.: Since March 1998. 6 ¾ years.

Q: What do you do on a day to day basis?

A: I investigate civil rights complaints. I also coordinate the activities of the State Management Review (SMR) Process for our Branch. This includes preparation and maintenance of the review guide, maintenance of the tracking system for the SMRs, training other Review Team Members, and preparation of reports as necessary for upper management. Although not on a day-to-day basis, I also investigate employee misconduct as requested.

**EXHIBIT**
5

Exhibit 13
Page 1 of 4

**193**

Initials

Q.:     Do you have any prior EEO activity? If so, please provide details of the complaint and its status.

A.:     I once was a member of a class action (Sonia Byrd) - sometime around 1993-1994. It has been settled. This was under the former Farmers Home Administration

Q:      Are familiar with Ms. Ozetta Thomas? If so how?

A.:     Ozetta was one of the original PCIB team when our branch was created in 1998. We started employment at the same time. She actually was the first employee hired in our branch by David Winningham, who was the Director of our organization (Civil Rights and Small Business Utilization Staff for FSA). David then went on to become the Director, USDA Civil Rights.

Q.:     Did you supervise her during her time in your branch?

A.:     Yes - on occasion I was named "Acting" in the absence of Mel Weil, Branch Chief. In addition, I was Team Leader for the review we conducted in Arkansas after the Consent Decree (Black Farmers class action). Ozetta was on my team.

Q :     Ms Thomas applied for and was not selected for the vacant position of Program Complaint Specialist, Vacancy Announcement Number F3 FSA 048. Are you familiar with the announcement? If so, please state what you know about it.

A.:     After Ozetta had been with our branch for about a year she then had an opportunity to apply for the Program Chief for the FSA State Office in Alabama. I remember she said this was an opportunity she couldn't pass up because if she got the job she would make history by being the first black female to be Program Chief. She was selected for the position and left our Branch with mixed feelings. When then applied when we had an opening.

Q.:     Were you involved in the selection process? If so, how?

A.:     I was not involved in the selection process.

Q.:     Did you have the opportunity to review the BQL or see any of the applications of the prospective candidates concerning the vacant position?

A.:     No, I did not.

**Exhibit 13**

**Page 2 of 4**

Q.:     Do you believe Ms. Thomas was the best qualified candidate for the vacant position? If so, why? Please state in full detail.

A.:     I do believe Ozetta was best qualified. I can't imagine any one else being more qualified. In this Branch a college degree is not required. David Winningham told me that himself when he hired me. Ozetta had been with FSA (the former ASCS) Commodity Programs for many years. No one else selected from our branch from the beginning and since has the commodity program knowledge Ozetta has. She prepared the worksheets we still use today for reviewing disaster programs and she taught all of us what to review for. We are seriously lacking in that area in that we still don't have anyone with the knowledge Ozetta has in the commodity program area.

I have personally heard our first Branch Chief, Mel Weil, tell Ozetta that she prepares a good looking report. I also personally heard Mr. Weil tell Ozetta (when she struggled with the decision to leave to go to the State Office for the Chief's position), when she asked if she changed her mind, could she return -- he said yes.

Also, as I mentioned earlier, I was Team Leader for a lengthy, extensive review done in Arkansas. Ozetta was one of my team members. Her public relations skills in dealing with others are outstanding. She is a hard worker and very much a team player. I could not have conducted the Arkansas review efficiently if it had not been for Ozetta and her knowledge of the commodity programs. She also has had the experience and training required to be a civil rights investigator (she had the same training the rest of the original group received). Ozetta is simply a better qualified person for any Specialist position in our Branch than anyone else I know (with the exception of any specialist who has retired from our Branch.)

This position requires someone with the program knowledge, people skills, investigative experience, and someone who is honest and trustworthy with high principles and scruples. Ozetta meets all these requirements. I cannot say that John Smith does.

Q.:     Are you familiar with the selectee, John Smith? Is so, please state how long and how well you know him?

A.:     I first became aware of John Smith while conducting a fact-finding inquiry about a civil rights complaint filed in Texas. John at that time worked for a university and was packaging loans for FSA. In my opinion, the complaint would not have taken place had it not been for John Smith. I felt he didn't understand Farm Loan Programs enough to be packaging loans properly. Then when I was going a State Management Review in Texas in 1999, I met John in person. He had recently been hired as an outreach coordinator for the FSA in Texas. John has told me that the SED "ran him out of Texas". So he applied for this position.

Q.:     Do you work closely with him on a day to day basis?

A.:     I now work with John on a day-to-day basis. His title is now the same as mine. Although he has not achieved the same grade. I presume this is because he has not been able to successfully improve his skills to the 13 level. He is still a grade 12.

Q.:     Do you supervises or review his work product?

A.:     I have reviewed his work product on fact-finding investigations. He has not been given any responsibilities as a Team Leader yet.

**Exhibit** 13

**Page** 3 **of** 4

Q.:   Do you believe Ms. Thomas was better qualified for the position than Mr. Smith? If so, please state in detail the basis of you position and what information or knowledge you relied on in reaching your conclusion.

A.:   Ozetta is (hands-down) better qualified than Mr. Smith. Mr. Smith may have a degree but I would take Ozetta over him any day. The only thing I can say for John is he has some good computer knowledge. He is slow, bull-headed, and totally does not understand either the Farm Loan Programs or commodity loan programs. Several of us have tried to help John in his assignments, but it isn't working out. He doesn't listen when you try to explain things to him.

Q:    Do you have anything you wish to add?

A.:   Yes. The selecting official was Carlton O'neal. Mr. O'neal is a nice person, but he has limited program knowledge also. The only reason he selected John is because John has a degree. When Carlton was selected as Chief, he was selected only because of his degree. That has been a fiasco as well. Having a degree does not make a person smart. Anyone in our branch (if they were to tell the absolute truth) would tell you that the Chief's position is too much for Carlton to handle. He couldn't even cut it as a Program Complaints Specialist. Our first Branch Chief, Mr. Weil, will tell you that. So it isn't any wonder to me that Carlton selected John. Carlton simply doesn't have what it takes either.

There's another reason Carlton selected a male. I speak from experience. He has a terribly difficult time dealing with females.

*I have read the above affidavit consisting of 4 pages. It is true and complete to the best of my knowledge and belief. I have made all necessary corrections and additions, initialing next to each. I have also signed or initialed each page. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties. In accordance with 28 U.S.C. Section 1746, I declare under penalties of perjury that the above statements are true and correct to the best of my knowledge, information and belief.*

/s/ Sharon S. Ervin                              12-16-04

_____                         _____
Signature                                              Date

*I hereby certify that I obtained the above affidavit in connection with a duly authorized EEO complaint investigation.*

Dec 18, 2004                                   _____
_____                                Date
Dennis J. Redic
EEO Investigator

Exhibit 13
Page 4 of 4