IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| OZETTA THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05-CV-411-WKW |
| | ) | |
| ED SCHAFER, SECRETARY, | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| AGRICULTURE, FARM SERVICE | ) | |
| AGENCY, (FSA), | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT
OF HIS MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Defendant, by and through Leura G. Canary, United States Attorney for the

Middle District of Alabama, and files this Reply to Plaintiff's Response to Defendant's Motion for

Summary Judgment. In her Response, Plaintiff abandons all the claims in her Complaint except for

her constructive discharge claim. (Pl. Resp. at 9; Complaint ¶ 25). Regarding this sole remaining

claim, Plaintiff fails to cite to the correct legal standard and provides no response to Defendant's

extensive arguments in his Initial Summary Judgment Memorandum that she cannot make the

demanding showing necessary to convert a voluntary retirement into a constructive discharge. (Init.

Mem. at 28-34). For this reason alone, as well as those set forth in Defendant's Initial Memorandum

and below, this Court should grant summary judgment to Defendant on all Plaintiff's claims.

**ARGUMENT AND CITATION OF AUTHORITY**

Defendant established in his Initial Memorandum his entitlement to summary judgment on

all the claims in Plaintiff's Complaint because Plaintiff: (1) failed to comply with Title VII's

mandatory administrative exhaustion requirements for all her claims except her constructive

discharge claim; (2) could not show a breach of the December 5, 2001, Settlement Agreement; (3) could not establish a <u>prima facie</u> case of discrimination because she suffered no adverse actions and could not show that anything that happened during her employment was due to her race or gender; (4) could not show that she endured the intolerable atmosphere necessary to convert a voluntary retirement into a constructive discharge; (5) could not establish a <u>prima facie</u> case of retaliation because she did not suffer any adverse actions or show any causality; and (6) could not show any of Defendant's legitimate, non-discriminatory reasons for its actions were pretext. (Init. Mem. at 17-46). Instead of directly addressing Defendant's arguments with specific citations and applicable legal authority, Plaintiff abandons all her claims except for her constructive discharge claim, cites the wrong legal standard for such a claim, and then relies solely on conclusory allegations, speculation, and conjecture to support her arguments regarding whether she can satisfy this wrong legal standard. (Pl. Resp. at 9-12). Her Response does nothing to rebut Defendant's arguments or change Defendant's entitlement to complete summary judgment.

I.     **Plaintiff Fails to Oppose Defendant's Well-Supported Arguments for Summary Judgment with Specific Arguments and Evidence as Required by Rule 56.**

As an initial matter, Plaintiff's Response is factually and legally deficient because she has failed to oppose Defendant's arguments for summary judgment with specific citations to admissible evidence and corresponding legal arguments. See <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995); <u>Johnson v. Federal Express Corp.</u>, 147 F. Supp. 2d 1268, 1271 (M.D. Ala. 2001); Fed. R. Civ. P. 56. When opposing a motion for summary judgment, a plaintiff may not rest upon mere allegations or conclusory statements. See <u>Resolution Trust Corp.</u>, 43 F.3d at 599. Instead, a plaintiff must provide specific factual citations to admissible record evidence and present

specific arguments in support of her claims.  See Blue Cross & Blue Shield of Ala. v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990).  The burden is on the plaintiff to show how her legal theories are supported by evidence, and a court has no duty to sift through a record to "distill any possible argument which could be made based on the materials before the court."  Id.  See Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996); Johnson, 147 F. Supp. 2d at 1271.  Indeed, a party who does not respond to a dispositive argument on a claim is deemed to have abandoned it. See Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 972 n.36 (11th Cir. 2008); Resolution Trust Corp., 43 F.3d at 599; Signore v. City of Montgomery, 354 F. Supp. 2d 1290, 1309 n.3 (M.D. Ala. 1999); Blalock v. Dale Cty. Bd. of Educ., 84 F. Supp. 2d 1291, 1309 (M.D. Ala. 1999).

Plaintiff's Response does not include specific factual citations and fails to address Defendant's specific legal arguments.  The vast majority of the statements in Plaintiff's Response lack any citation to evidence or legal authority and are nothing more than the speculation of counsel. These conclusory assertions are not evidence, and they should not be considered by the Court.[1]  See Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("This Court has consistently held that conclusory allegations without specific supporting facts have no probative value."); Skyline Corp. v. NLRB, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence").  Plaintiff's Response also contains conclusory references to inadmissible hearsay within

---

[1]Plaintiff's conclusory assertions are directly contrary to this Court's Scheduling Order, which specifically states that "[i]n all briefs filed by any party relating to the motion [for summary judgment], the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document. Failure to make such specific reference will result in the evidence not being considered by the Court."  (Uniform Scheduling Order, at § 2).  The conclusory and unsupported assertions are also contrary to the Court's Briefing Order, which contains similar instruction regarding a party's duty to provide specific citations to record evidence.  (March 11, 2008, Order, second page).

the pages of documents she filed with the Court.[2]  The Court should also disregard these various

inadmissible references. See Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir.1999).

## II.    Plaintiff Abandons All Claims Except for Her Constructive Discharge Claim.

Defendant established in his Initial Memorandum that he was entitled to summary judgment

because Plaintiff had not exhausted her claims in her Complaint regarding the removal of her

computer and password deactivation, the "has been detailed" memorandum and designation of an

acting chief, the delivery and signing of her "achieved" PWP, the denial of her request to attend a

BIG Conference, or any alleged breach of the December 5, 2001, Settlement Agreement.  (Init. Mem.

at 17-22; Comp. ¶¶ 11, 13-14, 18-22).  Under settled law, federal employees who wish to pursue

discrimination, retaliation, or breach of settlement agreement claims in court must first fully and

timely exhaust their mandatory administrative remedies.  See Osahar v. Postmaster General, 2008

U.S. App. LEXIS 1073, at *30 (11th Cir. Jan. 15, 2008); Crawford v. Babbitt, 186 F.3d 1322, 1326

(11th Cir. 1999); Thompson v. West, 883 F. Supp. 1502, 1507-1508 (M.D. Ala. 1995).  If a federal

employee fails to timely and fully administratively exhaust her claims prior to filing a lawsuit, then

her claims must be dismissed.  See Thompson, 883 F. Supp. at 1507-1508.

In Response, Plaintiff asserts that she is no longer pursuing independent claims for any of the

acts alleged in paragraphs 11, 13-14, and 18-22 of her Complaint but is alleging them as part of her

---

[2]Plaintiff, for example, repeatedly cites to pages of documents within the more than 100 pages of documents she filed with the Court for the truth of alleged assertions therein.  This reliance on documents is textbook hearsay, as a document cannot be used to prove the truth of its contents. See Means v. Cullen, 297 F. Supp. 2d 1148, 1152 (W.D. Wis. 2003) ("the truth of the matter asserted in the [document]l is hearsay and cannot be considered....").  See also  Colony Ins. Co. v. Griffin, 2007 U.S. Dist. LEXIS 86783, at *13-14 (M.D. Ala. Nov. 6, 2007) (Fuller, J.) (holding party could not use statements in documents as evidence at summary judgment stage because they were hearsay).

constructive discharge claim.[3]  (Pl. Resp. at 9).  Plaintiff, therefore, abandons all independent claims relating to the removal of her computer and password deactivation, the "has been detailed" memorandum and designation of an acting chief, the delivery and signing of her "achieved" PWP, the denial of her request to attend a BIG Conference, and the December 5, 2001, Settlement Agreement.  (Comp. ¶¶ 11, 13-14, 18-22).  This Court should grant summary judgment on these abandoned claims.  See Davis, 516 F.3d at 972 n. 36 ("[Plaintiff] did not defend the claim on summary judgment; [s]he thus abandoned it"); Blalock, 84 F. Supp. 2d at 1309 ("Plaintiff has not addressed this claim in opposing summary judgment.  In resting on [her] pleadings, the court finds that plaintiff ... has abandoned this claim.").  Accordingly, Plaintiff's sole remaining claim in this lawsuit is her constructive discharge claim.  (Pl. Resp. at 9; Comp. ¶ 25).

Furthermore, Plaintiff cannot resurrect these unexhausted, time-barred, and abandoned claims by simply declaring that the various discrete acts covered by them are part of her constructive discharge claim.  See AMTRAK v. Morgan, 536 U.S. 101, 112 (2002).  In Morgan, the Supreme Court created a distinction for statute-of-limitations purposes between discrete acts which are temporally distinct and hostile work environments which do not occur on any particular day but develop over time.  See Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S.Ct. 2162, 2175

---

[3]Notably, when Plaintiff filed this lawsuit in May 2005, her constructive discharge claims were still being investigated at the administrative level.  This fact is shown by the two declarations Plaintiff filed with her Response from her and Danny Crawford that are part of the EEO investigation into Plaintiff's forced retirement claim, dated August 11, 2005, and October 18, 2005, respectively, after she filed this lawsuit.  (Pl. Exhibits 2 and 4).  Accordingly, Plaintiff's conclusory assertion that she received a right-to-sue letter on her constructive discharge on February 5, 2005, before the administrative investigation of her constructive discharge claim, is contrary to the evidence.  The administrative processing of the constructive discharge claim did eventually end while this lawsuit was pending, and Plaintiff, now realizing that she failed to exhaust her claims on the other acts, is apparently engaging in revisionist history to explain her May 2005 filing.  (Init. Mem. at 19-21).

(2007); Morgan, 536 U.S. at 113-114; Davis, 516 F.3d at 971-972.  The Court held that when a plaintiff sought to challenge a discrete act such as a termination or denial of a transfer, then she had to file a timely charge for each such act.  See Ledbetter, 127 S.Ct. at 2175.  The acts Plaintiff lists in paragraphs 11, 13-14, 18-22 of her Complaint, such as the removal of a computer and the failure to be selected to attend a conference, are all temporally-distinct, discrete acts that occurred on particular days.[4]  The law is clear that "discrete ... acts are not actionable if time barred even when they are related to acts alleged in timely filed charges."[5]  See Morgan, 536 U.S. at 112.

### III.    Plaintiff's Constructive Discharge Claim Fails as a Matter of Law.

This Court should grant summary judgment on Plaintiff's constructive discharge claim because it fails as a matter of law for the two independent reasons set forth in Defendant's Initial Memorandum.  First, Plaintiff cannot satisfy the demanding standard necessary to convert a voluntary retirement into a constructive discharge.  (Init. Mem. at 24-34).  Second, Plaintiff cannot show that any action that she seeks to challenge in this lawsuit as leading up to her decision to retire were due to her race, gender, or retaliation. (Init. Mem. at 24-34, 44-46).  Plaintiff's Response does not specifically address Defendant's specific and well-supported arguments for summary judgment on this claim.  In addition to not citing any legal authority relating to a constructive discharge claim,

---

[4] Indeed, Plaintiff filed independent EEO charges and independent EEO investigations were conducted regarding each of these discrete acts.  (Pl. Dep., Exs. 32, 34, 45).

[5] To the extent Plaintiff seeks to rely on these unexhausted and abandoned claims as background evidence for her constructive discharge claim, Defendant offered unrebutted argument and evidence that none of them constituted adverse actions or were taken due to Plaintiff's race, gender, or retaliation.  (Init. Mem. at 24-28, 35-46).  Thus, even if these discrete acts in December 2001 and April 2002 were considered as background leading up to Plaintiff's decision to retire in February 2003, they did not create an objectively intolerable environment.  Defendant discusses this issue in more detail in his discussion of Plaintiff's constructive discharge claim, infra.

Plaintiff's Response contains mostly conclusory allegations or speculation of counsel that are not evidence and should be disregarded by the Court. See Skyline Corp., 613 F.2d at 1337. See also Lewis v. K2 Indus. Servs., Inc., 2007 U.S. Dist. LEXIS 84194, at *9 (M.D. Ala. Nov. 14, 2007) (Watkins, J.) (refusing to sift through record looking for evidence when plaintiff had not complied with scheduling order's instructions regarding pin-point citations to record evidence).

### A.    Plaintiff Cannot Establish A Constructive Discharge.

Defendant established in his Initial Memorandum that Plaintiff could not show that her voluntary retirement was a constructive discharge. (Init. Memo. at 28-34). Pursuant to the constructive-discharge doctrine, "if [an] employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer is liable ... as if it had formally discharged ... the employee." See Doe v. Dekalb County School Dist., 145 F.3d 1441, 1450 (11th Cir. 1998); Poole v. Country Club, 129 F.3d 551, 553 (11th Cir. 1997). To establish a constructive discharge, a plaintiff must show that her employer made conditions "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." See Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003); Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991). The subjective feelings of the plaintiff about the work conditions are irrelevant. See Doe, 145 F.3d at 1450; Blistein v. St. John's College, 74 F.3d 1459, 1468 (4th Cir. 1996). In her Response, Plaintiff cites to the wrong legal standard and presents no argument that she endured intolerable work conditions.

### 1.    Plaintiff Ignores The Legal Standard For a Constructive Discharge.

As an initial matter, Plaintiff cannot avoid summary judgment on her constructive discharge claim by citing and arguing about the legal standard for a hostile work environment. (Pl. Resp. at

10-11).  As Defendant explained in his Initial Memorandum, to establish a constructive discharge a plaintiff must show "a <u>greater</u> severity or pervasiveness of harassment" than even that necessary "to prove a hostile working environment."[6]  <u>See</u> <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1231 (11th Cir. 2001) (emphasis added); <u>Dale v. Wynne</u>, 497 F. Supp. 2d 1337, 1344 (M.D. Ala. 2007).  <u>See also</u> <u>Bannon v. Univ. of Chic.</u>, 503 F.3d 623, 629-630 (7th Cir. 2007) ("To succeed in a constructive discharge claim, [plaintiff] has to show <u>more</u> than a hostile work environment...") (emphasis added).  Indeed, the Supreme Court has even described a constructive discharge as presenting "a 'worse case' harassment scenario, harassment ratcheted up to the breaking point."  <u>See</u> <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129, 147-148 (2004).  Accordingly, a plaintiff seeking to establish that she was constructively discharged must show that she endured an objectively intolerable work environment, meaning that the work environment was so intolerable due to discrimination or retaliation that a reasonable person would have been compelled to resign.  <u>See id.</u>; <u>Hipp</u>, 252 F.3d at 1231.  <u>See also</u> <u>Blistein</u>, 74 F.3d at 1468 (noting "intolerablity of conditions" requires showing that a reasonable person" would have had <u>no choice</u> but to resign," not merely that a reasonable person would have viewed resignation as the wisest or best decision).

Plaintiff makes <u>no</u> reference to the proper standard anywhere in her Response, and thus presents no argument or evidence that a reasonable person in her position would have been compelled to resign.  <u>See</u> <u>Johnson</u>, 147 F. Supp. 2d at 1271 ("counsel must choose his specific facts

_____

[6]Although Plaintiff did not plead a hostile environment claim in her Complaint, Defendant pointed out in his Initial Memorandum that Plaintiff could not even satisfy the lessor hostile work environment standard, much less the constructive discharge standard.  (Init. Mem., at 29, n. 36).  In short, Plaintiff has not shown that any of the conduct that she alleges occurred was severe or pervasive enough to alter the terms and conditions of her employment and create an objectively hostile work environment.  <u>See</u> <u>Farragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) ("conduct must be <u>extreme</u> to amount to a change in the terms and conditions of employment.").

and explain why the law supports his claims on the facts."). Defendant's extensive factual and legal argument that Plaintiff failed to show that her work environment was objectively intolerable thus stands unrebutted. (Init. Mem. at 28-34). For this reason alone, this Court should grant summary judgment on Plaintiff's constructive discharge claim. See Weitz, 913 F.2d at 1550 ("[p]resenting ... arguments in opposition to ... summary judgment is the responsibility of the non-moving party, not the court."); Blalock, 84 F. Supp. 2d at 1309 ("plaintiff has not addressed this claim in opposing summary judgment. In resting on [his] pleadings, the court finds that plaintiff has not met [his] burden of demonstrating material issues of material fact ...."); Johnson, 147 F. Supp. 2d at 1271. See also Lewis, 2007 U.S. Dist. LEXIS 84194, at *9 (granting summary judgment on harassment claim when plaintiff provided merely conclusory allegations and did not provide record citations).

2.    **Conduct Released by December 5, 2001, Settlement Agreement Cannot Be Used to Support Plaintiff's Constructive Discharge Claim.**

Plaintiff also cannot avoid summary judgment by relying on events that might have occurred prior to the December 5, 2001, Settlement Agreement, to support her claim that she was constructively discharged in February 2003.[7] (Pl. Resp. at 11). The Settlement Agreement is a binding release of all Title VII harassment and other claims relating to events prior to its entry.[8] (Pl. Dep. 123:4-124:7, 132:11-16, Ex. 13). As Defendant explained on pages 30 and 31 of his Initial

---

[7]Plaintiff's references to Crawford allegedly avoiding communications with her and stating "I can just look at you and tell you don't know your programs" relate to alleged events in May and September 2001, respectively. (Pl. Resp. at 11, citing Plaintiff Exhibit 1 at pages 117 and 133). She also references her November 6, 2001, expunged "not achieved" PWP; alleged monitoring of her performance; and statements from co-workers complaining about her that all pre-date the Settlement Agreement. (Pl. Resp. at 11, 13). Notably, Plaintiff's references to documents within her stack of Exhibits for the truth of their contents are inadmissible hearsay. See Macuba, 193 F.3d at 1322.

[8]Plaintiff concedes that she is not challenging this Agreement. (Pl. Resp. at 10).

Memorandum, the Settlement extinguishes any claims based on conduct covered by its scope and Plaintiff cannot use acts released under it to support her later constructive discharge claim.  <u>See</u> <u>Perryman v. West</u>, 949 F. Supp. 815, 822 (M.D. Ala. 1996).  <u>See also</u> <u>Hammer v. Paulson</u>, 2007 U.S. Dist. LEXIS 70785, at *6-7, 18 (N.D. Ga. Sept. 25, 2007) (refusing to consider pre-settlement acts when analyzing harassment claim); <u>Johnson v. Ashcroft</u>, 2005 U.S. Dist. LEXIS 18034, at *1617 (D.D.C. Aug. 25, 2005) (refusing to consider pre-settlement acts when analyzing constructive discharge claim); <u>Folley v. Henderson</u>, 175 F. Supp. 2d 1007, 1011-1012 (S.D. Ohio 2001) (refusing to consider pre-settlement harassment when analyzing harassment claim).  A settlement would have no meaning if a plaintiff could bypass it by simply using the same facts to support a different theory of recovery.  <u>See</u> <u>Conservative Club of Washington v. Finkelstein</u>, 738 F. Supp. 6, 13 (D.D.C.1990) ("[Plaintiff] seeks both the benefit of ... settlement and the ... right to maintain an action that arose out of the same nucleus of operative facts.  If such an action were to be permitted, the certainty and finality that accompanies a settlement agreement would always be subject to question.").

Plaintiff did not address Defendant's arguments or legal authority on this issue in her Response, and thus Defendant's arguments stand unrebutted.  <u>See</u> <u>Weitz</u>, 913 F.2d at 1550; <u>Johnson</u>, 147 F. Supp. 2d at 1271.  Accordingly, this Court should not consider any actions occurring  prior to the December 5, 2001, Settlement Agreement, when analyzing Plaintiff's constructive discharge claim.  <u>See</u> <u>Perryman</u>, 949 F. Supp. at 811 (holding "[a]ny claims which [plaintiff] may have asserted on discrimination she alleged in her EEO complaints were disposed of when she settled those complaints" and that same acts could not be used as part of later harassment claim).

Nevertheless, as Defendant also explained in his Initial Memorandum, even if Plaintiff's pre-settlement allegations were considered they would not establish an objectively intolerable work

environment. (Init. Mem. at 31-32). Plaintiff's Response, for example, references her November 6, 2001, "not achieved" PWP and alleges, without support, that it somehow affected her later ability to receive raises, bonuses, and do her job. (Pl. Resp. at 11). This evaluation, as Plaintiff concedes, was expunged under the Settlement Agreement and replaced with an "achieved" evaluation. (Pl. Dep. 130:1-131:19; Williams Dec. ¶ 2; Pl. Resp. at 11). The Eleventh Circuit has held that a withdrawn negative document is a nullity, has no affect on work conditions, and cannot be a factor in any constructive discharge claim. See Fitz, 348 F.3d at 977 ("A withdrawn reprimand ... is not a 'working condition' at all" and thus cannot be an "intolerable working condition.").

Furthermore, even if the "not achieved" PWP had not been rendered a nullity when it was withdrawn and replaced under the Settlement, the Eleventh Circuit has held that criticism from a supervisor and negative performance reviews, even if they are humiliating and harm an employee's reputation, are ordinary tribulations of the workplace that do not create an intolerable work environment.[9] See Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001) ("Repeatedly receiving poor evaluations would be unpleasant for anyone, but it does not rise to the level of such intolerable conditions that no reasonable person would remain on the job") (emphasis

---

[9]Plaintiff also argues that in mid-2001, Crawford monitored her performance and his staff kept a supervisor file on her but no other Chiefs. (Pl. Resp. at 13). This assertion is supported only by Plaintiff's counsel's interpretation of Defendant's counsel's responses to Plaintiff's overbroad, vague, and difficult to understand discovery requests. (Pl. Resp. at 13). Defendant, in discovery responses, agreed to produce "supervisor" files on all Chiefs supervised by Crawford from May 2001 through February 2003, and produced such files. (Pl. Exhibit 12, Defendant's Response to Plaintiff's Request for Production, page 11, lines 8-11). Nevertheless, even if this unsupported assertion that Plaintiff was subject to monitoring was accurate and not barred by the Settlement Agreement, increased scrutiny does not support a constructive discharge claim. See Hanenburg v. Principal Mutual Life Ins. Co., 118 F.3d 570, 574 (8th Cir. 1997); Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir. 1993). See also McCoy v. Macon Water Auth., 966 F. Supp. 1209, 1221 (M.D. Ga. 1997) ("It is not harassment for supervisors to monitor the performance of their employees...").

added); <u>Hipp</u>, 252 F.3d at 1233 (being publically berated by supervisors about poor work and resulting humiliation does not create an intolerable work environment). In short, Plaintiff points to nothing that occurred prior to her Settlement Agreement that would have created an objectively intolerable work environment in February 2003 when she retired. <u>See Pipkins</u>, 267 F.3d at 1201.

### 3. Plaintiff Cannot Rely Upon Speculation About a Possible Future Negative Evaluation To Show Her Work Environment Was Objectively Intolerable.

Plaintiff also cannot show that she was constructively discharged by speculating that she might have received a "not achieved" rating on a future PWP if she had stayed on the job instead of retiring. (Pl. Resp. at 11). Plaintiff bases this "future negative PWP" speculation in her Response on a theory that Crawford's actions pled in her Complaint had damaged her credibility and thus made it so she could not perform her job when she returned from the one-year detail she agreed to in the Settlement Agreement. (Pl. Resp. at 6, 9, 11-12). Plaintiff's asserts that she could not do her job because she only received one telephone call with a question about farm programs during the 14 days she was in the office between January 6, 2003, and February 24, 2003. (Pl. Resp. at 11; Pl. Dep. 170:3-171:13, Ex. 27). Plaintiff's argument, which is based entirely on layers of speculation, falls well short of establishing an objectively intolerable work environment.

As an initial matter, Plaintiff's speculative argument completely ignores the fact that her job did <u>not</u> consist solely of her sitting in her office waiting to answer telephone calls. It is undisputed that answering calls from the field about farm programs was only <u>one</u> of part of Plaintiff's Chief job, and she had important duties regardless of the number of times her telephone rang. (Pl. Dep. 27:3-28:17, 19:3-18, 30:7-33:24). Indeed, Plaintiff <u>admitted</u> during her deposition that: (1) one of her job duties was keeping herself aware of changes to farm programs by reading handbooks, (Pl. Dep.

30:14-18); (2) Congress passed a new farm bill while she was on detail that significantly changed a number of farm programs in her Section, (Pl. Dep. 138:9-20;166:7-9, 159:23-160:14, 175:24-176:18); (3) learning the farm program changes in the new farm bill was important and she had to learn them to be able to answer questions from the field, (Pl. Dep. 263:1-6); (4) after her return from her detail she was able to devote almost 100% of her time to learning the program changes in the new farm bill by reading handbooks in her office and talking to staff, (Pl. Dep. 167:1-17); (5) no one interfered with her ability to learn the changes in the new farm bill (Pl. Dep. 177:5-25); and (6) she estimated it would take at least several weeks to learn all the new changes.[10] (Pl. Dep.176:22-177:7).

Plaintiff also offers no evidence in support of her speculation that the various acts alleged in her Complaint somehow damaged her credibility and thus reduced the number of telephone calls she received after she returned from her detail. (Pl. Resp. at 9). As Defendant explained in his Initial Memorandum, Plaintiff was not harmed by the wording of the "has been detailed" memorandum, the choice of her replacement during her detail, the removal of her computer, the delivery of her "achieved" PWP, or the denial of her request to attend the optional BIG conference.[11] (Init. Mem. at 26-28, 41-43). None of these various discrete acts that took place between December

---

[10]Plaintiff implies in her Response, without citation, that Crawford did something wrong by asking her to speak, after she returned from her detail, on an issue in the new farm bill while she was still learning the new farm bill. (Pl. Resp. at 7, 13). Plaintiff admitted at her deposition, however, that she did not find this request to speak at a meeting to be objectionable. (Pl. Dep. 166:10-13). She further testified that she responded to Crawford by email that she would be glad to attend the meeting but was still learning the new farm bill, found that the DCP program in the new farm bill was "a lot to decipher," and was talking to her staff to learn it. (Pl. Dep. 166:7-167:1, Ex. 26). She also wrote Crawford that she would place one of her staff on standby "just in case," and Crawford replied "that would be fine, thanks." (Pl. Dep. 167:18-168:8, Ex. 26).

[11]Plaintiff failed to address Defendant's well-supported legal and factual arguments in her Response, and they thus stand unrebutted. See Weitz, 913 F.2d at 1550.

2001 and April 2002 constitute anything more than minor inconveniences that were not adverse acts and could not have led to any intolerable environment.  See Pittman v. Marshall, 2007 U.S. Dist. LEXIS 77591, at *26-29 (M.D. Ala. Oct. 18, 2007) (Watkins, J.) ("Most of the instances are so trivial they simply cannot be considered as a contribution to any purported creation of an intolerable workplace.").  Moreover, while Plaintiff now speculates that the number of telephone calls she received after her detail was reduced due to these acts, (Pl. Resp. at 11), she admitted during her deposition she had no idea why more people did not call her after she returned from her detail. (Pl. Dep. 284:1-285:3).  Plaintiff's subjective speculation does nothing to show the existence of an objectively intolerable environment.  See Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985) ("the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge."); Weaver v. Tech Data Corp., 66 F. Supp. 2d 1258, 1273-74 (M.D. Fla. 1999) (rejecting constructive discharge claim based on "opinion, conjecture, and unsupported conclusions").  See also Boim v. Holy Land Found., 511 F.3d 707, 757 (7th Cir. 2007) ("Belief, assumption, and speculation are no substitutes for evidence in a court of law.")

In short, Plaintiff undisputedly had important job duties that she was able to perform when she returned from the one-year detail she agreed to in the Settlement Agreement.  (Pl. Dep. 167:1-17, 177:5-25).  Furthermore, Plaintiff did not receive any criticism or hear any negative comments about her performance after she returned from her detail and spent her time learning the new farm bill.[12]

---

[12]Plaintiff misrepresents Crawford's testimony regarding her performance in her Response when she suggests that two statements he gave in two different EEO declarations were inconsistent. (Pl. Resp. at 13-14).  Plaintiff claims that Crawford stated in an October 18, 2005, declaration that he had no problems with Plaintiff's performance after she returned from her detail but had earlier stated in a December 7, 2004, declaration that he had problems with Plaintiff's inability to handle her programs or give out correct information.(Pl. Resp. at 13-14).  In suggesting these two declarations are inconsistent, Plaintiff completely ignores statements in the December 7, 2004,

(Pl. Dep. 154:21-23, 174:3-9, 282:5-11; Crawford Dec. ¶ 22). Plaintiff did not endure an objectively intolerable work environment merely because she may not have liked having to spend her time learning the extensive changes to farm programs in the new farm bill.[13] See Petrosino v. Bell Atlantic, 385 F.3d 210, 231 (2d Cir. 2004) ("the law is clear that constructive discharge cannot be proved by demonstrating ... an employee is dissatisfied with the work assignments she receives within her job title"); Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994) ("[d]issatisfaction with job assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."). See also Wardwell v. School Bd. of Palm County, Fla., 786 F.2d 1554, 1557-1558 (11th Cir. 1986) (failure to receive promotion, resulting embarrassment, and increased workload, did not constitute a constructive discharge). Indeed, the law is clear that a reasonable employee in the context of a constructive discharge is one

---

declaration where Crawford explains that the problems he had with Plaintiff occurred prior to her detail and that "when she returned [from her detail] it was much better and we never had any problems." (Crawford December 7, 2004, Dec., 2nd and 4th pages). There is no inconsistency.

[13]Notably, Plaintiff inaccurately states in her Response that Crawford did not have "one conference" with her upon her return, welcome her back, or update her on developments. (Pl. Resp. at 7). Plaintiff, however, undisputedly met with Crawford on her first day in the office; attended a SED staff meeting on January 23, 2003, at which he welcomed her back; and attended another SED staff meeting on February 18, 2003. (Pl. Dep. 150:20-151:25, 158:2-165:12, Exs. 24-25; Crawford Dec. ¶¶ 21-25; Bennett Dec. ¶ 3, Ex. B). Crawford also undisputedly sent Plaintiff a memorandum indicating that "We look forward to seeing you on Monday, January 6, 2003," as her detail was about to end. (Pl. Dep. 150:14-19, Ex. 22). In any event, even if Crawford had entirely ignored Plaintiff after she returned from her detail and spent her time learning the new farm bill, it would not have created an objectively intolerable environment. See Clegg v. Arkansas Dep't of Corrections, 496 F.3d 922, 927-929 (8th Cir. 2007) (no adverse action when plaintiff was not welcomed back to work upon return from leave as she would have liked by supervisor); Veitch v. England, 471 F.3d 124, 130-131 (D.C. Cir. 2006) (no constructive discharge when supervisor did not speak to plaintiff during meetings, did not assign him collateral duties, spoke to him in a "curt" manner, and criticized work); Williams v. City of Kansas City, 223 F.3d 749, 753-754 (8th Cir. 2000) (no constructive discharge when supervisor gave plaintiff "silent treatment"); EEOC v. Union Camp Corp., 7 F. Supp. 2d 1362, 1380 (S.D. Ga. 1997) (no constructive discharge when plaintiff ostracized and criticized).

- 15 -

who "does not assume the worst" or "jump to conclusions." See Garner v. Wal-Mart Stores, Inc.,

807 F.2d 1536, 1539 (11th Cir.1987). Plaintiff is doing nothing but impermissibly assuming the

worst when she speculates in her Response about possible future job criticism.[14] See id.

**4.      Plaintiff Has Not Shown An Objectively Intolerable Work Environment**.

In sum, as Defendant explained extensively in his Initial Memorandum, Plaintiff falls well

short of showing that she endured such an intolerable work environment that a reasonable person

would have been compelled to retire when she did on February 24, 2003.[15]  (Init. Mem. at 28-34).

In Response, Plaintiff entirely <u>ignores</u> the demanding showing a plaintiff must make under binding

law to establish a constructive discharge.  She makes no attempt to explain how a reasonable person

would have had "no choice" but to retire on that day.  See Pipkins, 267 F.3d at 1201; Blistein, 74

F.3d at 1468.  See also Bristow, 770 F.2d at 1255 ("The employment discrimination laws require as

an absolute precondition to suit that some adverse employment action have occurred.  They cannot

be transformed into a palliative for every workplace grievance, real or imagined, by the simple

expedient of quitting.").  Accordingly, Defendant's extensive arguments as to why Plaintiff's claim

fails as a matter of law remain unrebutted and compel the entry of summary judgment.  See Weitz,

913 F.2d at 1550 ("[p]resenting ... arguments in opposition to ... summary judgment is the

responsibility of the non-moving party, not the court."); Lewis, 2007 U.S. Dist. LEXIS 84194, at *9.

---

[14]Moreover, as discussed <u>supra</u>, even assuming that this speculation proved accurate and
Plaintiff received a future negative evaluation, the Eleventh Circuit has held that receipt of repeated
negative evaluations does <u>not</u> compel a reasonable person to resign.  See Pipkins, 267 F.3d at 1201.

[15]Indeed, as Defendant explained, Plaintiff cannot point to anything that Crawford did after
she returned from her agreed-upon, one-year detail under the Settlement Agreement that made the
environment so intolerable that a reasonable person would have been forced to make a "spur of the
moment" decision to retire on February 24, 2003.  (Pl. Dep. 275:18-278:15; Init. Mem. at 28-34).

Indeed, the Eleventh Circuit has stated that "the threshold for establishing a constructive discharge ... is quite high." <u>See</u> <u>Hipp</u>, 252 F.3d at 1231;<u>Pittman</u>, 2007 U.S. Dist. LEXIS 77591, at *26-29; <u>Williams v. Glover</u>, 2006 U.S. Dist. LEXIS 15536, at *24 (M.D. Ala. March 31, 2006) (Watkins, J.). The facts presented in this case do not even come close to presenting the "worse" case harassment that have been found to constitute constructive discharges. <u>See, e.g.</u>, <u>Poole</u>, 129 F.3d at 552 (employer made derogatory comments about her age, stripped her of "all existing responsibilities" so that she had absolutely nothing to do, moved her to a different area, had her sit in a chair with no desk, placed her belongings in boxes piled around her, and told employees not to speak with her); <u>Cortes v. Maxus Exploration Co.</u>, 977 F.2d 195, 197-200 (5th Cir. 1992) (plaintiff's supervisor subjected her on daily basis to lewd remarks about her body, vulgar jokes, pornographic pictures, brushed up against her legs and breasts, and required her to ask permission to use the restroom and stood outside when she did so). Accordingly, this Court should grant summary judgment on Plaintiff's constructive discharge claim. <u>See</u> <u>Fitz</u>, 348 F.3d at 977; <u>Pipkins</u>, 267 F.3d at 1201; <u>Williams</u>, 2006 U.S. Dist. LEXIS 15536, at *24.

**B.      No Evidence Any Act Due to Race, Gender, or Retaliation**.

Plaintiff's constructive discharge claim also fails as a matter of law because she cannot show that any action was due to her race, gender, or retaliation. To establish a constructive discharge, a plaintiff must show that all the acts that allegedly made her work environment "intolerable" were due to discrimination or retaliation. <u>See</u> <u>Henson v. Dundee</u>, 682 F.2d 897, 907 (11th Cir. 1982); <u>Carr v. Cohen</u>, 44 F. Supp. 2d 1240, 1246 (M.D. Ala. 1999); <u>Cook v. American Gen. Life and Accident Ins. Co.</u>, 952 F. Supp. 1505, 1512-153 (M.D. Ala. 1996). <u>See also</u> <u>Schwertfager v. City of Boynton Beach</u>, 42 F. Supp. 2d 1347, 1367 (S.D. Fla. 1999) (noting a plaintiff "must prove that

- 17 -

the alleged intolerability of working conditions resulted from acts of discrimination."). Defendant

established in his Initial Memorandum that Plaintiff could not show that any act challenged in this

lawsuit was due to her race, gender, or retaliation, or that any of Defendant's legitimate, non-

discriminatory reasons for the acts were pretext. (Init. Mem. at 35-40, 44-46).

In Response, Plaintiff simply asserts, in a conclusory fashion, that she is a black female and

that various actions were taken "because of Mrs. Thomas being in a protected class."[16] (Pl. Resp.

at 11). The law is clear, however, that "conclusory allegations of discrimination ... are insufficient

to raise an inference ... of intentional discrimination..." See Mayfield v. Patterson Pump Co., 101

F.3d 1371, 1376 (11th cir. 1996). See also Serben v. Inter-City Mfg. Co., 36 F.3d 765, 766 (8th Cir.

1994) ("mere membership in the protected class does not permit an inference of [race or gender]

discrimination."). Plaintiff's Response fails to identify any similarly-situated employees who were

treated better than her or provide any evidence that any of the legitimate, non-discriminatory reasons

for Defendant's actions that purportedly led to her decision to retire were false.[17] See Carr, 44 F.

---

[16]While irrelevant, Plaintiff asserts, without any citation, that she was the only black female Chief of any division n the FSA State Office. (Pl. Resp. at 11). In fact, Plaintiff herself admitted that Verdell Zeigler, Chief of the Administrative Division in the State Office, is also a black female Chief in the FSA State Office who reports to Crawford. (Pl. Dep. 104:20-25; Zeigler Dec. ¶¶ 1, 4).

[17]Plaintiff does attempt to question Crawford's credibility by claiming that he used different criteria in 2003 after she retired to select who would attend the BIG Conference than he used in 2002 when he denied her request to attend the conference. (Pl. Resp. 6, 12). While she cites to her own conclusory assertion in a declaration to support this theory, (Pl. Resp. 6, 12; Pl. Exhibit 1, page 38), she retired in 2003 and was not employed when employees were selected for the 2003 BIG Conference. (Pl. Dep. 173:1-3). Plaintiff's conclusory statement, therefore, is not based on personal knowledge and is not evidence for purposes of a summary judgment motion. See Pace v. Capobianco, 283 F.3d 1275, 1278-1279 (11th Cir. 2002); Citizens Concerned About Our Children v. School Bd. of Broward Cty., 193 F.3d 1285, 1295 n.11 (11th Cir. 1999). At the same time, Defendant offered undisputed evidence to the contrary that is based on personal knowledge. Zeigler, who reviewed requests to attend the BIG Conference and determined who had the most seniority and who had attended in the past, testified that the same criteria has been used every year since 2002.

Supp. 2d at 1246-1249.  This failure is an alternative and independent reason why her constructive

discharge claim fails as a matter of law.  See Bennington v. Caterpillar Inc., 275 F.3d 654, 660 (7th

Cir. 2001) (affirming entry of summary judgment where record had no evidence "working conditions

were intolerable because of ... discrimination.").

Plaintiff makes similar conclusory allegations regarding her retaliation claim when she

simply asserts, without citation, that Crawford was aware of her first EEO complaint in September

2001 because he signed the subsequent Settlement Agreement.[18]  (Pl. Resp. at 12-13).  Contrary to

Plaintiff's implication that mere knowledge by Crawford of her first EEO complaint is sufficient to

establish that every subsequent act in perpetuity was retaliatory, a supervisor's knowledge of a

plaintiff's protected activity, by itself, is insufficient to show causation.  See, e.g., Farley v.

Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) ("We have plainly held that a

plaintiff satisfies [causation] if he provides sufficient evidence that the decision-maker became aware

of the protected conduct, and that there was a close  temporal proximity between this awareness and

the adverse employment action."(emphasis added)). See also Price v. Thompson, 380 F.3d 209, 212

(4th Cir. 2004) ("knowledge alone, however, does not establish a causal connection").  In this case,

Plaintiff has no evidence that any act that she allegedly factored into her decision to retire in

February 2003 had anything to do with her September 2001 EEO complaint or any subsequent

complaint.  Indeed, the passage of more than three-months between a complaint and any subsequent

adverse act negates any inference of causation.  See Clark County School District v. Breeden, 532

(Zeigler Dec. ¶ 12).  In any event, an employer is free to change selection criteria, and Plaintiff's
assertion is not evidence that Crawford provided any false explanations for the various actions in this
lawsuit.  See Combs v. Meadowcraft, Inc., 106 F.3d 1519, 1543 (11th Cir. 1997).

[18]Plaintiff offers no speculation as to when Crawford learned of her later EEO complaints.

U.S. 268, 273 (2001).  Furthermore, as discussed <u>supra</u>, Plaintiff did not rebut any of Defendant's legitimate, non-discriminatory reasons for the acts that she claims led to her constructive discharge. Plaintiff's failure to show any retaliatory motive is also fatal to her constructive discharge claim. <u>See</u> <u>Nigro v. St. Tammany Parish Hosp.</u>, 377 F. Supp. 2d 595, 602-603 (E.D. La. 2005).

## CONCLUSION

For the reasons in Defendant's Initial Memorandum, as well as those addressed above, Defendant respectfully requests that the Court grant this Motion for Summary Judgment in its entirety and enter an appropriate Order dismissing this action with prejudice.

Respectfully submitted this 25th day of April, 2008.

LEURA G. CANARY
United States Attorney

By:    s/James J. DuBois
JAMES J. DUBOIS
Assistant United States Attorney
Georgia Bar No. 231445
United States Attorney's Office
Post Office Box 197
Montgomery, AL 36101-0197
Telephone: (334) 223-7280
Facsimile: (334) 223-7418
E-mail:  james.dubois2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 25,2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Plaintiff's attorney, Collins Pettaway, Jr., Esquire.

s/James J. DuBois
Assistant United States Attorney