IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| OZETTA THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:05-CV-411-WKW |
| | ) |
| ED SCHAFER, SECRETARY, | ) |
| UNITED STATES DEPARTMENT OF | ) |
| AGRICULTURE, FARM SERVICE | ) |
| AGENCY, (FSA), | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE
TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

**COMES NOW** Defendant, by and through Leura G. Canary, United States Attorney for the

Middle District of Alabama, and files this Response to Plaintiff's Motion for Reconsideration of this

Court's June 16, 2008, Order granting Defendant's Motion for Summary Judgment.  Plaintiff's

Motion should be denied because it is a procedurally improper attempt to re-open the summary

judgment record with additional and untimely evidence that could have, and should have, been

submitted with Plaintiff's initial summary judgment response.  This Court should also deny

Plaintiff's Motion because it contains nothing but speculation and conclusory assertions that do

nothing to show that this Court's well-reasoned decision should be set aside.

**ARGUMENT AND CITATION OF AUTHORITY**

To prevent endless relitigation of the same issues, courts have recognized that reconsideration

of a prior order granting summary judgment is an "extraordinary remedy to be employed sparingly"

at the discretion of the district court.  See Summit Medical Ctr. of Ala., Inc., v. Riley, 284 F. Supp.

2d 1350, 1352 (M.D. Ala. 2003) (Albritton, J.).  Due to its extraordinary nature, reconsideration is

only appropriate in a "very narrow" set of circumstances, including when there is an intervening change in the law, the availability of new evidence that could not have been presented at the time the court entered summary judgment, or the need to prevent manifest injustice or clear error.  See Groover v. Michelin North America, Inc., 90 F. Supp. 2d 1236, 1256 (M.D. Ala. 2000) (Albritton, J.).  As these narrow circumstances indicate, the law is clear that a party cannot use a motion to reconsider to present additional evidence that could have been presented before the court issued its original decision.  See Shuford v. Fidelity Nat'l Prop. & Casualty Ins. Co., 508 F.3d 1337, 1345 (11th Cir. 2007); Michael Linet , Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005); Mays v. United States Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997); Macon County Invests., Inc., v. Warren, 2008 U.S. Dist. LEXIS 46029, at *2-3 (M.D. Ala. June 12, 2008) (Watkins, J.); Rossi v. Troy State Univ., 330 F. Supp. 2d 1240, 1250 (M.D. Ala. 2002) (Albritton, J.).  In the present case, Plaintiff's Motion should be denied because it falls outside the legitimate grounds for reconsideration and instead improperly asks the Court to consider additional evidence that Plaintiff could have filed with the Court prior to its June 16, 2008, decision.  Nevertheless, even if the Court was to consider Plaintiff's untimely evidence and argument, they do nothing to alter the correctness of this Court's well-reasoned decision granting Defendant's Motion for summary judgment.

**A.      Plaintiff Cannot Use a Motion To Reconsider To Submit Additional Evidence.**

As an initial matter, Plaintiff's Motion to Reconsider should be denied because she improperly uses it to submit additional evidence that could have been presented before this Court ruled on Defendant's Motion for Summary Judgment.  See Shuford, 508 F.3d at 1345; Michael Linet, Inc., 408 F.3d at 763; Mays, 122 F.3d at 46.  The Eleventh Circuit has explicitly condemned this practice, holding that "where a party attempts to introduce previously unsubmitted evidence on

a motion to reconsider, the court should <u>not</u> grant the motion absent some showing that the evidence was not available during the pendency of the motion [for summary judgment]." <u>Mays</u>, 122 F.3d at 46 (emphasis added).  <u>See also</u> <u>Mincey v. Head</u>, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) ("the moving party <u>will not</u> prevail on a [motion for reconsideration] that introduces previously unsubmitted evidence absent a showing that the evidence was unavailable at the time of the judgment.") (emphasis added).  This holding by the Eleventh Circuit is consistent with long-standing authority recognizing that "[c]onsiderations of fairness to both sides and of judicial efficiency demand that [a plaintiff] not be allowed to file further evidence after the Court has entered its order, when that evidence was available ... before the Court's ruling." <u>Prieto v. Storer Communications, Inc.</u>, 152 F.R.D. 654, 655 (M.D. Fla. 1994).  <u>See also</u> <u>Medley v. Westpoint Stevens, Inc.</u>, 162 F.R.D. 697, 699 (M.D. Ala. 1995) (Albritton, J.) (noting court "cannot permit the plaintiff to 'reload and shoot again [through a motion for reconsideration with evidence that could have been filed earlier] ...' particularly where the ammunition and the aim has been supplied by the Court.").

In the present case, Plaintiff uses her Motion to attempt to present "additional evidence" in the form of two declarations from Daniel Robinson and Carnell McAlpline.  (Pl. Mot. at 7, 9-12). Plaintiff could have easily presented these two declarations with her original response to Defendant's Motion for Summary Judgment on April 11, 2008, which was filed more than thirty days after Defendant's March 5, 2008, Motion for Summary Judgment.[1]  The two witnesses supplying these

---

[1]Plaintiff does not allege or suggest that these declarations could not have been submitted earlier in this case, nor does she offer any excuse for her failure to timely submit them to the Court. Indeed, Plaintiff's lack of diligence is pronounced by the fact that this Court gave Plaintiff <u>two</u> extensions of time to file her summary judgment response.  Plaintiff thus had multiple opportunities, and ample time, to fully brief and build a summary judgment record before this Court's final decision. <u>See</u> <u>Sussman v. Salem, Saxon & Nielsen, P.A.</u>, 153 F.R.D. 689, 694-695 (M.D. Fla. 1994).

declarations were identified by Plaintiff in her Initial Disclosures, giving her over a year to obtain declarations from them.[2]  See Medley, 162 F.R.D. at 699-700.  Moreover, both of Plaintiff's witnesses reside in the Middle District of Alabama, making them readily accessible.  (Robinson Dec. ¶ 1; McAlpine Dec. ¶ 1).  Indeed, Plaintiff even admitted during her November 29, 2007, deposition that she speaks to Robinson, a close friend, several times a week.  (Pl. Dep. 15:6-18, 42:23-43:17).

In short, Plaintiff's inability to show that her additional evidence was unavailable and could not have been presented to the Court earlier is fatal to her Motion for Reconsideration.  See Mays, 122 F.3d at 46 ("Because the evidence was not timely submitted, and no showing was made that the evidence could not have been presented previously, the district court correctly denied the motion for reconsideration."); Medley, 162 F.R.D. at 699-700 (denying motion for reconsideration containing additional evidence "that was clearly available from the earliest stages of this litigation" and not submitted until after court granted summary judgment).  Accord Publisher's Resource, Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir. 1985) (noting reconsideration "cannot ... be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion.").  As the Eleventh Circuit has succinctly held, a "[plaintiff] cannot use a ... motion [for reconsideration] to ... present evidence that could have been raised prior to the entry of judgment."  See Michael Linet, Inc., 408 F.3d at 763 (emphasis added); May, 122 F.3d at 46.  Accordingly, Plaintiff's lack of diligence is inexcusable and Eleventh Circuit authority mandates that her Motion be denied.  See Mays, 122 F.3d at 46.

---

[2]A copy of excerpts from Plaintiff's Initial Disclosures is attached as Exhibit A.

**B.    Plaintiff Cannot Show That She Was Constructively Discharged.**

Even if this Court was to consider Plaintiff's additional and untimely evidence, she still fails

to show that this Court erred in its analysis of her constructive discharge claim.  To establish a

constructive discharge, a plaintiff must show that her employer made her work conditions "so

intolerable that a reasonable person in [the employee's] position would have been compelled to

resign."  See Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003); Hill v.

Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991).  The subjective feelings of the

plaintiff are irrelevant.  See Doe v. Dekalb County School Dist., 145 F.3d 1441, 1450 (11th Cir.

1998).  Plaintiff's additional evidence falls well short of showing that she endured the necessary

objectively intolerable work environment.

As an initial matter, Plaintiff continues to ignore the rigorous standard necessary to show a

constructive discharge in her Motion for Reconsideration.[3]  See Blue Cross & Blue Shield of Ala.

v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990) ("[p]resenting ... arguments in opposition to ...

summary judgment is the responsibility of the non-moving party, not the court.").  Instead, she

simply submits the conclusory assertions of two friends in declarations that the credibility and

character of her position were important to her job and thus any criticism of her might amount to

some undefined "adverse employment action."[4]  (Pl. Mot., at 7, 9-11).  Plaintiff provides no legal

---

[3]Plaintiff did not cite or discuss the constructive discharge standard in her Response to Defendant's Motion for Summary Judgment.  (Defendant's Reply, at 7-9).

[4]Notably, Plaintiff's two declarations consist of nothing but speculation and conjecture. Robinson left his position with the USDA after the November 2000 elections, (Pl. Dep. 43:18-44:1), and thus has no personal knowledge of events occurring after that date.  Indeed, his declaration is replete with speculative assertions such as "if an employee like Ms. Thomas..." and "if Ms. Thomas suffered...." (Robinson Dec. ¶ 4).  McAlpine worked in an entirely separate office from Plaintiff during her employment as Chief, and similarly speculates about the effect of "respect" on a person's

authority or argument for the novel proposition that alleged criticism of an employee who interacts with other employees, thus allegedly possibly damaging her reputation among those other employees, automatically creates an adverse action, much less the objectively intolerable work environment necessary to convert a voluntary retirement into a constructive discharge.

Plaintiff's failure to cite any legal authority in her Motion is likely due to the fact that her proposed expansion of the constructive-discharge doctrine is contrary to existing law, which firmly holds that employer criticism of an employee's job performance, even if humiliating and embarrassing, does not rise to the level of an adverse employment action or a constructive discharge. See Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001) ("Repeatedly receiving poor evaluations would be unpleasant for anyone, but it does not rise to the level of such intolerable conditions that no reasonable person would remain on the job"); Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1242 (11th Cir. 2001) ("An employee who receives criticism or a negative evaluation may lose self-esteem and conceivably may suffer a loss of prestige in the eyes of others who come to be aware of the evaluation...[b]ut the protections of Title VII simply do not extend to 'everything that makes an employee unhappy.'").  See also Nettles v. LSG Sky Chefs, 211 Fed. Appx. 837, 839 (11th Cir. 2006) (no constructive discharge when employer, inter alia, undermined plaintiff's authority in front of customers, peers, and subordinates and excluded him from meeting with company chairman); Haley v. Alliance Compressor LLC, 391 F.3d 644, 650-652 (5th Cir. 2004) (no constructive discharge when, after human resources manager returned from leave, supervisors

---

ability to perform a certain job during a certain time period.  (McAlpine Dec. ¶¶ 1, 4).  In short, neither declaration presents any evidence that Plaintiff was not able to perform her job in January 2003, when she returned from her detail.  Indeed, as set forth below and in evidence previously submitted to the Court, Plaintiff has admitted that she was able to perform important job duties when she returned from her detail prior to her sudden decision to retire in February 2003.

ridiculed her in front of peers and excluded her from meetings); <u>James v. Booz-Allen & Hamilton, Inc.</u>, 368 F.3d 371, 378 (4th Cir. 2004) (alleged damage to reputation did not create "kind of harsh working conditions that would compel any reasonable employee to quit."); <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1233 (11th Cir. 2001) (district manager who was publically berated by supervisors about poor work and humiliated did not suffer constructive discharge); <u>Boze v. Brantstetter</u>, 912 F.2d 801, 805-806 (5th Cir. 1990) (attorney was not constructively discharged when he received bad reviews, was placed on probation, was told in presence of other supervisors that he was worst lawyer in the department, and was denied promotion). There is simply no legal support for limiting this long-standing legal authority to situations where the plaintiff has a job that requires no interaction with other employees while performing her job duties.

Indeed, this Court rejected a similar attempt to convert subjective humiliation into a constructive discharge in <u>Williams v. Glover,</u> 2006 U.S. Dist. LEXIS 15536, at *13 (M.D. Ala. March 31, 2006) (Watkins, J.). The plaintiff in <u>Williams</u> was a jail administrator who claimed that a supervisor committed adverse actions and constructively discharged her when he changed her call sign, moved her to a smaller office, forced her to give up command of keys and the main computer, and reduced her authority, thus making it appear to others that she had been moved from first in command at the jail to third in command. <u>See id</u>. The plaintiff asserted that these actions humiliated her, stripped her of her dignity, and made her position at the jail suffer. <u>See id</u>. at *13, 26-27. The Court held that "whatever embarrassment [the plaintiff] might have felt because of this does not render her situation so intolerable that a reasonable person would feel compelled to resign." <u>See id</u>. at *26. In reaching this conclusion, the Court relied upon prior authority in this Circuit that "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or

- 7 -

unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."

<u>See</u> <u>id</u>. at *24 (<u>quoting</u> <u>Williams v. Russell Corp</u>., 218 F. Supp. 2d 1283, 1299 (M.D. Ala. 2002)).

This legal authority is equally applicable to the undisputed facts in the present case.

  Moreover, while Plaintiff asserts that Defendant's actions in 2001 hurt her reputation and made it harder to do her job when she returned from her detail in January 2003, she offers nothing but speculation and conclusory allegations in support of this assertion. Defendant addressed a similar argument on pages 12-16 of its Summary Judgment Reply, and Defendant incorporates this argument by reference herein. In short, Plaintiff undisputedly was able to perform important job duties relating to learning a new farm bill when she returned from her detail in January 2003 regardless of the alleged events in 2001.[5] (Pl. Dep. 167:1-17, 177:5-25). Moreover, while Plaintiff was performing her job and learning the new farm bill in 2003 after she returned from her detail, Plaintiff admits that she did not receive <u>any</u> criticism or hear any negative comments about her performance.[6] (Pl. Dep. 154:21-23, 174:3-9, 282:5-11; Crawford Dec. ¶ 22). Plaintiff cannot

_____

[5]Tellingly, Plaintiff <u>admitted</u> during her deposition that: (1) one of her job duties was keeping herself aware of changes to farm programs by reading handbooks, (Pl. Dep. 30:14-18); (2) Congress passed a new farm bill while she was on detail that significantly changed a number of farm programs in her Section, (Pl. Dep. 138:9-20;166:7-9, 159:23-160:14, 175:24-176:18); (3) learning the farm program changes in the new farm bill was important and she had to learn them to be able to answer questions from the field, (Pl. Dep. 263:1-6); (4) after her return from her detail she was able to devote almost 100% of her time to learning the program changes in the new farm bill by reading handbooks in her office and talking to staff, (Pl. Dep. 167:1-17); (5) no one interfered with her ability to learn the new farm bill (Pl. Dep. 177:5-25); (6) she estimated it would take several weeks to learn all the new changes (Pl. Dep.176:22-177:7); and (7) she has no idea why she did not receive more telephone calls from employees after she returned from her detail. (Pl. Dep. 284:1-285:3).

[6]Notably, Plaintiff offers no evidence in support of her assertion that any job criticism she received in 2001 prior to the December 5, 2001, Settlement Agreement, and any acts taken in December 2001, by Defendant after this settlement but before her detail, had any impact on her ability to perform her job when she returned in January 2003, <u>more than a year later</u>. Plaintiff's two friends, who did not even work in the State office during any relevant time period, offer nothing but

convert her voluntary retirement a month later into a constructive discharge simply because of speculation about the effect of past acts that occurred over a year earlier and an unrealized fear that her supervisor might criticize her at some point in the future.[7]  See Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir.1987) (noting a reasonable employee in the context of a constructive discharge is one who "does not assume the worst" or "jump to conclusions.").  See also Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("This Court has consistently held that conclusory allegations without specific supporting facts have no probative value.").

In sum, this Court correctly applied the law to the undisputed facts in its June 16, 2008, Order, and concluded that Plaintiff had failed to show that when she returned from her detail in early 2003 she endured such an objectively intolerable work environment that a reasonable person would have been compelled to resign.  See Thomas v. Schafer, 2008 U.S. Dist. LEXIS 46653, at *25-33 (M.D. Ala. June 16, 2008).  Plaintiff's Motion for Reconsideration offers nothing to change this well-reasoned decision.  Accordingly, this Court should deny her Motion.

---

speculation and conjecture and do not even attempt to relate their speculation and conjecture to the exact work environment that Plaintiff worked in when she returned from her detail in 2003. Furthermore, while her counsel now asserts that Plaintiff was harmed by Crawford's decision regarding who to name as acting chief during her detail, Plaintiff testified in her deposition that this decision did not harm her.  (Pl. Dep. 213:4-8).  Plaintiff's speculation, conjecture, and unsupported assertions are simply not evidence that any of Defendant's acts created an objectively intolerable work environment in February 2003 when she abruptly decided to retire.

[7]Defendant further submits, as argued in its earlier pleadings, that Plaintiff cannot obtain the material benefits of her December 5, 2001, Agreement, and then rely upon acts covered by its scope to argue in the present lawsuit that she was constructively discharged. See, e.g., Perryman v. West, 949 F. Supp. 815, 822 (M.D. Ala. 1996).

C.    **No Evidence Any Act Due to Race, Gender, or Retaliation**.

Finally, Defendant established in his Initial Memorandum and Reply Memorandum that Plaintiff could not show that any act challenged in this lawsuit was due to her race, gender, or retaliation, or that any of Defendant's legitimate, non-discriminatory reasons for the acts were pretext. (Init. Mem. at 35-40, 44-46; Reply Mem. at 17-20). To establish a constructive discharge, a plaintiff must show that all the acts that allegedly made her work environment "intolerable" were due to discrimination or retaliation. See Henson v. Dundee, 682 F.2d 897, 907 (11th Cir. 1982); Carr v. Cohen, 44 F. Supp. 2d 1240, 1246 (M.D. Ala. 1999); Cook v. American Gen. Life and Accident Ins. Co., 952 F. Supp. 1505, 1512-153 (M.D. Ala. 1996). See also Schwertfager v. City of Boynton Beach, 42 F. Supp. 2d 1347, 1367 (S.D. Fla. 1999) (noting a plaintiff "must prove that the alleged intolerability of working conditions resulted from acts of discrimination.").

This Court found, in its June 16, 2008, decision, that Plaintiff could not show any causal relation between any acts and her alleged constructive discharge but did not address Plaintiff's inability to show any act was due to her race or gender because it had granted summary judgment on another dispositive ground. See Thomas, 2008 U.S. Dist. LEXIS 46653, at *33-35. Plaintiff does not address this issue in her Motion for Reconsideration, and her additional evidence does not change the fact that she has no evidence that race, gender, or retaliation had anything to do with any of the acts challenged in her Complaint or her decision to retire. Accordingly, for this reason alone, Defendant is also entitled to complete summary judgment on all Plaintiff's claims.

## CONCLUSION

This Court's June 16, 2008, decision and judgment are well-supported and should remain undisturbed. This Court should reject Plaintiff's untimely attempt to enlarge the record after the entry of summary judgment and should deny Plaintiff's Motion for Reconsideration.

Respectfully submitted this 15th day of July, 2008.

LEURA G. CANARY
United States Attorney

By:    s/James J. DuBois
JAMES J. DUBOIS
Assistant United States Attorney
Georgia Bar No. 231445
United States Attorney's Office
Post Office Box 197
Montgomery, AL 36101-0197
Telephone: (334) 223-7280
Facsimile: (334) 223-7418
E-mail:  james.dubois2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Plaintiff's attorney, Collins Pettaway, Jr., Esquire.

s/James J. DuBois
Assistant United States Attorney

- 11 -